Geoffrey A. Berkin SBN 110212
gberkin@sbcglobal.net
LAW OFFICE OF GEOFFREY A. BERKIN
15353 Weddington Street, Ste. D-124
Sherman Oaks, CA 91411
Tel: (310) 612-7289
Fax: (818) 394-6455

Attorney for Plaintiff SEIF ASCAR, TRUSTEE OF THE ASCAR FAMILY TRUST DATED JULY 5, 2012

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

SEIF ASCAR, TRUSTEE OF THE ASCAR FAMILY TRUST DATED JULY 5, 2012, an individual,

Plaintiff,

vs.

U.S. BANK, N.A., a national banking association; SELECT PORTFOLIO SERVICING, INC., a Utah corporation,

Defendant.

Case No. 2:13-cv-7496-ABC (SSx)

HON. AUDREY B. COLLINS

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**

Date: February 24, 2014
Time: 2:00 p.m.
Courtroom: 550

[Filed concurrently with: (1) Request for Judicial Notice; and (2) [Proposed] Order]

Plaintiff SEIF ASCAR, TRUSTEE OF THE ASCAR FAMILY TRUST DATED JULY 5, 2012, ("Plaintiff" or "Ascar") hereby submits the following Opposition To Defendants' Motion To Dismiss Complaint:

///

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Motion To Dismiss Plaintiff's Complaint of Defendants U.S. Bank, N.A. ("Bank ") and Select Portfolio Servicing, Inc. ("SPS") (Bank and SPS collectively, "Defendants") ("Motion") is founded on the illogical and legally unsound propositions that: (1) a tenant, or mortgagee of an interest of a tenant, can have a security interest in a landlord's rights in such landlord's property, including the landlord's right to terminate the tenant's lease, and (2) a tenant can convey to a mortgagee a greater interest in the property in question than the tenant has.

The Motion also fails because even though the landlord took a security interest on the property in question, the termination of the leasehold and of Bank's security interest did not arise from a foreclosure of that security interest by the landlord or any other party. The termination of the leasehold came about by operation of law through an unlawful detainer judgment against the holder of the leasehold, so it is irrelevant whether Bank had a security interest superior to the landlord's.

## I. BACKGROUND

This case concerns a residential unit (the "Property") in a stock cooperative building, Ocean Towers ("Ocean Towers"). Ocean Towers Housing Corporation ("OTHC") is the fee owner of Ocean Towers. Because OTHC is a housing stock cooperative, OTHC does not sell the units. Instead, unit owners purchase and own only a leasehold interest in their respective units, represented by a proprietary lease and shares of stock in OTHC, and do not own any interest in the building itself. Such leasehold interest is granted by OTHC to the unit owners, creating a landlord-tenant relationship between OTHC as landlord and the unit owners as tenants. In such landlord-tenant relationship OTHC and each unit owner/tenant are parties to a proprietary lease which permits the unit owner/tenant to occupy a particular unit within Ocean Towers. Each proprietary lease is appurtenant to, and is inseparable from, the share certificate representing the shares in OTHC allocated to the

particular unit. The inseparability is established by Cal. Civil Code 1358(d) and by Section 2.01 of the OTHC By-Laws. (Complaint Ex. 2 and 1 respectively.) The proprietary lease requires the unit owner/tenant to, among other things, pay monthly rent and monthly maintenance payments to OTHC.

On or about October 2, 2006, Dorothea Schiro ("Schiro") purchased, and became the owner of, a leasehold interest in the Property through an assignment by the prior owner of the proprietary lease of the Property and the appurtenant share certificate. Because the assignment was a termination of the prior owner's leasehold, the share certificate representing the prior owner's shares was cancelled, as it was inseparable from, and could not exist without, the proprietary lease. On November 8, 2006, the Assignment of Proprietary Lease effectuating the purchase of the leasehold by Schiro (the "Lease") was recorded in the Office of the Los Angeles County Recorder as Instrument No. 20062481010 (Complaint Ex. 3) and a new stock certificate representing the appurtenant shares of OTHC (the "Share Certificate") was issued to Schiro by OTHC.

Schiro's purchase of the leasehold interest in the Property was financed through a mortgage by Metrocities Mortgage, LLC ("Metrocities"). Bank is a successor in interest to Metrocities with respect to the mortgage on the Property.

As described above, Schiro, as a tenant, was required by the Lease to pay monthly rent and monthly maintenance payments to OTHC. In 2012, Schiro defaulted on those payment obligations. Accordingly, on or about June 19, 2012, OTHC's counsel caused to be served a Three Day Notice To Pay Rent or Quit directed to "Omar Spahi. Angela Rymer Trust, Dorothea Schiro and all others in possession" due to Schiro's failure to pay OTHC rent and monthly maintenance due under her proprietary lease. (Complaint Ex. 7.) OTHC's counsel timely transmitted a copy of such notice to Bank of America, Bank's immediate predecessor in interest who, according to the information available to OTHC at the time, including recorded documents, then stood in the shoes of the lender. (*Id.*) The notice was sent in care of The Wolf Firm, who, according to the information

available to OTHC at the time, including recorded documents, then was the agent of Bank of America. (*Id.*)

Schiro failed to vacate the Property, so OTHC filed an unlawful detainer action against Schiro seeking both possession and a forfeiture of Schiro's lease. Judgment in OTHC's favor was awarded on August 13, 2012 (the "UD Judgment"). (Complaint Ex. 8.) On March 25, 2013, a Notice of Entry of Judgment Terminating Proprietary Lease was recorded in the Office of the Los Angeles County Recorder as Instrument No. 20130442823. (Complaint Ex. 9.)

The UD Judgment included the requested lease forfeiture, thus Schiro's leasehold interest was terminated thereby. Because the leasehold interest included both the Lease and the inseparable Share Certificate, the termination of the leasehold terminated both of those. Inasmuch as the terminated Lease and the Share Certificate had been the collateral against which Metrocities had taken its security interest, the extinction of the collateral by the UD Judgment extinguished the security interest. Plaintiff does not contend that the extinction of the security interest cancelled or otherwise affected Schiro's indebtedness under the note in favor of Metrocities made as part of the original loan transaction.

On June 10, 2013, OTHC's counsel faxed and mailed a letter to The Wolf Firm in its capacity as agent of the lender advising of the UD Judgment, the termination of Schiro's leasehold interest and the resulting termination of the Lender's security interest. (Complaint Ex. 13.)

On or about September 1, 2012, Plaintiff acquired the Property from OTHC. (Complaint Ex. 13.) Since September 1, 2012, Plaintiff has been, and Plaintiff continues to be, the sole and exclusive owner of the Property.

## I. ARGUMENT

### A. Whatever Security Interest Defendants Had Is Irrelevant Because The Leasehold Was Not Terminated By The Exercise of A Junior Lien.

As set forth above, Schiro's leasehold interest was terminated by the UD Judgment obtained by OTHC. *Glendale Federal Bank v. Hadden*, 73

Cal.App.4th 1150, 1155, 87 Cal.Rptr.2d 102 (1999) ("*Glendale Federal*"). In another Central District case involving a unit in Ocean Towers, *Bank of America, etc. v. Janet Fuladian, et al.*, Case No. CV 12-10493 DSF (VBKx), Judge Fischer had before her the same issue of the effect of an unlawful detainer judgment forfeiting a proprietary lease, dismissed Bank of America's complaint without leave to amend and ordered expungement of its lis pendens. She wrote, citing *Glendale Federal*, "Termination of a leasehold in real property results in forfeiture of any security interest held in that leasehold." (Order GRANTING Motion to Dismiss and Motion to Expunge Lis Pendens, May 6, 2013, p.2.) (Plaintiff's Request For Judicial Notice Ex. 1.)

There was no exercise by OTHC of any rights of a secured party in connection with the forfeiture, so whatever lien rights Bank had were not implicated in the termination of the leasehold.

Defendants assert the viability (and priority) of Bank's lien without addressing at all the legal issue of how a security interest can override a landlord's rights in its property, particularly its right to terminate a defaulting tenant's lease, under any circumstances whatsoever, but especially in the situation presented here in which the landlord was not a party to the loan transaction giving rise to the security interest and did not otherwise grant a security interest to Metrocities. Defendants neither explain how their security interest would have that power nor cite to any authority recognizing such power.

**B. Defendants Are Trying To Enlarge Their Lien Beyond What Was Actually Granted.**

Defendants are attempting to enlarge their lien beyond what their own documents give them. However, they are bound by the security interest that was actually taken in connection of the origination of the loan, and they cannot wish it into something bigger.

Bank's security interest was created by a Loan Security Agreement (the "Security Agreement") entered into between Dorothea Schiro ("Schiro") and

Metrocities. (Defendant's Request for Judicial Notice ("Defts. RJN"), Ex. A.) Section 2 of the Security Agreement identifies the collateral in which the security interest was taken:

> "To guarantee to the Lender [Metrocities] that the loan represented by the Note will be repaid. I give to the Lender a continuing security interest in and to all of my right, ownership and title to the *shares* of the co-operative corporation as set forth in the stock certificate issued to me and in the *proprietary lease* entered into between the co-operative corporation and me covering my apartment, and parking space or spaces allocated to or purchased in connection with that apartment and all of my personal property and fixtures (except household furniture and furnishings) that are now, or may be in the future, attached to or used in connection with the Apartment (the 'Security'). I further give to the Lender a continuing security interest in the proceeds of the foregoing." (Emphasis added.)

Thus, Defendants cannot claim to have any security interest in *OTHC's* interest in the Property or in any other property or right of OTHC.

**C. Defendants Have Misread Their Most Important Evidence of Claimed Subordination of OTHC's Interests.**

Defendants have misread their own evidence. They place great weight on Lease ¶2.01 to contend that "the Lease made clear that OTHC's interest in the Property was "*subject and subordinate to*" the Metrocities Deed of Trust. In other words, it was in a junior lien position to the Metrocities Deed of Trust." (Motion 6:5-6:7 (emphasis in original).) That is undeniably wrong. The passage they quote starts out (using their emphasis), "Subordination: This *Lease is and shall be subject and subordinate to all present and future mortgages or deeds of trust* . . . ." However, after an immaterial parenthetical it continues, "now or hereafter encumbering *Ocean Towers*" (Emphasis added here). Ocean Towers, not the Property. The Metrocities' Deed of Trust did not encumber Ocean Towers. The cited provision has nothing to do with the financing of the acquisitions of units. It

has to do with OTHC's own financing activities with respect to Ocean Towers.

**D. <u>The Other Documents Defendants Rely Upon Pertain Only To The Shares and Only Describe What OTHC Can and Cannot Do With The Shares and Do Not Address OTHC's Rights As A Landlord.</u>**

Defendants cite additional documents from the loan transaction that they claim support their contention that Bank had a security interest such as to override the landlord's rights.

The Motion quotes a portion of the Recognition Agreement among Schiro, Metrocities and OTHC. (Defts. RJN, Ex. B at ¶ 6.) The pertinent part of the quotation is:

> "Possession of Collateral. (a) [OTHC] agrees that *so long as the Loan is outstanding, notwithstanding any contrary provision in the Lease or [OTHC]'s Articles or* Bylaws *or other corporate documents, Lender shall be entitled to retain possession of the Shares*."

(Motion 6:12-6:26 (emphasis in original).)

The Motion next quotes a provision of a Pledge Agreement between Schiro and OTHC (Defts. RJN, Ex. C):

> "Pledgee's Collection Rights. [OTHC] shall have the right after an event of default (as defined in Paragraph 5 hereof) to, *subject to the rights of Metrocities Mortgage, LLC as senior lienholder*, (i) instruct the issuer of any of the Stock to deliver to Pledgee dividends or other payments or distributions relating to any of the Stock, (ii) take control of any proceeds of the Stock under California Commercial Code Section 9306 or otherwise; (iii) to vote the Stock and otherwise to deal with the Stock as if owned by Pledgee and (iv) to all other remedies permitted by statute or case law."

(Motion 6:28-7:6 (emphasis in original).)

Defendants then quote from a Pledgeholder Agreement – Ocean Towers & Borrower (Defts. RJN, Ex. D):

> "Default. *Subject to the rights of Metrocities as first lienholder*, [OTHC] will

> have the right, after the occurrence of an event of default, as defined in the Collateral Security Agreement, the Pledge Agreement, or the Lease, to instruct the Bank in writing to deliver the Shares and Stock Assignment to [OTHC]."

(Motion 7:16-7:18 (emphasis in original).)

As can be seen, the cited documents only reference the shares of OTHC stock represented by the Stock Certificate, and not the overall leasehold, and only describe and circumscribe what OTHC can do and cannot do with the shares to the extent that OTHC has a security interest in the shares, because those agreements pertain only to OTHC's status and rights *as a secured party*. If OTHC had undertaken any of the proscribed actions with the shares, it could have done so only based on its security interest, because no other rights of OTHC were involved in the agreements. However, Defendants have not alleged that OTHC took any actions with respect to the shares under those agreements, nor is there any factual basis that would allow them to do so. Therefore, the language in the agreements that Bank claims to reflect its asserted lien rights is irrelevant, because OTHC's acts in exercise of its rights as a landlord in the termination of Schiro's leasehold interest were not taken under any of those agreements, and any protection of Bank's security interest connected with those agreements is inapplicable to the termination of the leasehold by the UD Judgment. In other words, even if the cited language restricts what OTHC could do *to enforce its security interest*, the provisions do not restrict OTHC's rights as a landlord.

**E. <u>Plaintiff Has Stated A Claim For Slander of Title.</u>**

Plaintiff has sufficiently alleged its cause of action for slander of title.

Although Defendants assert that this cause of action is moot because they have rescinded the 2013 Notice of Default. (Motion 8:20-8:22.) However, that overlooks Plaintiff's allegation that the 2006 Deed of Trust has slandered Plaintiff's title, as well as the fact that Plaintiff suffered damage between the time that OTHC's counsel gave Defendants notice of the UD Judgment terminating

Bank's lien on the Property and when Defendants recorded their rescission.

Defendants' maintenance of the recorded 2013 Notice of Default and the 2006 Deed of Trust were not privileged, and so not protected by Cal. Civ. Code §47 after the above-described notice because they persisted in their claims even though they knew that Bank had lost its security interest in, and power of sale as to, the Property. As a result of the cloud on Plaintiff's title resulting from the unprivileged recorded documents, Plaintiff was unable to seek refinancing for the Property or to attempt to sell it.

Thus, the documents were, (1) published, (2) false, (3) unprivileged and (4) disparaging of Plaintiff's interest in the Property to the extent of precluding him from refinancing or selling the Property, satisfying the requirements of *Fimbres v. Chapel Mortg. Corp.*, No. 09-cv-0886 2009 WL 4163332, at *12 (S.D.Cal. Nov. 20, 2009).

**F. <u>How Did Plaintiff Turn Into "The Borrower"? Defendants' Argument Against Plaintiff's Cause of Action For Cancellation of Instruments Is Based On A False Assertion About Plaintiff and Is Therefore Meritless.</u>**

Defendants try to transform Plaintiff into "the borrower" of Schiro's loan in order to argue against Plaintiff's third cause of action for Cancellation of Instruments:

> "Further, an action to cancel a deed instrument requires *a borrower* to establish that he "is able to restore everything of value *received from the loan transaction*." *Nguyen v. Bank of America National Association*, No. 11-cv-03318, 2011 WL 5574917, at *6 (N.D. Cal. Nov. 15, 2011) (quoting *Sanchez MortgageIt, Inc.*, No. C10-4146, 2011 WL 588178, at *2 (N.D. Cal. Feb. 10, 2011)); C*erecedes v. U.S. Bankcorp.*, No. C11-0219, 2011 WL 2711071, at *5 (C.D. Cal. July 11, 2011) ("to state a claim pursuant to Civil Code § 3412, plaintiffs must allege they have restored everything of value received from the loan transaction."). Plaintiff concedes that the loan secured by the Metrocities Deed of Trust has not been repaid and Plaintiff has not offered to

repay the loan. Therefore, he cannot cancel the Metrocities Deed of Trust." (Motion 10:12-10:21 (emphasis added here)). This bizarre transformation is asserted without any explanation of how Plaintiff turned into "the borrower", much less any legal authority supporting the transformation. However, Plaintiff is *not* the borrower of the loan in suit and never was. He was not a party to the loan transaction between Schiro and Metrocities, nor did he acquire his rights to the Property from Schiro. Plaintiff did not receive anything of value from Metrocities (or anyone else) from the Schiro loan transaction. Therefore, he has no duty to repay the loan or otherwise restore anything to Bank or its predecessors.

Thus, Plaintiff's third cause of action stands against Defendants' argument as to the Metrocities Deed of Trust.

**CONCLUSION**

Defendants' assertion of Bank's security interest in the Property is legally incorrect, as is their assertion that the security interest survived the termination but the UD Judgment of Schiro's leasehold interest as a matter of law. Accordingly, Defendants' Motion To Dismiss Plaintiff's Complaint should be denied.

Dated: February 3, 2014

LAW OFFICE OF GEOFFREY A. BERKIN

/s/ Geoffrey A. Berkin

Geoffrey A. Berkin
gberkin@sbcglobal.net
LAW OFFICE OF GEOFFREY A. BERKIN
15353 Weddington Street, Ste. D-124
Sherman Oaks, CA 91411
Tel: (310) 612-7289
Fax: (818) 394-6455

Attorney for Plaintiff SEIF ASCAR, TRUSTEE OF THE ASCAR FAMILY TRUST DATED JULY 5, 2012

## CERTIFICATE OF SERVICE

I, Geoffrey A. Berkin, an attorney, do hereby certify that on February 3, 2014, I electronically filed the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT with the Clerk of the Court using the electronic case filing system, which will send notification of such filings to the parties registered with the Court's CM/ECF system.

Dated: February 3, 2014

LAW OFFICE OF GEOFFREY A. BERKIN

/s/ Geoffrey A. Berkin

Geoffrey A. Berkin
gberkin@sbcglobal.net
LAW OFFICE OF GEOFFREY A. BERKIN
15353 Weddington Street, Ste. D-124
Sherman Oaks, CA 91411
Tel: (310) 612-7289
Fax: (818) 394-6455

Attorney for Plaintiff SEIF ASCAR, TRUSTEE OF THE ASCAR FAMILY TRUST DATED JULY 5, 2012