| | |
|---|---|
| 1 | LOCKE LORD LLP |
| 2 | Conrad V. Sison (SBN: 217197) |
| | csison@lockelord.com |
| 3 | Daniel A. Solitro (SBN: 243908) |
| 4 | dsolitro@lockelord.com |
| | 300 South Grand Avenue, Suite 2600 |
| 5 | Los Angeles, California 90071 |
| 6 | Telephone: 213-485-1500 |
| | Facsimile: 213-485-1200 |
| 7 | |
| 8 | Attorneys for Defendant/Crossclaimant/Third Party Plaintiff |
| | U.S. BANK, N.A. and Defendant SELECT PORTFOLIO SERVICING, INC. |

FILED
CLERK, U.S. DISTRICT COURT
APR 1 8 2014
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEIF ASCAR, TRUSTEE OF THE ASCAR FAMILY TRUST DATED JULY 5, 2012, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. BANK, N.A., a national banking association; SELECT PORTFOLIO SERVICING, INC., a Utah corporation,<br><br>Defendant.<br><br>_____<br><br>U.S. BANK, N.A., a national banking association,<br><br>Counterclaimant.<br><br>vs.<br><br>SEIF ASCAR, as the TRUSTEE OF THE ASCAR FAMILY TRUST DATED JULY 5, 2012; SEIF ASCAR, individually,<br><br>Counter-Defendant | CASE NO. 2:13-cv-07496-ABC-SS<br><br>Hon. Audrey B. Collins<br><br>**THIRD PARTY COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

COPY

U.S. BANK, N.A., a national banking
association,

          Third Party Plaintiff.

     vs.

OCEAN TOWERS HOUSING
CORPORATION, a California Corporation;
OMAR YEHIA SPAHI; JOHN SPAHI;
JOSEPH ORLANDO; DOROTHEA SCHIRO
and DOES 1-10,

          Third Party
          Defendants.

## THIRD PARTY COMPLAINT

    Third party plaintiff U.S. Bank National Association ("U.S. Bank") hereby complains against third party defendants Ocean Towers Housing Corporation, Omar Yehia Spahi, John Spahi, Joseph Orlando and Dorothea Schiro (collectively, "Third Party Defendants") and Does 1 through 10, and allege as follows:

## JURISDICTION AND VENUE

    1.    The court has jurisdiction pursuant to 28 U.S.C. § 1441(b) and 28 U.S.C. § 1332 because there is complete diversity of citizenship between U.S. Bank and all Third Party Defendants and more than $75,000, exclusive of interest and costs, is at stake.

    2.    U.S. Bank is a national banking association organized pursuant to the laws of the United States with its main office, as specified in its Articles of Association, located in Cincinnati, Ohio.  It is, therefore, only a citizen of Ohio.

    3.    Ocean Towers Housing Corporation ("OTHC") is a California corporation with its principle place of business in California.  It is only a citizen of California.

2

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

4.      Dorothea Schiro ("Schiro"), John Spahi, Omar Spahi and Joseph Orlando are all individuals and citizens of California.

5.      Venue is proper in this Court because the real property that is the subject of this lawsuit is located in Los Angeles County, California and is within this judicial district.  Venue is also proper in this Court because all of the individual Third Party Defendants reside in Los Angeles County, California and because a substantial part of the events giving rise to this claim occurred in this judicial district.

## PARTIES TO THE ACTION

6.      U.S. Bank is the assignee of the interest in a loan made to borrower Schiro and the "Metrocities Deed of Trust," as defined in this Third Party Complaint. The loan is secured by the real property purchased by Schiro with the loan.

7.      OTHC is a California Corporation that is the owner of an apartment building known as Ocean Towers located at 201 Ocean Avenue, Santa Monica, California.  OTHC claims to have "extinguished" U.S. Bank's lien interest in a unit in Ocean Towers that is the subject of this lawsuit without authority to do so and in breach of a contract relating to the property.

8.      Schiro acquired the real property commonly known as 201 Ocean Avenue, Unit No. 1908B, Santa Monica, California 90402 (the "Property") and obtained a $1,272,000 loan (the "Loan") from lender Metrocities Mortgage, LLC ("Metrocities").  The interest in the Loan was later assigned to U.S. Bank.

9.      Omar Yehia Spahi was assigned an interest in the Property by Schiro and participated in the fraudulent transfer of the Property to Seif Ascar in an attempt to extinguish U.S. Bank's lien interest in the Property.

10.      John Spahi is the father of Omar Spahi and claimed to have an ownership interest in the Property.  John Spahi also was, and remains, a board member of OTHC and acted in that capacity relating to Schiro's Loan and in carrying out OTHC's scheme to defraud U.S. Bank and try to extinguish U.S. Bank's lien on the Property.

11.      Joseph Orlando is the President and CEO of OTHC and has held the

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

3

1  same positions for all relevant time relating to the allegations in the Third Party

2  Complaint.  He participated in the scheme with the other Third Party Defendants to

3  defraud U.S. Bank and try to extinguish U.S. Bank's lien on the Property.

4  <u>**GENERAL ALLEGATIONS**</u>

5  **A.    Schiro's Purchase of the Property.**

6         12.    On or about November 2, 2006, Schiro acquired the Property from Ariel

7  Akerman.  The Property consists of two parcels:

8                a.    **Parcel 1.**  a leasehold interest in Apartment No. 1908B of the

9         Ocean Towers as shown in the Proprietary Lease entered into by OTHC

10        and Schiro.  A true and correct copy of the Proprietary Lease is attached

11        hereto as <u>Exhibit 1</u>. A true and correct copy of the Assignment of

12        Proprietary Lease entered into by OTHC and Schiro is attached hereto as

13        <u>Exhibit 2</u>.

14                b.    **Parcel 2:**  four hundred twelve (412) shares of capital stock of

15        OTHC (the "Shares").

16        13.    Several documents entered into by Schiro in purchasing the Property and

17 obtaining her loan to purchase the Property make clear that the Property consists of

18 both a leasehold interest *and* the Shares.

19        14.    The Proprietary Lease itself makes clear that a "Stock Cooperative Unit"

20 in Ocean Towers "consists of the Shares together with the leasehold estate created by

21 this Proprietary Lease."

22        15.    The Propriety Lease—paragraph 6.07—also expressly acknowledges that

23 the tenant (Schiro) had the right to grant a security interest in her Shares and/or the

24 Proprietary Lease, including to a commercial bank lender.  In the event of default the

25 lender would have the right to sell the Shares at a foreclosure sale and the lender

26 thereafter could assign the Proprietary Lease to the purchaser that would have the

27 obligation to cure any outstanding default under the terms of the Proprietary Lease.

28        16.    In order to purchase Ariel Akerman's interest in the Property, on October

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

4

1  2, 2006, Schiro obtained the $1,272,000 Loan from lender Metrocities.  A true and

2  correct copy of the Loan is attached hereto as <u>Exhibit 3</u>.

3        17.    Schiro executed various loan origination documents including:

4             a.     A Promissory Note with Metrocities.

5             b.     A Loan Security Agreement with Metrocities.

6             c.     A Recognition Agreement with Metrocities and OTHC.

7        18.    On November 8, 2006 a Short Form Deed of Trust and Assignment of

8  Rents ("Metrocities Deed of Trust") was recorded in favor of Metrocities.  The

9  Metrocities Deed of Trust secured the $1.272 million dollar loan to Schiro.  The

10  security interest consisted of both the Shares and Schiro's leasehold interest.  A true

11  and correct copy of the Metrocities Deed of Trust is attached hereto as <u>Exhibit 4</u>.

12        19.    OTHC expressly recognized that the Metrocities lien held priority

13  position over any lien on the Shares held by OTHC.

14        20.    The interest in Schiro's Loan and the Metrocities Deed of Trust were

15  transferred to U.S. Bank.

16        21.    Schiro also granted to OTHC a lien on all of her interest in the

17  Proprietary Lease and the Shares.  OTHC's lien interests, however, were subordinate

18  to those created by the Metrocities Deed of Trust.

19        22.    On November 8, 2006, the (1) Assignment of Proprietary Lease and (2)

20  Deed of Trust, Pledge Agreement, Assignment of Rents and Security Agreement

21  ("OTHC Deed of Trust") were recorded in the Official Records of Los Angeles

22  County.  A true and correct copy of the OTHC Deed of Trust is attached hereto as

23  <u>Exhibit 5</u>.

24        23.    The OTHC Deed of Trust provided OTHC with remedies—in addition to

25  those provided for in the Proprietary Lease—in the event of a default by Schiro.

26  OTHC was entitled to commence an action to foreclose pursuant to the OTHC Deed

27  of Trust.

28        24.    OTHC and Schiro executed a Pledgeholder Agreement whereby they

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1  consented to the pledge by Schiro of a first lien security interest in the Shares to

2  Metrocities. The Pledgeholder Agreement expressly recognized that if there was an

3  event of default by Schiro, that OTHC had the right to have delivered to it the Shares.

4  However, OTHC's rights were expressly made "[s]ubject to the rights of Metrocities

5  as the first lienholder." A true and correct copy of the Pledgeholder Agreement is

6  attached hereto as <u>Exhibit 6</u>.

7  **B.      The Recognition Agreement.**

8      25.    On or about November 2, 2006, Schiro, OTHC and Metrocities (U.S.

9  Bank's predecessor in interest) entered into a Recognition Agreement. A true and

10  correct copy of the Recognition Agreement is attached hereto as <u>Exhibit 7</u>.

11     26.    The Recognition Agreement was entered into to protect the lender's

12  security interest in the event of a default by the tenant (Schiro) under the Proprietary

13  Lease with OTHC.

14     27.    The Recognition Agreement required OTHC to "notify Lender promptly

15  of any notice given by [OTHC] of [OTHC]'s intention to terminate the [Proprietary]

16  Lease" with Schiro. This notice would provide the lender an opportunity to cure the

17  default.

18     28.    The Recognition Agreement provides that "any notice" is "deemed valid

19  only if" the notice is mailed to the lender at the address provided or to a subsequent

20  address provided to OTHC.

21     29.    The Recognition Agreement also expressly recognizes that default on

22  lease payments pursuant to the Proprietary Lease by the tenant would <u>not</u> extinguish

23  the lender's rights in the Shares:

24              **"POSSESSION OF COLLATERAL.**

25              **(a) [OTHC] agrees that <u>so long as the Loan is</u>**

26              **<u>outstanding</u>, notwithstanding any contrary provision**
                **in the [Proprietary] Lease or [OTHC]'s Articles or**

27              **Bylaws or other corporate documents, <u>Lender shall</u>**
                **<u>be entitled to retain possession of the Shares</u>.**

28

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

THIRD PARTY COMPLAINT
*Seif Ascar v. U.S. Bank, N.A., et al.*, Case No. 2:13-cv-07496-ABC-SS

**(b) Upon payment of the Loan** and other approved obligations to which the Security relates, lender will return the Shares and the Lease to [OTHC] or in accordance with Corporation's instructions."

30.  Schiro's Loan remains unpaid and outstanding.  Therefore, U.S. Bank—as the predecessor in interest to the lender Metrocities—is "entitled to retain possession of the Shares."

31.  OTHC, in disregard of its contractual obligations under the Recognition Agreement, attempted to cancel the Shares.

32.  Ascar, Schiro, Omar Spahi, John Spahi and Joseph Orlando were aware of the Recognition Agreement and encouraged OTHC to breach the Recognition Agreement.

33.  They wanted OTHC to cancel the Shares so that OTHC could transfer the Property to Ascar.  OTHC did purport to transfer the Property to Ascar.

34.  Ascar did not pay fair market value for the Property.  In fact, Ascar paid nothing of value for the Property.

35.  OTHC had no right—and still has no right—to cancel the Shares so long as Schiro's Loan remains outstanding.

36.  U.S. Bank has a right to proceed to foreclosure pursuant to the Metrocities Deed of Trust.  The Propriety Lease—paragraph 6.07—also expressly acknowledges that in the event of default the lender can sell the Shares at a foreclosure sale and the lender thereafter could assign the Proprietary Lease to the purchaser that would have the obligation to cure any outstanding default.

37.  OTHC also breached the Recognition Agreement by failing to provide proper notice of Schiro's default under the Proprietary Lease to U.S. Bank, or its agent identified to receive all notices, namely Select Portfolio Servicing, Inc.

38.  OTHC claims that in 2012 Schiro defaulted on her lease payment obligations to OTHC.

THIRD PARTY COMPLAINT
*Seif Ascar v. U.S. Bank, N.A., et al.*, Case No. 2:13-cv-07496-ABC-SS

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

39.     OTHC had actual and constructive knowledge that notices were to be provided to Select Portfolio Servicing, Inc.. A Corporation Assignment of Deed of Trust recorded with the Los Angeles County Recorder's Office on March 1, 2011 identified Select Portfolio Servicing, Inc. as the agent for service. Attached hereto as Exhibit 8 is a true and correct copy of the Corporation Assignment of Deed of Trust.

40.     OTHC was provided notice that Select Portfolio Servicing, Inc. was the agent to which all notices relating to the Property or Schiro's Loan should be provided.

41.     John Spahi, a board member for OTHC, contacted Select Portfolio Servicing, Inc. in his capacity as a board member and at the direction of Joseph Orlando, to discuss Schiro's Loan before Schiro's purported default on her lease payments to OTHC. John Spahi and Joseph Orlando knew that Select Portfolio Servicing, Inc. was the proper entity to provide notice of any such default.

42.     OTHC, however, purportedly proceeded to provide notice of Schiro's default on her lease payments pursuant to the Proprietary Lease only to: (1) The Wolf Firm and (2) "Bank of America, N.A., General Questions and Inquiries." Neither address was *ever* identified as the proper address to send any notice pursuant to the Recognition Agreement.

a.     The Wolf Firm was merely the *foreclosure trustee* and was never the lender, the successor in interest to the lender Metrocities, the loan servicer, the attorney in fact for the lender or its successor in interest, or any other relationship to the Loan outside of its limited responsibilities relating to the foreclosure under the Metrocities Deed of Trust.

b.     The "general" account for Bank of America was never provided as the address for which notices pursuant to the Recognition Agreement should be provided. Nor was an correspondence sent to such an address reasonably likely to reach U.S. Bank or any of its agents relating to the Loan and Property.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

8

43.     Nor did Select Portfolio Servicing, Inc. or U.S. Bank have actual knowledge of Schiro's default or OTHC's intention to terminate her lease.

44.     Because proper notice was not provided at a proper address, it was not valid.  The Recognition Agreement clearly states that "any notice" is "deemed valid *only if*" the notice is mailed to the proper address.  Any subsequent action taken by OTHC pursuant to the notice, therefore, is void.

**C.     Schiro's Transfer of An Interest In the Property to the Spahi's.**

45.     Schiro transferred part of her interest in the Property to Omar Spahi and Fadila Spahi.

46.     Omar Spahi owned an interest in 21 properties in Ocean Towers and his family and relatives owned numerous other properties in Ocean Towers.

47.     John Spahi is the father of Omar Spahi.  On information and belief, it is alleged that John Spahi is the husband of Fadila Spahi.

48.     Schiro provided express authority to the loan servicer for the Loan, Select Portfolio Servicing, Inc., to allow Omar Spahi and John Spahi to discuss the Loan.

49.     John Spahi was, and currently is, a board member of OTHC.  He was a board member during all relevant time periods in this Third Party Complaint.

50.     John Spahi is also close personal friends with Third Party Defendant Joseph Orlando, the President and CEO of OTHC during all relevant time periods in this Third Party Complaint.

51.     Both Omar Spahi and John Spahi are related by blood to Plaintiff and Counter-defendant Ascar.  In addition to being blood relatives, the Spahi's and Ascars along with Joseph Orlando are also owners of the same business, Apex Investments Group, Inc. ("Apex"). The primary business of Apex is the purchase and rental of properties within the Ocean Towers building.

52.     Apex invested in and made loans to Omar Spahi in exchange for an interest in the Property.  Apex also invested in and made loans to Omar Spahi in exchange for an interest in other properties he owned in Ocean Towers.

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

9

53.     Joseph Orlando also made personal loans to Apex and to Omar Spahi that were secured by Omar Spahi's interest in the Property and other properties Omar Spahi in Ocean Towers.  Mr. Orlando knew that if the U.S. Bank foreclosed on the Property pursuant to the Metrocities Deed of Trust, he would lose his investment he made with Omar Spahi.

54.     At the direction of Joseph Orlando, John Spahi contacted the loan servicer regarding the Loan in his capacity as a board member for OTHC.  John Spahi also claimed that he had an ownership interest in the Property.

55.     John Spahi informed the loan servicer for the Loan that he wanted to cure the deficiency on the Loan.

56.     John Spahi—as a representative for OTHC—therefore, knew that Select Portfolio Servicing, Inc. was the loan servicer for Schiro's Loan.

**D.     Schiro's Default On Lease Payments and Her Loan.**

57.     On October 22, 2010, Omar Spahi filed for bankruptcy in the Bankruptcy Court for the Central District of California, *In re Omar Yehia Spahi*, Case. No. 2:10-bk-55580) (B.K. C.D. Cal 2010).

58.     Omar Spahi's foreclosure filing put in place an automatic stay that prevented any foreclosure proceedings relating to the Property.

59.     Omar Spahi filed for bankruptcy in an attempt to prevent foreclosure of the Property and the 20 additional properties he owned in the Ocean Towers that were also in default.

60.     In January 2012, after the Bankruptcy Court denied his requested relief, Omar Spahi moved to dismiss his bankruptcy proceeding.

61.     Having failed to achieve their objective in the bankruptcy proceeding, the Third Party Defendants came up with a scheme they believed would extinguish U.S. Bank's lien in the Property.

62.     Third-Party Defendants carried out the same scheme for other properties in Ocean Towers for which Omar Spahi, John Spahi, Schiro, Joseph Orlando and/or

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

10

1    Ascar held an ownership interest.

2        63.    Upon dismissal of the bankruptcy proceeding, Schiro stopped making her

3    lease payments pursuant to the Proprietary Lease.

4        64.    Omar Spahi, John Spahi, Ascar, Joseph Orlando and OTHC instructed

5    Schiro to stop making her lease payments to OTHC so OTHC could file an unlawful

6    detainer action and purport to transfer the Property to Ascar.

7        65.    OTHC intentionally failed to provide notice to U.S. Bank of Schiro's

8    default.  The Third Party Defendants knew that if U.S. Bank was provided notice of

9    Shciro's default, that it would have cured the default as it was entitled to do pursuant

10   to the Recognition Agreement. The purported default on Schiro's lease payments was

11   only $7,650.

12       66.    In June 2012 OTHC purportedly served a Three Day Notice to Pay Rent

13   or Quit on Schiro.

14       67.    Schiro failed to cure her default and OTHC filed an unlawful detainer

15   action against Schiro on July 25, 2012.  Judgment was entered in OTHC's favor in the

16   unlawful detainer action on August 13, 2012.

17       68.    The unlawful detainer judgment was limited to purportedly determining

18   possession of the Property and terminating the Proprietary Lease entered into between

19   OTHC and Schiro.  Because the unlawful detainer action was taken pursuant to an

20   improper notice under the Recognition Agreement, it is not deemed valid.

21       69.    The unlawful detainer judgment was part of the Third Party Defendants

22   and Ascar's scheme to try and extinguish any lien interest in the Property held by U.S.

23   Bank and to transfer the Property to Ascar.

24       70.    The unlawful detainer action had no effect on U.S. Bank's interest in the

25   Shares.  Pursuant to the Recognition Agreement, U.S. Bank would retain the Shares so

26   long as the Loan was outstanding—which it was and still is to this day.

27   **D.    Purported Transfer of Property to Ascar.**

28       71.    Omar Spahi owned an interest in 21 properties in Ocean Towers and his

11

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1   family and relatives owned numerous other properties in Ocean Towers.

2       72.     Omar Spahi's father, John Spahi, was a board member of OTHC and also

3   owns an interest in several units in Ocean Towers.

4       73.     Omar Spahi, John Spahi and Mourad Ascar, the relative of Ascar, all own

5   an interest in Apex, whose primary business is the purchase and rental of properties in

6   Ocean Towers.

7       74.     Omar Spahi and John Spahi lived together in one of the units they owned

8   in Ocean Towers.  John Spahi and Omar Spahi knew that Select Portfolio Servicing,

9   Inc. was the loan servicer for the Loan relating to the Property.

10      75.     Omar Spahi and John Spahi are related to Ascar and Schiro.

11      76.     Omar Spahi filed for bankruptcy on October 22, 2010 in the Bankruptcy

12  Court for the Central District of California (*In re Omar Yehia Spahi*, Case. No. 2;10-

13  bk-55580). In his bankruptcy filings, Omar Spahi noted that he owned an interest in

14  the Property and that the Property was worth $2.1 million.

15      77.     Omar Spahi conceded that the Property was subject to a lien created by

16  the Metrocities Deed of Trust.

17      78.     On or around November 2010, Omar Spahi attempted to list the Property

18  for sale at $2.1 million.

19      79.     Omar Spahi moved to dismiss his bankruptcy after the Court failed to

20  provide him with the relief he had requested.

21      80.     Shortly after the dismissal of his bankruptcy, Omar Spahi conspired with

22  Schiro, Ascar, John Spahi, Joseph Orlando and OTHC to try and extinguish U.S.

23  Bank's lien on the Property and transfer the Property unencumbered to Ascar for no

24  consideration of any value.

25      81.     On September 1, 2012, less than three weeks after the unlawful detainer

26  judgment was entered against Schiro, OTHC entered into a Memorandum of Lease

27  with Ascar.

28      82.     OTHC never attempted to market the Property for sale.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

12

83.   At the time the Property was purportedly acquired by Ascar, its fair market value exceeded $2,100,000.

84.   OTHC purportedly transferred the interest in the Property to Ascar. Ascar paid nothing for the Property.

85.   OTHC and Ascar also entered into a Deed of Trust, Pledge Agreement, Assignment of Rents and Security interest on August 30, 2012.

86.   Pursuant to the Recognition Agreement, OTHC was obligated to pay U.S. Bank "the net proceeds of the sale" of the Property up to the amount owed to U.S. Bank under Schiro's Loan. Based on the value of the Property, a sale at or near the fair market value would have fully paid off the balance on Schiro's Loan.

87.   The Third Party Defendants and Ascar knew that if they sold the Property, that the proceeds would have to be paid to U.S. Bank pursuant to the Recognition Agreement.

88.   They conspired, instead, to not sell the Property and simply transfer it to Ascar so they retained any value in the Property.

89.   OTHC did not make any payment to U.S. Bank or any of its agents.

90.   OTHC did not make any attempt to sell the Property for fair market value, which exceeded $2.1 million.

91.   The transfer of the Property to Ascar was not an arms-length transaction, but was a product of a fraudulent scheme entered into by Ascar and the Third Party Defendants.

92.   Ascar did not pay fair market value for the property.  In fact, Ascar paid nothing of value for the Property.

## FIRST CAUSE OF ACTION

### (Breach of Contract against OTHC)

93.   U.S. Bank realleges the allegations of paragraphs 1 through 92 above as through set forth in full herein.

94.   A valid contract—the Recognition Agreement—was entered into

13

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1    between U.S. Bank's predecessor in interest Metrocities, Schiro and OTHC.

2        95.    U.S. Bank and its predecessors in interest under the Recognition

3    Agreement fully performed any and all obligations under the contract.

4        96.    OTHC materially breached the Recognition Agreement.

5        97.    The Recognition Agreement required OTHC to provide U.S. Bank, the

6    successor in interest to the lender under the contract, with notice of Schiro's default on

7    her requisite payments pursuant to the Proprietary Lease agreement entered into

8    between Schiro and OTHC.

9        98.    The Recognition Agreement provides U.S. Bank a right to cure Schiro's

10   default on her payments to OTHC.  Paragraph 3 of the Recognition Agreement

11   provides, in relevant part:

12           (a) [OTHC] will notify Lender promptly of any notice given by

13           [OTHC] of [OTHC]'s intention to terminate the Lease or any

14           other default under the Lease …

15           (i) If lessee's default can be cured by the payment of money,

16           [OTHC] will take no action to terminate the Lease or cancel the

17           Shares if the default is cured either by Lender for the account or

18           Lessee or by Lessee within thirty (30) days after such notice of

19           default or intention to terminate."

20       99.    Paragraph 7 ("Notices") of the Recognition Agreement  provides that

21   "[a]ny notice approval or other communication provided for herein shall be deemed

22   valid only if the writing and [sic] sent … to the address of Lender" or to an address

23   later provided by the lender.

24       100.   OTHC failed to comply with the notice obligations under the Recognition

25   Agreement.

26       101.   OTHC did not provide notice of Schiro's default to U.S. Bank or the loan

27   servicer, Select Portfolio Servicing, Inc.  Nor did it provide notice to the address

28   provided in the Recognition Agreement of the original lender Metrocities.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

14

102.   OTHC had express and constructive knowledge of the proper address to send notices, including notices of Schiro's default.

103.   Pursuant to the terms of the Recognition Agreement, any action taken by OTHC after its failure to provide proper notice is deemed invalid.

104.   The Recognition Agreement provides U.S. Bank with the express right to cure Schiro's default.

105.   If OTHC had provided U.S. Bank or its agent Select Portfolio Servicing, Inc. with notice of Schiro's default on her lease payment obligations under the Proprietary Lease, U.S. Bank would have made the necessary payment to cure the default.

106.   OTHC's material breaches of the Recognition Agreement caused damage to U.S. Bank as it risks losing its security interest in the Property for the $1.272 million Loan made to Schiro.

## SECOND CAUSE OF ACTION

### (Breach of Contract against OTHC)

107.   U.S. Bank realleges the allegations of paragraphs 1 through 106 above as through set forth in full herein.

108.   A valid contract—the Recognition Agreement—was entered into between U.S. Bank's predecessor in interest Metrocities, Schiro and OTHC.

109.   U.S. Bank and its predecessors in interest under the Recognition Agreement fully performed any and all obligations under the contract.

110.   OTHC materially breached the Recognition Agreement.

111.   The Recognition Agreement prohibits OTHC from cancelling the Shares unless and until Schiro fully repays her Loan.

112.   U.S. bank is "entitled to retain possession of the Shares" so long as Schiro's Loan remains outstanding, which it is.

113.   OTHC proceeded to bring an unlawful detainer action against Schiro and claim that the judgment in the unlawful detainer action cancelled the Shares.  To the

15

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1  extent the unlawful detainer action was valid in light of the improper notice to the

2  lender and if it did act to cancel the Shares, it was in material breach of the

3  Recognition Agreement.

4      114.    OTHC's material breaches of the Recognition Agreement caused

5  damage to U.S. Bank as it risks losing its security interest in the Property for the

6  $1.272 million Loan made to Schiro.

7  **THIRD CAUSE OF ACTION**

8  **(Breach of Contract against OTHC)**

9      115.    U.S. Bank realleges the allegations of paragraphs 1 through 114 above as

10  through set forth in full herein.

11      116.    A valid contract—the Recognition Agreement—was entered into

12  between U.S. Bank's predecessor in interest Metrocities, Schiro and OTHC.

13      117.    U.S. Bank and its predecessors in interest under the Recognition

14  Agreement fully performed any and all obligations under the contract.

15      118.    OTHC materially breached the Recognition Agreement.

16      119.  The fair market value of the Property at the time it was purportedly

17  acquired by Ascar exceeded $2.1 million.

18      120.  The Recognition Agreement required that the proceeds from any sale of

19  the Property by OTHC exceeding the amount in default of Schiro's lease payments,

20  be provided to the lender.

21      121.  Schiro was in default in the amount of $7,650.  Therefore, the proceeds

22  of any sale of the Property exceeding $7,650 were to be used to satisfy U.S. Bank's

23  lien pursuant to the terms of the Recognition Agreement.

24      122.  No proceeds from the sale were provided to U.S. Bank or any of its

25  agents.

26      123.  OTHC breached the Recognition Agreement by failing to provide U.S.

27  Bank with the proceeds from its purported sale of the Property to Ascar.

28      124.  OTHC also breached the Recognition Agreement by failing to use good

16

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

faith and best efforts to sell the Property for fair market value.

125. If OTHC had sold the Property for at or near the fair market value, the proceeds from the sale of the Property would have been sufficient to satisfy the default on Schiro's lease payments to OTHC and the entirety of the outstanding amount Schiro owed on the Loan.

126. OTHC, instead, did not market the Property at all and sold the Property to a relative of one of its board members, John Spahi.

127. OTHC closed the sale on the Property less than three weeks after it obtained an unlawful detainer judgment against Schiro.

128. OTHC's material breaches of the Recognition Agreement caused damage to U.S. Bank exceeding $1.272 million, including the principle balance of the Loan plus all additional interest and fees U.S. Bank was entitled to under the Loan.

## FOURTH CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing against OTHC)

129. U.S. Bank realleges the allegations of paragraphs 1 through 128 above as through set forth in full herein.

130. A valid contract—the Recognition Agreement—was entered into between U.S. Bank's predecessor in interest Metrocities, Schiro and OTHC.

131. U.S. Bank and its predecessors in interest under the Recognition Agreement fully performed any and all obligations under the contract.

132. The fair market value of the Property at the time it was purportedly acquired by Ascar exceeded $2.1 million.

133. The Recognition Agreement required that the proceeds from any sale of the Property by OTHC exceeding the amount in default of Schiro's lease payments, be provided to the lender.

134. Schiro was in default in the amount of $7,650. Therefore, the proceeds of any sale of the Property exceeding $7,650 were to be used to satisfy U.S. Bank's lien pursuant to the terms of the Recognition Agreement.

17

135.  No proceeds from the sale were provided to U.S. Bank or any of its agents.

136.  OTHC breached its obligation of good faith and fair dealing in performing under the Recognition Agreement by failing to use good faith and its best efforts to sell the Property for fair market value.

137.  If OTHC had sold the Property for at or near the fair market value, the proceeds from the sale of the Property would have been sufficient to satisfy the default on Schiro's lease payments to OTHC and the entirety of the outstanding amount Schiro owed on the Loan.

138.  OTHC, instead, did not market the Property at all and sold the Property to a relative of one of its board members, John Spahi.

139.  OTHC closed the sale on the Property less than three weeks after it obtained an unlawful detainer judgment against Schiro.

140.  OTHC took these actions knowing that its failure to act in good faith would damage U.S. Bank.

141.  OTHC's breach of its implied covenant of good faith and fair deadline under  the Recognition Agreement caused damage to U.S. Bank exceeding $1.272 million, including the principle balance of the Loan plus all additional interest and fees U.S. Bank was entitled to under the Loan.

## FIFTH CAUSE OF ACTION

### (Declaratory Relief against ALL THIRD PARTY DEFENDANTS)

142.   U.S. Bank realleges the allegations of paragraphs 1 through 141 above as though set forth in full herein.

143.   By virtue of the foregoing facts and events, an actual controversy has arisen and now exists between U.S. Bank and all of the Third Party Defendants concerning the validity of U.S. Bank's lien on the Property created by the Metrocities Deed of Trust.

144.   An actual controversy also exists as to the validity of transactions and

18

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

1   actions by OTHC herein described relating to the Property and the Shares.

2       145.   OTHC claims its transfer of the Property to Ascar is valid and

3   extinguished U.S. Bank's lien on the Property. A determination of the Court is

4   necessary to ascertain the rights, obligations, and duties of the parties herein.

5       146.   U.S. Bank disputes the contentions of OTHC and seeks a judicial

6   declaration stating: (a) that U.S. Bank's security interest in the Property as evidenced

7   by the Metrocities Deed of Trust remains viable and enforceable against the Property

8   and (b) that the Metrocities Deed of Trust is senior to any other encumbrances on the

9   Property.

10       147.   A declaration by this Court is necessary and appropriate in order to

11   resolve the present dispute and controversy between the parties with regard to the

12   Property.

13       148.   U.S. Bank has no adequate remedy at law.

14       149.   Declaratory relief from this Court will terminate the present dispute and

15   controversy.

## SIXTH CAUSE OF ACTION

### (To Quiet Title against ALL THIRD PARTY DEFENDANTS)

18       150.   U.S. Bank realleges the allegations of paragraphs 1 through 149 above as

19   though set forth in full herein.

20       151.   U.S. Bank is the current holder of the Metrocities Note relating to the

21   $1.272 million Loan made to Schiro and the Metrocities Deed of Trust.

22       152.   U.S. Bank retains an interest in the Shares and a lien created by the

23   Metrocities Deed of Trust.

24       153.   U.S. Bank retains the right to foreclose on the Property if Schiro does not

25   meet her obligations under the Metrocities Note and Metrocities Deed of Trust.

26       154.   Any right, title, or interest, express, implied, equitable or otherwise, in

27   the Property and Shares purportedly issued by OTHC to Ascar relating to the

28   Property, if any, is subordinate to, and subject to, said interest held by U.S. Bank.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

19

155.   By virtue of the allegations contained herein and ostensible legal consequences of the void cancellation of the Shares by OTHC, U.S. Bank seeks to quiet title to the Property.

## SEVENTH CAUSE OF ACTION

### (Fraud against OTHC)

156.   U.S. Bank realleges the allegations of paragraphs 1 through 155 above as though set forth in full herein.

157.   OTHC made numerous misrepresentations to, or intentionally concealed material facts from, U.S. Bank and its representatives.

158.   OTHC intentionally failed to provide U.S. Bank or its agents with notice of Schiro's default on her requisite payments under the Proprietary Lease.  OTHC did so to prevent U.S. Bank from paying the amount of default on the loan, which was only $7,650.  OTHC knew that no entity would purportedly allow a lien exceeding $1.272 million to purportedly become extinguished based on a payment of $7,650.

159.   Board members of OTHC—John Spahi and Joseph Orlando—therefore intentional failed to provide its legal representatives with the proper address and entity to provide notice of Schiro's default. OTHC had actual knowledge of the proper entity acting as the loan servicer for Schiro's loan and that should have received notice. OTHC's board member, John Spahi, was provided express authority on two occasions to discuss Schiro's loan with Select Portfolio Servicing, Inc.

160.   John Spahi did not have any ownership interest in the Property.  He contacted Select Portfolio Servicing, Inc. solely in his capacity as a board member of OTHC.  He did so on behalf of OTHC's fraudulent scheme, and at the direction of its President and CEO Joseph Orlando, to try and extinguish U.S. Bank's lien on the Property.

161.   Despite knowing that Select Portfolio Servicing, Inc. was the proper entity to provide notice, OTHC did not instruct its agent to send notice to Select Portfolio Servicing. Inc.

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

20

162.   OTHC also intentionally sold the Property to a relative of its board member John Spahi as part of its scheme to extinguish U.S. Bank's lien.

163.   OTHC did not, and never had any intention of, selling the Property for a fair market value and paying any amount exceeding the outstanding lease payments owed by Schiro to U.S. Bank.

164.   OTHC did so despite knowing that the fair market value of the Property exceeded $2.1 million and exceeded the total amount owed by Schiro for her lease payments and the outstanding amount of her Loan.

165.   Instead, OTHC transferred the Property to Ascar without ever marketing the Property or attempting to sell it for a fair market value.  This was done to avoid OTHC's obligation under the Recognition Agreement to pay the amount of the sale of the Property to U.S. Bank.

166.   The purported transfer of the Property to Ascar was not an arms-length transaction. Ascar is related to Omar Spahi, John Spahi and Schiro.  John Spahi was a member of the board for OTHC.

167.   Further, these individuals and OTHC have carried out the same conspiracy to attempt to transfer other units in the Ocean Towers building to relatives without paying fair market value or participating in an arms-length transaction.  As with the transfer of the Property in this case, the goal is to avoid the lienholder's right in the Property and Shares and right to the proceeds of the sale of the Property.

168.   U.S. Bank is informed, believes and thereon alleges that Ascar, OTHC, John Spahi, Joseph Orland, Omar Spahi and Schiro all had knowledge and agreed to participate in the scheme to cancel the shares and convey the Property to Ascar as alleged in these Counterclaims.

169.   As a result of this conspiracy, U.S. Bank has suffered damages via the potential loss of its security interest, in an amount to be proven at the time of trial.

170.   The fraudulent conduct by OTHC as alleged was willful, wanton, malicious, and oppressive, and was undertaken with the intent to defraud U.S. Bank.

21

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1   Accordingly, punitive damages are warranted against OTHC.

2   ## EIGHTH CAUSE OF ACTION

3   ### (Civil Conspiracy to Commit Fraud against ALL THIRD PARTY

4   ### DEFENDANTS)

5   171.   U.S. Bank realleges the allegations of paragraphs 1 through 170 above as

6   though set forth in full herein.

7   172.   U.S. Bank is informed, believes and thereon alleges that Ascar, Omar

8   Spahi, John Spahi, Joseph Orlando, OTHC and Schiro conspired to try and cancel the

9   Shares and extinguish U.S. Bank's security interest in the Property.

10   173.   Ascar, Omar Spahi, John Spahi, Joseph Orlando, OTHC and Schiro

11   conspired to have OTHC cancel the Shares and transfer the Property to Ascar for

12   nothing of value, let alone fair market value.

13   174.   OTHC did not, and never had any intention of, selling the Property for a

14   fair market value and paying any amount exceeding the outstanding lease payments

15   owed by Schiro to U.S. Bank.

16   175.   OTHC did so despite knowing that the fair market value of the Property

17   exceeded $2.1 million and exceeded the total amount owed by Schiro for her lease

18   payments and the outstanding amount of her Loan.

19   176.   Instead, OTHC transferred the Property to Ascar without ever marketing

20   the Property or attempting to sell it for a fair market value.  This was done to avoid

21   OTHC's obligation under the Recognition Agreement to pay the amount of the sale of

22   the Property to U.S. Bank.

23   177.   The purported transfer of the Property to Ascar was not an arms-length

24   transaction. Ascar is related to Omar Spahi, John Spahi and Schiro.  John Spahi was a

25   member of the board for OTHC.

26   178.   Further, these individuals and OTHC have carried out the same

27   conspiracy to attempt to transfer other units in the Ocean Towers building to relatives

28   without paying fair market value or participating in an arms-length transaction.  As

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

with the transfer of the Property in this case, the goal is to avoid the lienholder's right in the Property and Shares and right to the proceeds of the sale of the Property.

179.   U.S. Bank is informed, believes and thereon alleges that Ascar, OTHC Omar Spahi, John Spahi, Joseph Orlando, and Schiro all had knowledge and agreed to participate in the scheme to cancel the shares and convey the Property to Ascar as alleged in these Counterclaims.

180.   As a result of this conspiracy, U.S. Bank has suffered damages via the potential loss of its security interest, in an amount to be proven at the time of trial.

181.   The conduct by Third Party Defendants in the conspiracy as alleged was willful, wanton, malicious, and oppressive, and was undertaken with the intent to defraud U.S. Bank.  Accordingly, punitive damages are warranted against all of the Third Party Defendants.

**WHEREFORE**, U.S. Bank prays for judgment as follows:

1.   That the Court enter its judgment declaring that U.S. Bank's lien interest created by the Metrocities Deed of Trust in the Property and Shares has not been extinguished.

2.   That the Court award U.S. Bank all compensatory damages caused by OTHC's breaches of the Recognition Agreement and breach of the implied covenant of good faith and fair dealing under the Recognition Agreement.

3.   That the Court award punitive damages against Third Party Defendants in an amount to be determined at trial.

4.   That the Court quiet title as to U.S. Bank's interest in the Property as requested.

5.   That the Court award all other appropriate and just relief.

## **DEMAND FOR JURY TRIAL**

1.   U.S. Bank hereby demands a trial by jury in this matter.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

Dated:  April 18, 2014

Respectfully submitted,

LOCKE LORD LLP


By: ___/s/ Daniel A. Solitro___
            Conrad V. Sison
            Daniel A. Solitro
Attorneys for
Defendants/Crossclaimants/Third Party
Plaintiff U.S. BANK, N.A. and Defendant
SELECT PORTFOLIO SERVICING,
INC.

THIRD PARTY COMPLAINT
*Seif Ascar v. U.S. Bank, N.A., et al.*, Case No. 2:13-cv-07496-ABC-SS

EXHIBIT 1

092378
3.04

# PROPRIETARY LEASE

## Apartment # _____

## OCEAN TOWERS HOUSING CORPORATION

### Landlord

_____

### Tenant

Ocean Towers Apartments
Santa Monica, California

_____, 1978

## EXHIBIT C TO PLAN OF COOPERATIVE ORGANIZATION

Exhibit ___, Pg. 25

11178

# TABLE OF CONTENTS

Page

## ARTICLE I

### LEASED PREMISES

| | | |
|---|---|---|
| 1.01 | The Apartment | 2 |
| 1.02 | The Garage | 2 |
| 1.03 | Common Areas | 2 |
| 1.04 | Apartment Defined | 2 |

## ARTICLE II

### TERM OF LEASE/POSSESSION

| | | |
|---|---|---|
| 2.01 | Term | 3 |
| 2.02 | [Alternate] Possession | 3 |
| 2.02 | [Alternate] Termination of Existing Lease | 3 |
| 2.03 | Quiet Possession and Tenancy | 3 |
| 2.04 | Surrender of Lease | 3 |

## ARTICLE III

### RENTAL

| | | |
|---|---|---|
| 3.01 | Basic Rental | 4 |
| 3.02 | Real Property Taxes | 4 |
| 3.03 | Operating Costs | 4 |
| 3.04 | Place and Manner of Payment | 5 |

## ARTICLE IV

### MAINTENANCE, SERVICES AND UTILITIES

| | | |
|---|---|---|
| 4.01 | Landlord's Maintenance Obligations | 5 |
| 4.02 | Maintenance and Repairs by Tenant | 6 |
| 4.03 | Incidental Apartment Maintenance | 6 |

Exhibit _1_, Pg. _26_

110278

|  |  | Page |
|---|---|---|
| 4.04 | Utilities | 6 |
| 4.05 | Additional Services | 7 |
| 4.06 | Modification of Services | 7 |

## ARTICLE V

### USE OF PREMISES

| 5.01 | Permitted Use | 7 |
|---|---|---|
| 5.02 | Qualified Individuals | 7 |
| 5.03 | Regulation of Use | 8 |
| 5.04 | Nuisance | 8 |
| 5.05 | Rules and Regulations | 8 |
| 5.06 | Indemnity | 9 |
| 5.07 | Waiver of Subrogation | 9 |

## ARTICLE VI

### ASSIGNMENT AND SUBLETTING

| 6.01 | Subletting | 10 |
|---|---|---|
| 6.02 | Voluntary Assignment | 10 |
| 6.03 | Involuntary Assignment | 11 |
| 6.04 | Release of Tenant Upon Assignment | 11 |
| 6.05 | Limitations on Assignment and Subletting | 11 |
| 6.06 | Hypothecation | 12 |
| 6.07 | Certain Lenders | 12 |

## ARTICLE VII

### ALTERATIONS

| 7.01 | Permitted Alterations | 12 |
|---|---|---|
| 7.02 | Restoration | 13 |
| 7.03 | Liens | 13 |

110278

Page

ARTICLE VIII

DEFAULTS; REMEDIES

| 8.01 | Events of Default | 14 |
| 8.02 | Remedies Upon Default | 14 |
| 8.03 | Surrender of Shares | 16 |
| 8.04 | Late Charges | 16 |
| 8.05 | Collateral Security Agreement | 16 |
| 8.06 | Limitation on Damages | 17 |

ARTICLE IX

GENERAL PROVISIONS

| 9.01 | Eminent Domain | 17 |
| 9.02 | Limitation of Warranties | 17 |
| 9.03 | Headings | 18 |
| 9.04 | Choice of Laws | 18 |
| 9.05 | Attorneys' Fees | 18 |
| 9.06 | Notices | 18 |
| 9.07 | Severability | 18 |
| 9.08 | Miscellaneous Terms | 18 |
| 9.09 | Waiver | 18 |
| 9.10 | Cooperation | 19 |
| 9.11 | Partition | 19 |
| 9.12 | Successors and Assigns | 19 |
| 9.13 | Memorandum Lease | 19 |

Exhibits

| A. | Articles of Incorporation of Ocean Towers |
| B. | By-Laws of Ocean Towers |
| C. | Description of Existing Lease |
| D. | Schedule of Cost Allocation |
| E. | Rules and Regulations for Residents |

111078
3.04

## PROPRIETARY LEASE

This Proprietary Lease of Apartment Number _____ (the "Apartment") of the Ocean Towers Apartments is made as of the ____ day of November, 1978 for a term which shall commence as of November ____, 1978 (the "Commencement Date") by and between OCEAN TOWERS HOUSING CORPORATION, a California corporation ("Landlord") and

_____

("Tenant").

## R E C I T A L S

A.     Landlord is the owner of that certain apartment building and appurtenant improvements commonly known as the Ocean Towers Apartments located at 201 Ocean Avenue, Santa Monica, California, more particularly described as Lots 22, 23, 24, 25 and 26 in Block "M" of the Palisades, as per map recorded in Book 8, Page 32 of Maps in the Office of the County Recorder of Los Angeles County ("Ocean Towers").

B.     Landlord intends to operate Ocean Towers as a cooperative housing project. By executing this Lease, Tenant has acknowledged that Tenant's use and occupancy of the Apartment shall be governed by the terms and conditions of this Lease, the Articles and By-Laws of Landlord, and the reasonable rules and regulations from time to time adopted by the Board of Directors (the "Board") of Landlord pursuant to authority granted by the Articles, the By-Laws and any amendments thereto which may be adopted by the shareholders of Landlord. The Articles of Landlord (the "Articles") are attached as Exhibit A and the By-Laws of Landlord (the "By-Laws") are attached as Exhibit B.

C.     On the Commencement Date Tenant will acquire _____ ( _____ ) shares (the "Shares") of the capital stock of Landlord, which Shares have been allocated to the Apartment. The Apartment is shown on the plan attached to the By-Laws as Exhibit A and by this reference incorporated herein (the "Plan"). The Shares represent Tenant's proportionate ownership in the total issued capital stock of Landlord.

D.     It is the intention of the parties that Tenant shall acquire a "Stock Cooperative Unit" in Ocean Towers which shall consist of the Shares together with the leasehold estate created by this Proprietary Lease of the Apartment and other appurtenant interests hereby demised to Tenant. The leasehold shall be on the terms and conditions set forth in this Lease.

E.     Tenant concurrently will grant a security interest in this Lease in favor of Landlord to secure Tenant's obligations hereunder. In addition, the Landlord may assign this Lease to, or grant a security interest in this Lease in favor of, Ocean Towers Group, a California general partnership, or any other person.

Exhibit __1__, Pg. __29__

NOW THEREFORE, Landlord and Tenant hereby agree as follows:

## ARTICLE I

### LEASED PREMISES

1.01   The Apartment.  Landlord hereby leases the Apartment to Tenant and Tenant hereby hires the Apartment from Landlord, for the term, at the rental and upon the covenants, provisions and conditions hereinafter set forth, together with the exclusive right to occupy the garage space for the Apartment, as provided in Section 1.02 hereof, together with a non-exclusive easement to use and enjoy all of the Common Areas, as defined in Section 1.03 hereof.

1.02   The Garage.  As an appurtenance to the Apartment hereby leased to Tenant, Tenant shall be entitled, at no extra rental, to the exclusive right to occupy parking stall _____ for _____ automobiles as shown in the garage plan that is attached: (i) to the copy of Landlord's By-Laws in Landlord's minute book which is available for inspection in Landlord's office and, (ii)  to the copy of Landlord's By-Laws that is included as Exhibit B to that certain Memorandum of Proprietary Lease of Apartment Number 1504B of Ocean Towers between Michael M. Sachs and Landlord which will be recorded in the office of the Los Angeles County Recorder on the Commencement Date.  Such area shall be used only for the storage of automobiles (which may include a pick-up truck, van or camper with a capacity not to exceed 3/4 ton), and shall not be used for storage of goods, automobile repair or maintenance or any other use other than the storage of automobiles. Tenant agrees to comply with the reasonable rules and regulations of the Board which may be adopted with respect to the use of the garage.  In addition, parking shall be made available to guests of all of the tenants of Ocean Towers in accordance with rules and regulations from time to time adopted by the Board.

1.03   Common Areas.  Reference herein to the "Common Areas" shall mean and refer to all of the land upon which Ocean Towers is located, the hallways, laundry rooms, lobbies, elevators, driveways, walkways, swimming pool, patio, gymnasium, billiard room, clubroom and other recreational facilities and all other areas within Ocean Towers, excluding the apartments within Ocean Towers and garage or storage areas reserved for the exclusive use of shareholders.  Such Common Areas shall be available for the common use of all tenants and shareholders of Ocean Towers, subject however to the provisions of the By-Laws relating to such use and to such rules and regulations for such use as may be adopted by the Board, pursuant to authority granted by the By-Laws.

1.04   Apartment Defined.  Reference herein to the "Apartment" shall mean the dwelling space bounded by and contained within the interior surfaces of the perimeter walls, floors, ceilings, windows and doors together with any balconies attached thereto, of the Apartment demised to Tenant by this Lease, as shown on the Plan.

110278

## ARTICLE II

### TERM OF LEASE/POSSESSION

2.01   Term.   This Lease shall be for a term which shall commence on the Commencement Date and shall terminate on September 30, 2077, unless terminated earlier in accordance with the provisions hereof.

2.02   [Alternate]   Possession.   Tenant shall be entitled to possession of the Apartment as of the Commencement Date, subject, however, to the prior rights of the tenant in possession pursuant to an existing lease, rental agreement or periodic tenancy described in Exhibit C attached hereto (the "Rental Arrangement"). By execution of this Lease, Tenant acknowledges the existence of said prior Rental Arrangement and acknowledges that such prior Rental Arrangement has been assigned to Tenant pursuant to an Assignment of even date herewith.

2.02   [Alternate]   Termination of Existing Lease.   Tenant acknowledges that Tenant has heretofore occupied the Apartment pursuant to a lease, rental agreement or periodic tenancy described in Exhibit C attached hereto (the "Rental Arrangement"). By execution of this Lease, Landlord and Tenant acknowledge that, concurrently with the execution hereof, said prior Rental Arrangement and all of Landlord's and Tenant's rights and obligations thereunder have been terminated pursuant to a Termination Agreement of even date herewith.

2.03   Quiet Possession and Tenancy.   If and so long as Tenant pays all rental hereby reserved and keeps, performs and observes all of his obligations hereunder, Tenant shall be entitled to quiet possession of the Apartment subject to the terms and conditions of this Lease and the Articles and By-Laws. However, Tenant's occupancy and tenancy are subject to the underlying deeds of trust which encumber Ocean Towers and any foreclosure thereof which might result if Landlord defaults in its obligations to pay the debts secured by such deeds of trust.

2.04   Surrender of Lease.   Tenant shall have the right, at any time during the term of this Lease, to surrender Tenant's leasehold estate and cancel this Lease and upon the payment of all rental and other charges payable to the date of such cancellation and a cancellation fee equal to six (6) months basic rental and additional rental at the then current rate, as defined in Sections 3.01, 3.02 and 3.03, Tenant shall be relieved of any further liability hereunder.

Exhibit __1__, Pg. _31_

## ARTICLE III.

## RENTAL

3.01   Basic Rental.   Tenant shall pay, as basic rental for the Apartment the sum of $_____ per month, said rental to be paid in advance on the first day of each month commencing on the first day of the first full month following the Commencement Date and continuing for a total of 375 months, with the last such rental payment to be due and payable on March 1, 2010.  After said date, Tenant shall have no further liability for basic rental hereunder but shall continue to be liable for the additional rental payable pursuant to Sections 3.02 and 3.03 hereof.  The payments to be made for basic rental are subject to modification in the event of a refinancing of Ocean Towers as authorized in the By-Laws.  In addition, Tenant shall pay the sum of $_____ per day as basic rental hereunder for the period commencing with the Commencement Date and terminating on the last day of the month in which the Commencement Date occurs.  Said sum shall be payable on the Commencement Date.

3.02   Real Property Taxes.   Tenant shall pay monthly, as additional rental, its proportionate share of all real property taxes and assessments levied or assessed against Ocean Towers and/or Landlord from and after the Commencement Date.  The amount of each monthly installment of taxes payable by Tenant hereunder shall be established from time to time by the Board as necessary to provide a fund for the payment of all such taxes and assessments as they become due.  Tenant's proportionate share of such taxes shall be a fraction, the numerator of which shall be the number of Shares of Ocean Towers Housing Corporation stock held by Tenant and the denominator of which shall be 106,797 (the total number of shares of Ocean Towers Housing Corporation stock allocated to all of the Apartments).  In addition, Tenant shall pay the sum of $_____ per day as additional rental hereunder for the period commencing with the Commencement Date and terminating on the last day of the month in which the Commencement Date occurs.  Said sum shall be payable on the Commencement Date.

3.03   Operating Costs.   Tenant shall pay, as additional rental, its proportionate share of the annual operating budget of Landlord as established from time to time by the Board.  Such budget shall be established for the payment, inter alia, of the cost of maintenance, supplies, repair and management of Ocean Towers, for utility services provided for the Common Areas, the cost of casualty, liability and other necessary insurance carried by Landlord for the benefit of Ocean Towers and each of Landlord's shareholders, the cost of services of independent contractors, the costs of compensation (including employment taxes and fringe benefits) of all persons who perform regular and recurring duties connected with the day-to-day management, operation, maintenance, repair and overhaul of Ocean Towers, its equipment and adjacent walks, driveways, pools and landscaped areas including, without limitation, janitors, gardeners, garage attendants, desk clerks, operators and others,

Exhibit __1__, Pg. 32

110278

all taxes and fees (other than real property taxes payable pursuant to Section 3.02) of every kind and nature levied against Ocean Towers or Landlord including license, franchise, income, sales and other taxes and fees, a reserve for capital improvements and delinquent rents, and any other legitimate costs incurred by Landlord in connection with the maintenance, repair, management and operation of Ocean Towers. Tenant's proportionate share of such operating budget shall be as set forth on the Schedule attached hereto as Exhibit D. In the event, however, that at any time any apartment in Ocean Towers shall not be subject to a Proprietary Lease, the charges that would otherwise be levied against such apartment shall be charged against all other apartments in the proportion that their respective charges for operating costs bear to each other. Tenant shall pay his share of the operating budget and any such additional charges in monthly installments on the first day of each month commencing on the first day of the first full month following the Commencement Date and continuing throughout the term of this Lease. In addition, Tenant shall pay as additional rental his proportionate share of any special assessments which may be adopted by the Board to meet extraordinary expenses, as authorized by the By-Laws. In addition, Tenant shall pay the sum of $_____ per day as additional rental hereunder for the period commencing with the Commencement Date and terminating on the last day of the month in which the Commencement Date occurs. Said sum shall be payable on the Commencement Date.

3.04  **Place and Manner of Payment.** All basic and additional rental payable hereunder shall be payable in lawful money of the United States at the office of Landlord at Ocean Towers or at such other address and to such designated payee as Landlord shall, from time to time, designate.

## ARTICLE IV

## MAINTENANCE, SERVICES AND UTILITIES

4.01  **Landlord's Maintenance Obligations.** Landlord shall, during the term of this Lease, maintain and repair all Common Areas, as well as the garage, roofs, elevators, foundations, exterior walls, landscaping, plumbing, and electrical, heating and central air conditioning systems in Ocean Towers. Such work shall include regular janitorial services, exterior window washing, landscaping and routine and major repairs and maintenance. Landlord shall be responsible for the replacement of any broken windows in the Common Areas and for the cleaning of all windows in the Common Areas and the exterior of all windows in Ocean Towers. The standard for maintenance shall be as established from time to time by the Board, it being understood that the Board represents all of the shareholders of Landlord, including Tenant. Therefore, in the event that Tenant feels that the maintenance provided by Landlord hereunder is not satisfactory, Tenant's sole remedy shall be to exercise its rights as a shareholder of Landlord in accordance with the Articles and

Exhibit 1, Pg. 33

By-Laws. Tenant waives the provisions of any law permitting Tenant to make repairs at Landlord's expense.

4.02  Maintenance and Repairs by Tenant. Except as otherwise provided herein, Tenant shall, during the term of this Lease, maintain and repair the Apartment and every part thereof including, without limiting the generality of the foregoing, all plumbing, heating, ventilating, electrical and lighting fixtures and equipment within the Apartment, all appliances, fixtures, interior walls and interior surfaces of exterior walls, ceilings, floors and floor coverings, windows, doors and entrances of the Apartment. Tenant shall also be responsible for the replacement of broken windows in the Apartment.

4.03  Incidental Apartment Maintenance. Subject to such other procedures and practices as may from time to time be adopted by the Board, Landlord shall provide, as an additional service to Tenant, incidental maintenance and repair of the plumbing and electrical fixtures within the Apartment including, by way of example, incidental repair of toilets, sinks and drains, air conditioning unit, dishwasher, stove and other built-in appliances; provided, however, that Tenant shall be responsible for the cost of all parts necessary to repair such items. Such maintenance shall not extend to major repairs or overhaul requiring the services of a licensed plumber, electrician or repairman.

4.04  Utilities.

(a)  Landlord shall provide and pay for lighting, heating, air conditioning, water and other utility services to the Common Areas and to the garage areas of Ocean Towers.

(b)  Landlord shall provide and pay for normal municipal water service to the Apartment as well as a circulating water system to the air conditioning unit in the Apartment.

(c)  Landlord shall provide, pay for and maintain a 24 hour internal telephone system within Ocean Towers, which service shall include acceptance of incoming calls to the apartments within Ocean Towers and telephone service between the Apartment and the front desk and other telephone stations within Ocean Towers. No outgoing telephone service will be provided through the Ocean Towers switchboard. Tenant may have installed and pay for his own private telephone line.

(d)  Electric service to the Apartment, including electricity to the heating and air conditioning unit within the Apartment, shall be paid by Tenant.

(e)  Landlord shall provide, pay for and maintain a television antenna system for use by all tenants of Ocean Towers. If Tenant elects to subscribe to a commercial cable television system, the cost thereof shall be paid by Tenant. Tenant shall not install or maintain

110178

any external antenna system on any balcony of the Apartment.

4.05   Additional Services.   In addition to the maintenance service provided pursuant to Section 4.01 hereof, the incidental maintenance provided pursuant to Section 4.03 and the utility services provided pursuant to Section 4.04, Landlord shall provide the following additional services:

(a)   Twenty-four hour valet parking for Tenant's automobiles and those of guests of Tenant.   Tenant shall be entitled to park only so many automobiles in the garage as spaces are allocated to the Apartment.

(b)   Twenty-four hour doorman service to Ocean Towers.

(c)   Twenty-four hour desk clerk service.

(d)   Such other services as may from time to time be adopted by the Board.

4.06   Modification of Services.   Tenant acknowledges and understands that (i) the By-Laws permit the Board and the shareholders of Landlord to make certain changes in the scope of services provided by Landlord pursuant to Sections 4.01, 4.03, 4.04 and 4.05 hereof, (ii) the scope and quality of such services shall be under the control of the Board and (iii) Tenant shall not be entitled to any abatement or reduction of rent by reason of Landlord's failure to furnish any of the foregoing services for any reason whatsoever, or as a result of the decision by the Board or the shareholders of Landlord to terminate or modify any of such services but Tenant's sole recourse in such event shall be to exercise its right as a shareholder of Landlord.   No failure to furnish any such services shall constitute an event of constructive eviction.   No abatement of rent, or other compensation shall be claimed or allowed for loss, inconvenience or discomfort arising from the making of repairs, alterations or improvements to the entrances, lobbies, elevators, halls or any other part of the interior or exterior of Ocean Towers, or to any other Common Area.

## ARTICLE V

### USE OF PREMISES

5.01   Permitted Use.   Tenant shall use the Apartment as a single family residence and for no other purposes.

5.02   Qualified Individuals.   Reference herein to a "Qualified Individual" shall mean any natural person (including a husband and wife) or

7

Exhibit ___1___, Pg. 35

11278

a revocable trust, the beneficiary of which is a natural person but shall not include a corporation, general or limited partnership, irrevocable trust or similar entity.   Tenant warrants and represents that Tenant is a Qualified Individual and agrees that the Apartment will be occupied only for single family residential purposes.

### 5.03   Regulation of Use.

(a)   No pets or other animals may be kept in the Apartment except in accordance with such rules and regulations as may be adopted by the Board from time to time.

(b)   Tenant will not do or permit anything to be done in the Apartment which may be deemed extra hazardous on account of fire or which will increase the rate of fire insurance within Ocean Towers, and will not keep, permit or store any inflammable, combustible or explosive fluid, chemical or substance in the Apartment.

(c)   Tenant will not permit the accumulation of waste or refuse matter in the Apartment nor store any goods or items on any balcony or in any Common Area except in designated storage areas established by the Board.

(d)   Tenant will not install or cause to be installed any additional electrical wiring or outlets in the Apartment without the consent of Landlord.

(e)   Tenant will not display any signs, notices or advertisements at any window of the Apartment, will not place or hang any article on the exterior window sills or on or over balcony railings of the Apartment, nor place any item on the balconies that could be blown or knocked off or that might otherwise constitute a hazard to life or property.

(f)   Tenant will not install any additional locks or bolts on the doors of the Apartment without delivering a key to such lock to Landlord; provided however that the foregoing shall not require Tenant to deliver keys to door security devices operable only from the interior of the Apartment.

5.04   Nuisance.   The Apartment shall not be used in such a manner as to obstruct or interfere with the enjoyment of occupants of other apartments in Ocean Towers or annoy them by unreasonable noises or otherwise, nor shall any nuisance or illegal activity be committed or permitted to occur in the Apartment.

5.05   Rules and Regulations.   Tenant and all persons dwelling in or visiting the Apartment will observe and comply with all rules and regulations applicable to the Common Areas and to all apartments within

8

Exhibit ___1___, Pg. _36_

Ocean Towers now or hereafter adopted by the Board, or as the Board may from time to time deem appropriate for the government, management, safety, care and cleanliness of Ocean Towers and the preservation of good order therein as well as the comfort, quiet and convenience of all tenants and occupants of Ocean Towers and all such rules and regulations now or hereafter adopted are hereby made a part of this Lease as if fully incorporated herein.   A copy of the rules and regulations in effect as of the date hereof is attached to this Lease as Exhibit E and by this reference incorporated herein.

5.06   Indemnity.   Tenant hereby agrees to indemnify and hold Landlord harmless from and against any and all liability of Landlord arising from Tenant's use and occupation of the Apartment or from any activity, work or things done, permitted or suffered by Tenant in or about the Apartment or elsewhere. Tenant further agrees to indemnify and hold Landlord harmless from and against any and all liabilities arising from any breach or default in the performance of any of Tenant's obligations hereunder, or arising from any negligence of Tenant, or any of Tenant's agents, guests or invitees, and from and against all liability for costs, attorneys' fees, and other expenses incurred in the defense of any claim for such liability or any action or proceeding brought thereon.   In the event that Landlord is ever made a party to any action or proceeding by reason of any matter for which Tenant has hereby agreed to indemnify Landlord, then Tenant, upon notice from Landlord, shall defend such action or proceeding on behalf of Landlord at Tenant's expense by counsel satisfactory to Landlord.   Tenant, as a material part of the consideration for this Lease, hereby assumes, as between Landlord and Tenant, all risk of damage to property or injury to persons, in, upon or about the Apartment arising from any cause except such damage resulting from the negligence or willful misconduct of Landlord or its agents or employees and Tenant hereby waives all claims in respect thereof against Landlord.

5.07   Waiver of Subrogation.   Landlord agrees to use its best efforts to obtain a provision in all insurance policies carried by it waiving the right of subrogation against Tenant and, to the extent that any loss or damage is covered by Landlord by any insurance policies which contain such waiver of subrogation, Landlord releases Tenant from any liability with respect to such loss or damage. In the event that Tenant suffers loss or damage for which Landlord would be liable, and Tenant carries insurance which covers such loss or damage and such insurance policy or policies contain a waiver of subrogation against Landlord, then in such event Tenant releases Landlord from any liability with respect to such loss or damage.

11278

# ARTICLE VI

## ASSIGNMENT AND SUBLETTING

6.01    Subletting.

(a)     Subject to subsection 6.01(b) below, Tenant shall have the right, from time to time, to sublet all, but not less than all, of the Apartment to any Qualified Individual provided that the term of any such sublease shall be not less than three (3) months and such subtenant may occupy the Apartment only in conformance with the terms and conditions set forth in this Lease and the Articles and By-Laws. Any subletting except as provided herein shall constitute an Event of Default under the terms of this Lease.

(b)     Subletting may only occur if consent to such subletting shall have been duly given by an instrument in writing signed by a duly authorized representative of the Board. Such consent shall not be unreasonably withheld. The standards employed in determining whether consent shall be given shall be uniform and objective. Such standards shall not, under any circumstances, include qualifications based upon race, creed, color, sex or national origin.

6.02    Voluntary Assignment.   Tenant shall not assign this Lease or transfer the Shares to anyone other than a Qualified Individual, and no such assignment or transfer shall take effect for any purposes unless and until the following conditions have been met:

(a)     An instrument of assignment of the Lease, duly executed and acknowledged by Tenant, shall have been delivered to the Board and, after receipt of the consent described in subsection 6.02(e) below, a copy of such assignment shall be recorded in the Official Records of Los Angeles County;

(b)     An agreement by the Assignee assuming and agreeing to perform and comply with all the covenants and conditions of this Lease to be performed by the Tenant on and after the effective date of such assignment shall have been executed and acknowledged by the Assignee and delivered to the Board;

(c)     All of the Shares shall have been presented to Landlord with all necessary documents to enable Landlord to transfer such Shares to the Assignee and to record such transfer on Landlord's books;

(d)     All rental and other sums due from Tenant, together with a sum to be fixed by the Board to cover reasonable legal and other expenses of Landlord in connection with the assignment of this Lease and the transfer of the Shares shall have been paid to Landlord; and

(e)     Consent to such assignment shall have been duly given by an instrument in writing which is to be signed by a duly

Exhibit __1__, Pg. 38

authorized representative of the Board.  Such consent shall not be unreasonably withheld.  The standards employed in determining whether consent shall be given shall be uniform and objective.  Such standards shall not, under any circumstances, include qualifications based upon race, creed, color, sex or national origin.  No such consent shall be required in the case of (i) an assignment, transfer or bequest of this Lease to Tenant's spouse, or (ii) if Tenant shall consist of a husband and wife, an assignment or transfer by one of such individuals to the other, or (iii) an assignment to a revocable trust established for the benefit of Tenant.

6.03   Involuntary Assignment.

(a)   In the event that (i) any entity other than a Qualified Individual shall at any time acquire Tenant's Stock Cooperative Unit as a result of an assignment by operation of law, such as, by way of example, upon the death or bankruptcy of Tenant or as a result of a foreclosure of any lien which may encumber Tenant's Stock Cooperative Unit (whether obtained by judicial process or voluntarily given), or (ii) a bank or other lending institution shall acquire Tenant's Stock Cooperative Unit by foreclosure (or by instrument in lieu of foreclosure) and hold Tenant's Stock Cooperative Unit for a period more than three (3) years from the date of acquisition, such entity may be required to divest itself of Tenant's Stock Cooperative Unit at any time upon six months prior written notice by the Board.  The Board shall require an entity to divest itself of a Stock Cooperative Unit if, in the reasonable judgment of the Board, such divestiture is necessary or advisable in order to comply with any applicable law imposing limitations on the holding of Stock Coopera-tive Units by entities other than Qualified Individuals such as, by way of example, the provisions of Internal Revenue Code §216 or such other laws as may hereafter be promulgated by any governmental body having jurisdiction.  Any policies or guidelines which may be adopted by the Board with respect to the divestiture of Stock Cooperative Units by nonqualified entities shall be uniformly applied and, to the extent practically applicable, shall provide that divestitures shall be required first by those entities which have held their Stock Cooperative Units longest.

(b)   In the event that an entity shall fail to divest itself of Tenant's Stock Cooperative Unit when required to do so by the Board, such failure shall constitute an Event of Default under this Lease, in which event the Board may enforce any remedy available to it as a result of such default.

6.04   Release of Tenant Upon Assignment.  After any assign-ment has been made pursuant to Section 6.02 above, provided that all conditions set forth in such section have been fulfilled, the assigning Tenant shall have no further liability for any of the obligations or covenants set forth in this Lease.

6.05   Limitations on Assignment and Subletting.   Anything to the contrary herein set forth notwithstanding, neither Tenant nor

Exhibit __1__, Pg. 39

11278

Tenant's executor, administrator or personal representative, nor any trustee or receiver of the property of Tenant nor anyone to whom the interest of Tenant shall pass by operation of law shall be entitled to assign this Lease, to sublet or occupy the Apartment or any part thereof except upon compliance with the requirements of this Lease or as otherwise set forth in the By-Laws. The restrictions on subletting and the occupancy of the Apartment and upon the assignment of this Lease as herein set forth are a material condition and inducement for the granting of this Lease by Landlord to Tenant and any purported assignment in violation of this Article shall be void and of no force and effect and shall constitute an Event of Default by Tenant under the terms of this Lease. Likewise, any attempt by Tenant to transfer this Lease without a concurrent transfer of the Shares to the same individual or entity shall be void and of no force and effect.

6.06   Hypothecation.   Nothing set forth herein shall be deemed to prohibit the right of Tenant to pledge his Shares or hypothecate his interest in this Lease as collateral security but neither the pledgee nor any transferee of the pledgee shall have the right to acquire or sell the Shares or acquire possession of the Apartment except upon compliance with the provisions of this Article and the By-Laws.

6.07   Certain Lenders.   In the event that Tenant or other person grants a security interest in his Shares or this Lease in favor of a "commercial bank," as defined in California Financial Code §105 or an "association," as defined in California Financial Code §5055 ("commercial banks" and "associations" are hereinafter referred to in this Section 6.07 as a "Lender") to secure a loan from the Lender, the following provisions shall apply notwithstanding any other provisions of this Lease:

(a)   No sublease in excess of one year, amendment or modification to this Lease shall be permitted or created without the Lender's prior written consent.

(b)   In the event of Tenant's or other person's default under its loan from a Lender, the Lender shall have the right, without the prior consent or approval of Landlord, to sell the pledged shares at a public or private sale following at least thirty days prior written notice to Tenant and to Landlord, and to assign this Lease to the purchaser who shall agree as a condition of such assignment to cure any defaults hereunder. Section 6.03 of this Lease will apply to any such purchaser if the purchaser is not a Qualified Individual.

## ARTICLE VII

## ALTERATIONS

7.01   Permitted Alterations.   Tenant shall not, without the prior written consent of the Board, which consent shall not be unreason-

11278

ably withheld, make any structural alterations to the Apartment or any alteration of the electrical or plumbing systems nor shall Tenant, except as authorized by the Board, remove any additions, improvements or fixtures from the Apartment. Tenant shall have the right, at any time, to make such non-structural changes and changes in the design and decoration of the Apartment as Tenant deems appropriate, provided that (i) all draperies visible from the exterior of the building shall be of a close-woven, light-colored material or lined with a light-colored material, (ii) other visible window coverings may only be used with the permission of the Board and (iii) Tenant will not partially or entirely enclose any balcony or take any other action which would alter the exterior appearance of the Apartment and its balconies, except that Tenant may install a wind-breaker of either transparent plastic or shatterproof glass on the inside of the balcony railing, provided that such windbreaker shall not extend above the railing of the balcony.

7.02  Restoration.  If Tenant shall hereafter place in the Apartment any special additions, improvements or fixtures, such as lighting fixtures, refrigerators, ranges, drapes or carpets other than those in place as of the Commencement Date, Tenant shall have the right during the term of this Lease to remove the same at Tenant's own expense provided that Tenant shall repair and restore the Apartment to substantially its same condition prior to such alteration. In the event that Tenant shall, with the consent of the Board, make any structural alterations to the Apartment, then in such event prior to the termination of this Lease, unless the Board authorizes otherwise, Tenant shall restore the Apartment to substantially the same condition it was in on the Commencement Date.

7.03  Liens.  Tenant shall not suffer or permit any liens to be filed against the Apartment or any part thereof by reason of work, labor, services or materials, supplied or claimed to have been supplied to Tenant, or anyone holding the Apartment or any part thereof through or under Tenant. Tenant shall not, however, be responsible for any liens filed by reason of work contracted for by Landlord, albeit at the request of Tenant. If any such lien shall at any time be filed against the Apartment, Tenant shall cause the same to be discharged of record within 20 days of filing of same. If Tenant shall fail to discharge such lien within such period, then in addition to any other right or remedy of Landlord, Landlord may, but shall not be obligated to, discharge the same, either by paying the amount claimed to be due or by procuring the discharge of such lien in any manner as is or may be prescribed by law. Any amounts paid by Landlord for any of the aforesaid purposes and all reasonable expenses of Landlord including counsel fees, with interest thereon at the rate of 10% per annum from the date of payment, shall be repaid by Tenant to Landlord on demand and if unpaid may be treated as additional rent.

Exhibit __1__, Pg. __41__

## ARTICLE VIII

### DEFAULTS; REMEDIES

8.01   Events of Default.  The occurrence of any one or more of the following events ("Event of Default") shall constitute a material default and breach of this Lease by Tenant:

(a)   The failure of Tenant to make each and every payment of rental hereunder and any other payments required to be made by Tenant hereunder, as and when due.

(b)   The failure by Tenant to observe or perform any of the covenants, conditions or provisions of this Lease to be observed or performed by Tenant, other than as described in Section 8.01(a) above, or the violation by Tenant of any restrictions or regulations of use of the Apartment set forth in the By-Laws or any Rules or Regulations adopted by the Board, where such breach shall continue for a period of thirty days after written notice thereof from Landlord to Tenant; provided, however, that if the nature of Tenant's default is such that more than thirty days are reasonably required for its cure, then Tenant shall not be deemed to be in default if Tenant commences such cure within said thirty day period and thereafter diligently prosecutes such cure to completion.

(c)   (i) The making by Tenant of any general assignment, or general arrangement, for the benefit of creditors; (ii) the filing by or against Tenant of a petition to have Tenant adjudged a bankrupt or a petition for reorganization or arrangement under any law relating to bankruptcy (unless, in the case of a petition filed against Tenant, the same is dismissed within sixty days); (iii) the appointment of a trustee or receiver to take possession of substantially all of tenant's assets located at the Apartment or of Tenant's interest in this Lease, where possession is not restored to Tenant within thirty days; or (iv) the attachment, execution or other judicial seizure of substantially all of Tenant's assets located at the Apartment or of Tenant's interest in this Lease, where such seizure is not discharged within thirty days.

(d)   If at any time during the term of this Lease Tenant shall cease to be the owner of all the Shares.

(e)   If this Lease shall pass or be assigned to anyone who is not a Qualified Individual or who is not then the owner of all of the Shares; provided, however, that if Section 6.03 applies to the transfer, it shall not constitute an Event of Default unless the transferee shall not divest himself of this Lease as required by Section 6.03.

8.02   Remedies Upon Default.  Following any Event of Default and breach by Tenant, Landlord shall have the right, with or without notice or demand and without limiting Landlord in the exercise of any right or remedy which Landlord may have at law or in equity by reason of such default or breach, to:

Exhibit __1__, Pg. 42

14

11178

(a)     Terminate Tenant's right to possession of the Apartment by written notice thereof in accordance with any applicable laws, in which case this Lease shall immediately terminate and Tenant shall immediately surrender possession of the Apartment to Landlord. Following such termination, without prejudice to any other rights or remedies of Landlord, Landlord may peaceably re-enter the Apartment upon voluntary surrender by Tenant or remove Tenant therefrom and any other persons occupying the Apartment, using such legal proceedings as are then available. In such event, Landlord shall be entitled to recover from Tenant for all liability incurred by Landlord by reason of Tenant's default, including, but not limited to, the cost of recovering possession of the Apartment, expenses of reletting, including necessary renovation and alteration of the Apartment, reasonable attorneys' fees, and any real estate commission actually paid in connection with the reletting of the Apartment. Unpaid installments of rents or other sums shall bear interest from the date due at the rate of ten percent per annum.

(b)     Maintain Tenant's right to possession in which case this Lease shall continue in effect, whether or not Tenant shall have abandoned the Apartment, and Landlord shall be entitled to enforce all of Landlord's rights and remedies under this Lease, including the right to recover rent as it becomes due hereunder. Notwithstanding anything to the contrary set forth herein, Landlord's re-entry to perform acts of maintenance or preservation or in connection with efforts to relet the Apartment shall not operate to terminate Tenant's right to possession of the Apartment and, until Landlord does elect to terminate this Lease, or unless Tenant shall surrender this Lease in the manner set forth in Section 2.04, this Lease shall continue in full force and effect and Landlord may enforce all of Landlord's rights and remedies hereunder, including without limitation, the right to recover from Tenant as it becomes due hereunder all basic rental, additional rental and other charges required to be paid by Tenant under the terms hereof, and Tenant agrees and hereby authorizes Landlord, in the event of any material default or breach of this Lease, to relet the Apartment on any reasonable terms and for any period of time, whether or not such terms are more favorable than granted hereunder, and such reletting shall not operate to terminate this Lease or impair any rights of Tenant hereunder, unless and until Landlord elects to so terminate this Lease, or Tenant elects to surrender this Lease pursuant to Section 2.04, and Tenant does hereby waive any rights to claim any termination of the Lease or acceptance of a surrender of the Lease under California Civil Code Sections 1951 through 1951.4 or any successor or related provisions of law.

(c)     Foreclose any lien or exercise other rights set forth in the Collateral Security Agreement described in Section 8.05 hereof.

(d)     Pursue any other remedy now or hereafter available to Landlord under the laws or judicial decisions of the State of California.

Exhibit __1__, Pg. 43

15

11178

8.03 *Surrender of Shares.* Following any Event of Default, and upon termination of this Lease by Landlord, Tenant shall forthwith surrender to Landlord, the certificate for the Shares properly endorsed, or if at such time the Shares are held by Union Bank pursuant to Section 8.05, Landlord shall instruct Union Bank to surrender the Shares to Landlord. Whether or not said certificate is surrendered, Landlord may issue a new certificate for the Shares, when an acceptable purchaser is found, provided that the issuance of new shares shall be in the manner provided for in the By-Laws and shall be accompanied by the execution of a new Proprietary Lease by said purchaser or by the assumption of this Lease by the purchaser. Upon the issuance of a new certificate, the certificate owned or held by Tenant shall be automatically cancelled and rendered null and void. Upon the issuance of a new Proprietary Lease or the assumption of this Lease, and the issuance of a new certificate, Tenant's continuing liability hereunder, if not theretofore terminated, shall cease, and Tenant shall only be liable for rent assessments and expenses accrued to that time. Landlord shall apply the proceeds received from the issuance of such shares toward the payment of Tenant's obligations hereunder, including rent, interest, attorneys' fees and other collection expenses incurred by Landlord, and if the proceeds are sufficient to pay same, Landlord shall retain any surplus, but, if insufficient, Tenant shall remain liable for the balance of the obligations.

8.04 *Late Charges.* Tenant hereby acknowledges that late payment by Tenant to Landlord of rent and other sums due hereunder will cause Landlord to incur costs not contemplated by this Lease, the exact amount of which will be extremely difficult to ascertain. Such costs may include, but are not limited to, processing and accounting charges and late charges which may be imposed on Landlord by the terms of any trust deed encumbering Ocean Towers. Accordingly, if any installment of rent or any other sum due from Tenant shall not be received by Landlord or Landlord's designee within ten days after such amount shall be due, Tenant shall pay to Landlord a late charge equal to three percent (3%) of such overdue amount. The parties hereby agree that such a late charge represents a fair and reasonable estimate of the costs Landlord will incur by reason of late payment by Tenant. Acceptance of such late charge by Landlord shall in no event constitute a waiver of Tenant's default with respect to such overdue amount, nor prevent Landlord from exercising any of the other rights and remedies granted hereunder.

8.05 *Collateral Security Agreement.* In order to secure Tenant's obligations hereunder, Tenant is concurrently granting to Landlord a lien on all of Tenant's interest in the Apartment, this Lease and the Shares pursuant to a Deed of Trust, Pledge Agreement, Assignment of Rents and Security Agreement (the "Collateral Security Agreement") naming Landlord as beneficiary, which agreement is concurrently being recorded in the Official Records of Los Angeles County. A financing statement evidencing the Security Agreement provisions of such document is concurrently being filed with the California Secretary of State in Sacramento and the County Recorder of Los Angeles

Exhibit  , Pg. 44

County, and the Shares are concurrently being delivered to Union Bank as pledgeholder to evidence the pledge of such Shares. Upon the occurrence of any Event of Default hereunder, and, in addition to any other remedies set forth in Section 8.02, Landlord or its assignee shall have the right to exercise any or all of the remedies set forth in the Collateral Security Agreement.

      8.06   <u>Limitation on Damages.</u>  In the event that this Lease shall be terminated as a result of any default hereunder, or in the event that Tenant's estate in this Lease shall be foreclosed as a result of any action taken pursuant to the Collateral Security Agreement described in Section 8.05, then in such case the liability of Tenant for such default shall not exceed the total of (i) all unpaid basic rental, additional rental, late charges and other sums payable hereunder which are unpaid as of the date Landlord obtains possession of the Apartment from Tenant, together with interest thereon at the rate of ten percent (10%) per annum from the date due to the date of collection, plus (ii) an amount equal to twelve months basic rental and additional rental at the rate obtaining when Landlord acquires possession of the Apartment plus (iii) such sum as shall be awarded by any court of competent jurisdiction for attorneys' fees and other related costs pursuant to Section 9.05 of this Lease.

ARTICLE IX

<u>GENERAL PROVISIONS</u>

      9.01   <u>Eminent Domain.</u>  In the event that any portion of Ocean Towers should ever be taken by any entity by reason of any exercise of the power of eminent domain, whether by a condemnation proceeding, by transfer in lieu of condemnation, or otherwise, so that Ocean Towers may no longer be used as a residential apartment house, then this Lease shall terminate as of the date of such taking or transfer. In the event of any such taking which does not result in the inability to continue to use Ocean Towers as a residential apartment house, then this Lease shall continue without abatement of rental. In the event of any such taking, Landlord shall be entitled to all awards attributable to such taking, except as to any part of the award which might be attributable to removal of Tenant's personal property, which part shall be payable to Tenant. Tenant shall have no right to participate individually as a party in any action or proceedings relating to condemnation, such right of participation being reserved exclusively to Landlord which shall, in its name alone, represent the interests of all of its shareholders, including Tenant.

      9.02   <u>Limitation of Warranties.</u>  Tenant is acquiring a leasehold interest in Ocean Towers as part of the conversion of an existing apartment project not constructed or previously owned by Landlord. NO WARRANTIES OF ANY KIND ARE MADE AS TO THE PHYSICAL CONDITION OF OCEAN TOWERS OR THE IMPROVEMENTS THEREIN.

Exhibit 1 , Pg. 45

TENANT UNDERSTANDS THAT HE IS ACQUIRING HIS STOCK COOPERATIVE UNIT IN OCEAN TOWERS HOUSING CORPORATION AND ACQUIRING HIS LEASEHOLD ESTATE IN THE APARTMENT IN AN "AS IS" PHYSICAL CONDITION, ACCEPTING ALL FAULTS THEREOF, WHETHER KNOWN OR UNKNOWN, PRESENTLY EXISTING OR THAT MAY HEREAFTER ARISE, IF THERE BE ANY.

9.03  Headings.  Headings at the beginning of each Article and Section of this Lease are solely for the convenience of the parties and are not a part of this Agreement.

9.04  Choice of Laws.  This Lease is governed by the laws of the State of California and any questions arising hereunder shall be construed or determined according to such laws.

9.05  Attorneys' Fees.  In the event of any action between the parties hereto seeking enforcement of any of the terms and conditions of this Lease, the prevailing party in such action shall be awarded, in addition to damages, injunctive or other relief, its reasonable costs and expenses, not limited to costs and reasonable attorneys' fees.

9.06  Notices.  All notices under this Lease shall be effective upon personal delivery to Landlord or Tenant, as the case may be, or two business days after deposit in the United States mail, registered or certified mail, postage fully prepaid and addressed to the respective parties as follows:

To Landlord:  Ocean Towers Housing Corporation
201 Ocean Avenue
Santa Monica, California 90402

To Tenant:  _____

_____

_____

or to such other address as the parties may from time to time designate in writing.

9.07  Severability.  If any term, condition or provision of this Lease is declared illegal or invalid for any reason by a court of competent jurisdiction, the remaining terms, conditions and provisions of this Lease shall, nevertheless, remain in full force and effect.

9.08  Miscellaneous Terms.  Whenever the context of this Lease so requires, the masculine gender includes the feminine and neuter, and the singular number includes the plural.

9.09  Waiver.  The failure of Landlord to insist in any one or more instances upon a strict performance of any of the covenants of this

Exhibit __1__, Pg. 46

110278

Lease, the Articles, By-Laws or the Rules and Regulations shall not be construed as a waiver or relinquishment for the future, of such covenant, rule or regulation but the same shall continue and remain in full force and effect. The receipt by Landlord of rent, with knowledge of the breach of any covenant hereof, shall not be deemed a waiver of such breach, and no waiver by Landlord of any provision hereof shall be deemed to have been made unless expressed in writing and signed by Landlord. The delivery of keys to the Apartment to any officer or employee of Landlord or to Landlord's agent shall not operate as a termination of this Lease or as a surrender of the Apartment.

9.10    Cooperation.  Tenant covenants that he will preserve and promote the cooperative ownership principles on which Ocean Towers Housing Corporation has been founded, abide by the Rules and Regulations of the Board and any amendments thereto, and by his acts of cooperation with other tenants bring about a high standard in home and community conditions.

9.11    Partition.  By execution of this Lease, Tenant on behalf of his heirs, successors and assigns does hereby irrevocably waive any right to partition Ocean Towers.

9.12    Successors and Assigns.  Subject to the limitations on subletting and assigning set forth herein, this Lease, and every provision hereof, shall bind, apply to and run in favor of Landlord, its successors and assigns, and of Tenant and the successors, assigns, heirs and personal representative of Tenant.

9.13    Memorandum Lease.  Concurrently herewith Landlord and Tenant shall execute, acknowledge and record, in the Official Records of Los Angeles County, a memorandum of this Lease, in such form as may be adopted by the Board.

Executed as of the date first above written.

OCEAN TOWERS HOUSING CORPORATION
a California corporation

By _____
                                        Landlord


_____
                                        Tenant


_____
                                        Tenant


Exhibit ___1___, Pg. 47

## CERTIFICATION

Ocean Towers Housing Corporation, a California corporation ("Landlord") and Dorothea Schiro hereby certify that the Proprietary Lease attached hereto and attached as Exhibit C to Plan of Cooperative Organization documents of the Landlord is the Unrecorded Lease referred to in the Memorandum of Proprietary Lease dated November 22nd, 1978 between Landlord and Tenant.  This Unrecorded Lease shall be the lease governing the relationship between the Landlord and Tenant. This certification is dated this 2 day of November, 2006.

OCEAN TOWERS HOUSING CORPORATION

By:
Name:
Title:

TENANT

By:
Name: Dorothea Schiro

Exhibit 1, Pg. 48

# EXHIBIT 2

 

**This page is part of your document - DO NOT DISCARD**

**06 2481010**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**11/08/06 AT 08:00am**

## TITLE(S) :



L E A D    S H E E T

FEE                                                    D.T.T.

FEE $51.   M   9



TRANSFER TAX
NOT A PUBLIC RECORD

A.F.N.F. CODE 94

CODE
20          D A. FEE Code 20        $ 2.00

CODE
19

CODE
9____

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.        **Number of AIN's Shown**



**THIS FORM IS NOT TO BE DUPLICATED**

Exhibit  2 , Pg. 44

EQUITY TITLE

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO.

Ocean Towers Housing Corporation
c/o Hamburg, Karic, Edwards & Martin LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, CA 90067-4409

MAIL TAX STATEMENTS TO.

Dorothea Schiro
201 Ocean Avenue
Santa Monica, CA 90402



11/08/06

20062481010

TRANSFER TAX
NOT A PUBLIC RECORD

## ASSIGNMENT OF PROPRIETARY LEASE

This Assignment is made as of the _2nd_ day of October, 2006 by and between Ariel Akerman, a single man ("Assignor") and Dorothea Schiro, a single woman ("Assignee") and Ocean Towers Housing Corporation ("Corporation")

## RECITALS

A.   Assignor is the owner of a Stock Cooperative Unit in Ocean Towers Housing Corporation which includes a Proprietary Lease (the "Lease") dated November 19, 1978 and terminating September 30, 2077, between Ocean Towers Housing Corporation as Lessor ("Lessor") and Victoria Ann Delfino as Lessee ("Lessee") of Apartment Number 1908-B and appurtenant garage space (the "Apartment") in the Ocean Towers Apartments located at 201 Ocean Avenue, Santa Monica, California, and more particularly described as Lots 22, 23, 24, 25, and 26 in Block "M" of the Palisades, as per map recorded in Book 8, Page 32 of Maps, in the office of the County Recorder of Los Angeles County ("Ocean Towers")   (See also Exhibit "A" attached hereto and incorporated herein)

B.   A Memorandum of Proprietary Lease, summarizing the principal terms of the Lease, was recorded on November 21, 1978 as Instrument No  78-1298914 in the Office of the County Recorder of Los Angeles County.

SUBJECT TO TAXES, ASSESSMENTS, RESERVATIONS IN PATENTS AND ALL EASEMENTS, RIGHTS-OF-WAY, ENCUMBRANCES, LIENS, COVENANTS, CONDITIONS AND RESTRICTIONS AND OTHER MATTERS OF RECORD

C   Subsequent to the execution of the Lease, the Lease was amended to provide as follows:

Page 1 of 9

Exhibit _2_, Pg. _50_

4293-020-158

LA0662516

"2 05  <u>Subordination.</u>  This Lease is and shall be subject and subordinate to all present and future mortgages or deeds of trust ( each such mortgage or deed of trust, a "Deed of Trust") now or hereafter encumbering Ocean Towers, and to any and all extensions, modifications, consolidations, or renewals and replacements thereof and to all security agreements and chattel mortgages on personal property covered by an such mortgage or deed of trust  This clause shall be self-operative and no further instrument or subordination shall be required, however, in confirmation of such subordination, the Tenant shall at any time, and from time to time, on demand, execute any instruments that may be required by the holder of, or beneficiary under, a Deed of Trust (such mortgagee or beneficiary, the "Mortgagee") for the purpose of more formally subjecting this Lease to the lien of any such Deed of Trust, and the duly elected officer, for the time being, of the Landlord are and each of them is hereby irrevocably appointed the attorney-in-fact and agent of the Tenant to execute the same upon such demand, and the Tenant hereby ratifies any such instrument hereafter executed by virtue of the power of attorney hereby given  In the event that the Mortgagee, or anyone claiming from or through any such Mortgagee, shall enter into and lawfully become possessed of Ocean Towers, or shall succeed to the rights of Landlord under the Lease, either through foreclosure of said Deed of Trust or otherwise howsoever, (i) the Tenant shall attorn to , and recognize, such holder or anyone claiming from or through such Mortgagee as its landlord under the Lease for the term of the Lease as more particularly described below, and any extension or renewal thereof and (ii) the Tenant shall make all payments payable by the Tenant under the Lease (as the same shall be deemed modified as provided herein below) directly to Mortgagee upon Mortgagee's written instructions to the Tenant. If, by operation of law, or otherwise, the institution of any action or other proceedings by the Mortgagee under the Deed of Trust or the entry into and taking possession of Ocean Towers shall result in the cancellation or termination of the Lease or the Tenant's obligations hereunder (or, alternatively, in the discretion of mortgagee, whether or not the Lease is so terminated or canceled), the Tenant, promptly after request by Mortgagee ( but subject to Tenant's rights under Section 2.04 hereof), shall execute and deliver a new lease of the Apartment (a"New Lease") in the form determined by Mortgagee, which form shall be comparable to leases for rental apartments commonly used in Southern California, and in such event the Lease shall be modified to reflect (or the new Lease shall reflect, as the case may be) that the Lease is no longer a proprietary lease, and shall further provide that (A) the initial term thereof shall be one year from the date thereof (and Tenant shall be entitled to annual renewals thereof for a period not to exceed five (5) years at the rent set forth in the immediately succeeding clause (B), and (B) the Tenant shall pay rent in an

Page 2 of 9

Exhibit <u>2</u>, Pg. <u>51</u>

4

amount equal to the greater of (1) the rental payable under the pre-existing Lease and (2) the fair market rental for the Apartment, as determined by a reputable appraiser selected by Mortgagee with at lease five years of experience in the appraisal of properties in Southern California similar to Ocean Towers. Notwithstanding anything herein to the contrary, it is understood that upon a foreclosure of the Deed of Trust, Mortgages shall have the right to terminate the Lease if Tenant is in default beyond any applicable grace and notice period under the Lease."

    D. Assignee has agreed to purchase Assignor's Stock Cooperative Unit. It is the desire and intention of Assignor and Assignee that pursuant to the Purchase Agreement, Assignor shall assign and transfer the Lease to Assignee and that Assignee shall assume all of Assignor's liabilities as Lessee under the Lease

    NOW, THEREFORE, the parties hereby agree as follows

    1. Assignor hereby assigns and transfers to Assignee all of Assignor's right, title and interest in and to the Lease heretofore described.

    2 As of the date hereof, Assignee assumes all the obligations of Assignor under the Lease arising on or after the date hereof and agrees to indemnify, defend and hold Assignor harmless with respect to all such liabilities and obligations

    3 Corporation affirms Assignee's right to enjoy the use of the Apartment pursuant to the provisions of the Lease, in the form attached to Assignee's copy of this Assignment, subject to payment of the following rents

    (i) Basic Annual Rental of $21,828.00, payable in monthly installments of $1,819.00, adjusted from time to time in accordance with the Lease, with the last such monthly installment payable on September 1, 2077

    (ii) Additional Rental consisting of Assignees's pro rata share as Lessee of all real property taxes and assessments levied against the real property owned by Corporation (Real Property Tax is assessed directly on the Stock Cooperative Unit and payable directly to the County Assessor by the owner of the Unit Should the owner of the Stock Cooperative Unit fail to pay Real Property Tax assessed on the Stock Cooperative Unit, Corporation may pay such tax and charge the amount so paid as Additional Rental)

    (iii) Additional Rental consisting of Assignee's pro rata share as Lessee of the cost of management, repairs, maintenance, and insurance for the Corporation. Assignee's pro rata share of such costs will be 353%

Page 3 of 9

Exhibit _2_, Pg. _52_

5

4. All notices under this agreement shall be effective upon personal delivery to Assignor or Assignee, as the case may be, or two (2) business days after deposit in the United States Mail, registered or certified mail, postage fully prepaid and addressed to respective parties as follows

If to Assignor:

    Ariel Akerman
    2000 Las Vegas Blvd., Suite 49
    Las Vegas, NV 89104

If to Assignee.

    Dorothea Schiro
    201 Ocean Avenue
    Santa Monica, CA 90402

If to Ocean Towers:

    Ocean Towers Housing Corporation
    Attention: Manager
    201 Ocean Avenue
    Santa Monica, California  90402

    with a copy to Ocean Towers' Attorneys

    Hamburg, Karic, Edwards & Martin LLP
    Attention: Sidney A Hamburg, Esq
    1900 Avenue of the Stars, Suite 1800
    Los Angeles, California  90067

or to such other addresses as the parties may from time to time designate in writing

5  This Assignment shall be governed by the laws of the State of California and any question arising hereunder shall be construed or determined according to such law

6  In the event of any action between the parties hereto seeking enforcement of any of the terms and conditions of this Assignment, the prevailing party in such action shall be awarded, in addition to damages, injunctive or other relief, its reasonable costs, expenses and attorneys' fees.

Page 4 of 9

Exhibit _2_, Pg. _53_

7   The terms, covenants and conditions of this Assignment shall be binding and shall inure to the benefit of the heirs, executors, administrators, successors and assigns of the respective parties hereto.

   IN WITNESS WHEREOF, this Assignment is executed as of the date first above written

"ASSIGNOR".

_____

Ariel Akerman

"ASSIGNEE"

_____

Dorothea Schiro

"CORPORATION":

OCEAN TOWERS HOUSING CORPORATION
A California Corporation

By  _____

Title _____

Page 5 of 9

Exhibit _2_, Pg. _54_

7

[Individuals]

STATE OF ~~CALIFORNIA~~ ) Nevada
COUNTY OF ~~LOS ANGELES~~ ) Clark

On October 19, 2006, before me,

Bobbi Jo Rogers ,

a Notary Public in and for said County and State,
personally appeared

Ariel Akerman

personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their capacity(ies)
and that by his/her/their signature(s) on the instrument the
person(s) or the entity upon behalf of which the person(s) acted
executed the instrument

WITNESS my hand and official seal

Notary Public in and for the
State of ~~California~~ Nevada

BOBBI JO ROGERS
Notary Public State of Nevada
No 05-94399-1
My appt exp Oct 11, 2009

Page 6 of 9

[Individuals]

STATE OF CALIFORNIA        )
COUNTY OF LOS ANGELES      )

On _November 2, 2006_ , before me,
_Cecily Gulihur_ ,
a Notary Public in and for said County and State,
personally appeared

_Dorothea Schiro_

personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their capacity(ies)
and that by his/her/their signature(s) on the instrument the
person(s) or the entity upon behalf of which the person(s) acted
executed the instrument

    WITNESS my hand and official seal.

Notary Public in and for the
State of California





06 2481010

Exhibit __2__, Pg. _56_

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT**

9

STATE OF CALIFORNIA )SS
COUNTY OF _Los angeles_ )

On _November 12 2006_ before me, _Cecily Gulihur_
a notary public
personally appeared _Joseph J. orlando_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal

Signature _____

> CECILY GULIHUR
> COMM #1470564
> Notary Public-California
> LOS ANGELES COUNTY
> My Comm Exp Feb 17, 2008

This area for official notarial seal

---

**OPTIONAL SECTION**
**CAPACITY CLAIMED BY SIGNER**

Though statute does not require the Notary to fill in the data below, doing so may prove invaluable to persons relying on the document

[ ✓ ] INDIVIDUAL

[   ] CORPORATE OFFICER(S) _____ TITLE(S)

[   ] PARTNER(S) - [   ] LIMITED   [   ] GENERAL

[   ] ATTORNEY-IN-FACT

[   ] TRUSTEE(S)

[   ] GUARDIAN/CONSERVATOR

[   ] OTHER _____

**SIGNER IS REPRESENTING:**

_____        _____
Name of Person or Entity            Name of Person or Entity

---

**OPTIONAL SECTION**

Though the date requested here is not required by law, it could prevent fraudulent reattachment of this form

**THIS CERTIFICATE MUST BE ATTACHED TO THE DOCUMENT DESCRIBED BELOW**

TITLE OR TYPE OF DOCUMENT _assignment of proprietary lease_

NUMBER OF PAGES _____ DATE OF DOCUMENT _10 2 06_

SIGNER(S) OTHER THAN NAMED ABOVE _____

Exhibit _2_, Pg. _51_

## EXHIBIT "A"

APARTMENT NUMBER 1908-B ON THE 19th FLOOR OF THE BRENTWOOD BUILDING AND PARKING STALL(S) 161 AND 161A, ALL AS INDICATED ON EXHIBIT "A" ATTACHED TO THAT CERTAIN LEASE RECORDED NOVEMBER 21, 1978 AS INSTRUMENT NO 78-1298546; SAID BUILDING AND PARKING STALLS BEING SITUATED ON LOTS 22 THROUGH 26, INCLUSIVE, IN BLOCK "M" OF THE PALISADES, IN THE CITY OF SANTA MONICA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 8, PAGE 32 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

Exhibit _2_, Pg. _58_

# EXHIBIT 3

LOAN SECURITY AGREEMENT

Loan #:  21074184

LENDER:  METROCITIES MORTGAGE, LLC
         15301 VENTURA BLVD., SUITE D300, SHERMAN OAKS, CALIFORNIA 91403

TENANT-SHAREHOLDER(S):  DOROTHEA SCHIRO

PREMISES:  201 OCEAN AVENUE, UNIT NO. 1908B
           SANTA MONICA, CALIFORNIA 90402
DEFINITIONS

   Throughout this Agreement, the words, "I," "me," "my" and "mine" me in the Tenant-Shareholder(s) named at the top
of this Agreement and the word Borrower(s) mean  DOROTHEA SCHIRO

   The words "Lender" and "Note Holder" mean  METROCITIES MORTGAGE, LLC, A LIMITED
LIABILITY COMPANY
or any other entity to which the Lender's rights and liabilities under this Agreement and the other documents referred to in
this Agreement are transferred.

TENANT-SHAREHOLDER(S) REPRESENTATIONS

   I am the sole owner of   412    shares of the capital stock of  OCEAN TOWERS

(the "Cooperative Corporation") allocated to Apartment  1908B    (the "Apartment") in the building known as
Ocean Towers
in the proprietary lease issued by the co-operative corporation in connection with the Apartment and I have the sole right
and power to transfer, assign or borrower money on the basis of that stock and proprietary lease.  The shares of stock and
the proprietary lease have not been transferred, assigned or been the basis for any prior loan made to me at any time which
is unpaid at the present time.  The terms "stock" and "proprietary lease" as used in this document shall also refer to any
stock or proprietary lease issued by the Co-operative Corporation in connection with the Additional Garage Space.

PURPOSE

   The Borrower(s) desire to obtain a loan from the Lender, guaranteed by my existing ownership of that stock and by
my interest as a tenant under the proprietary lease from the co-operative corporation named above.  The sum which the
Borrower(s) desire to borrower from the Lender is $  1,272,000.00  .  The Lender is willing to lend that sum to
the Borrower(s) upon the following terms and conditions:

1.  DOCUMENTS

   At the same time that the Lender lends the Borrower(s) the sum above mentioned, the Borrower(s) shall execute and
deliver the following document:

      (a)  a Promissory Note (the "Note").

   The Tenant-Shareholder(s) shall execute and deliver the following documents.

   a)  this Loan Security Agreement;
   b)  a Stock Power;
   c)  a Memorandum of Lease
   d)  a Recognition Agreement which shall also be signed by an officer of the co-operative corporation.
   e)  Deed of Trust and Assignment of Rents.

CALIFORNIA CO-OP
HP417221-10/98        S2841.14253                Page 1 of 5                                CACD#102

Exhibit  _3_ , Pg. _59_

Prior to execution and delivery of the documents described above, the Tenant/Shareholder(s) shall have executed and delivered a Financing Statement (Form UCC-1), and such UCC-1 shall have been filed and be of record in the Office of the Clerk or Registrar of the County in which the cooperative apartment is located.

All of the foregoing documents are to be completed and signed by the proper parties and are to be properly witnessed.

2.  SECURITY

To guarantee to the Lender that the loan represented by the Note will be repaid, I give to the Lender a continuing security interest in and to all of my right, ownership and title to the shares of the co-operative corporation as set forth in the stock certificate issued to me and in the proprietary lease entered into between the co-operative corporation and me covering my apartment, and parking space or spaces allocated to or purchased in connection with that apartment and all of my personal property and fixtures (except household furniture and furnishings) that are now, or may be in the future, attached to or used in connection with the Apartment (the "Security").  I further give to the Lender a continuing security interest in the proceeds of the foregoing.  After the Borrower(s) have repaid to the Lender the entire balance owing on the Note together with all interest outstanding thereon, the documents referred to in Paragraph "1" of this Agreement shall be returned and a Termination Statement (Form UCC-3) discharging the Lender's lien shall be delivered.  Thereafter, the Lender shall have no further obligation or responsibility to me.  I agree to sign any financing statements which may be required under the provisions of the Uniform Commercial Code, either now or in the future and I also authorize the Lender to file such financing statements with my signature in accordance with the provisions of the Uniform Commercial Code, either now or in the future and I also authorize the Lender to file such financing statements with my signature in accordance with the provisions of the Uniform Commercial Code.  I also agree to sign a Deed of Trust or other documents required under California law to perfect Lender's interest in the stock certificate and the proprietary lease as interest in real property.

3.  IMMEDIATE REPAYMENT

If any one or more of the following events (called "Events Requiring Immediate Repayment") shall take place, then the Lender has the right to require the Borrower(s) to pay immediately the entire balance outstanding on the Note together with all interest owing thereon:

a)  A termination or cancellation of the proprietary lease, or an expiration of that lease, or

b)  A transfer or sale to any one of the shares of the co-operative corporation affected by this Agreement or of my interest in the proprietary lease affecting the Apartment unless, the Note secured by this Agreement is an Adjustable Rate Note, the Lender consents to that sale or transfer in writing and all provisions provided for in that Note relative to the assumption of the loan are complied with, or

c)  The granting of a further security interest to anyone in the shares of the co-operative corporation covered by this Agreement or of my interest in the proprietary lease affecting the Apartment unless the Lender has, prior to the creation of that security interest, approved the terms and conditions thereof in writing,

If Lender requires immediate payment in full under this Paragraph 3, Lender will deliver or mail by first class mail to Borrower(s) a notice which states this requirement.  The notice will give me at least 30 days to make the payment. The 30 day period will begin on the date the notice is delivered or mailed.  If the Borrower(s) do not make the required payment within that period, Lender may act to enforce its rights in accordance with Paragraph 5 of this Security Agreement.

4.  EVENTS OF DEFAULT

If any one or more of the following events (called "Events of Default") shall take place, then the loan will be in default:

a)  The nonpayment by the Borrower(s) of any monthly installment of principal and interest which continued for a period of fifteen (15) calendar days after its due date, or

Exhibit _3_, Pg. _60_

b) The failure by the Borrower(s) to supply verifications of deposit, loan or employment, if required by the Lender after the closing or the supplying of verifications that do not agree with the information contained in the application, or

c) The granting of a further security interest to anyone in the shares of the Co-operative Corporation covered by this Agreement or of my interest in the proprietary lease affecting the Apartment unless the Lender has, prior to the creation of that security interest, approved the terms and condition thereof in writing.

d) The failure by the Borrower(s) or by me to fill out and deliver to the Lender within ten days after notification by the Lender of any document required in order to protect or perfect the Lender's security interest, to include closing documents which were not executed, improperly executed or improperly prepared, or

e) The return because of insufficient funds or for any other reason of any checks given in connection with the closing of this transaction, or

f) The nonpayment of any maintenance charges or any other charges required to be paid under the terms of the proprietary lease, if such default is not eliminated within the time and in the manner set forth in the proprietary lease, or

g) A default in the performance of, or a failure to comply with, any of the terms, provision or conditions of the proprietary lease which I am required to perform and which I fail to take care of within the time and in the manner provided for in the proprietary lease, or

h) The taking by or against me of any legal action under the bankruptcy laws because I am not able to pay my debts or the filing by or against me of an assignment for the benefit of creditors, or

i) A default in the performance of any other agreement between the Borrower(s) and the Lender or between myself and the Lender as set forth in the Note, in this Agreement or in any of the other documents executed in connection with the obtaining of this loan.

If any of the Events of Default shall take place, the Lender shall deliver to mail to the Borrower(s) a notice stating that if the default is not cured by a certain date, then the entire balance due on the Note together with any interest owing thereon will have to be paid immediately. That date must be at least 30 days after the delivery of mailing of the notice.

5.   SALE OF SECURITY

If Borrower(s) should fail to pay in full the balance outstanding on the Note after an Event Requiring Immediate Repayment and the appropriate notice as set forth in Paragraph 3 of this Agreement, or if an Event of Default is not cured and payment in full of the balance outstanding on the Note is not made after appropriate notice as set for in Paragraph 4 of this Agreement, then Lender, after delivering to Borrower(s) such notice as is required under California law which shall be not less than 30 days, may sell, assign or deliver the Security at a public or private sale as required under the California Commercial Code, as to the portion of the Security which is real property.  If the post office should be unable to deliver to me such notice by reason of my having moved without having furnished to the post office a forwarding address, the date of the attempted delivery by the post office to me of such notice shall be considered to be the date of my receipt of the notice.

Upon receipt of the sales price of the Security, the Lender shall first deduct all expenses incurred by it in the collection, sale and delivery of the Security as well as any incidental expenses such as reasonable attorney's fees, brokerage commissions and transfer taxes.  The Lender shall then apply any balance remaining from the sale price to satisfy any outstanding obligation owing under the Note.  If any surplus should remain after the foregoing expenses have been paid, the Lender shall deliver that surplus to the person or persons entitled to receive it.  If there are no other liens against the Security, this surplus shall be delivered to me.  Any sale of the security conducted under the foregoing terms and conditions shall be considered commercially reasonable.

Exhibit __3__, Pg. __61__

I further agree that the Lender may delay the sale of the Security until the Lender, in its judgment, believes that a reasonable price can be obtained from that sale. The Lender will not be responsible to me for any loss in the value of the Security resulting from any delay in its sale.

The provisions set forth in Paragraph 5 are in addition to all of the Lender's rights as set forth in the Note. These provisions are not intended to limit in any way the Lender's rights under the terms of the Note.

6.  CLAIMS AGAINST SECURITY

I agree that I will not, and may not, assert against the Lender or against the Security any claim or demand arising out of my purchase agreement or under any related co-operative plan or with respect to the Apartment or the building in which it is located.

7.  ACTIONS BY THE LENDER

The Lender may, at its option, make payments for my account, or do any acts required to be done in order to prevent a default in, or breach of the proprietary lease. However, under no circumstances shall the Lender be required to do so. In the event that the Lender makes any of these payments or does any of these acts, these payments and the costs of these acts, together with the interest on such payments and costs at the rate expressed in the Note secured by this Agreement, shall be added to the debt secured by this Agreement and the principal amount of the Note shall be deemed increased accordingly.

8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Agreement will be given by delivering it or by mailing it by first class mail to me at the property address above or at a different address if I give the Lender a notice of my different address.

Any notice that must be given to the Lender under this Agreement will be given by mailing it by first class mail to the Lender at  15301 VENTURA BLVD., SUITE D300, SHERMAN OAKS, CALIFORNIA 91403
 or at a different address if I am give a notice of that different address.

9.  VACATING MY APARTMENT

In the event of the sale of the Security in accordance with Paragraph 5 of this Agreement, I shall immediately move from the said Apartment and give possession of it to the Lender. In the event that proceedings to evict me become necessary, the cost of removal shall be borne by me and that cost shall be added to the debt secured by this Agreement and the principal amount of the Note shall be deemed increased accordingly.

10.  DELIVERY OF SHARES

If I desire to sell the shares and transfer the accompanying  proprietary lease, the Lender will turn over to me the certificate for the shares, the proprietary lease and a termination statement (Form UCC-3) against payment in full of all amounts due under this Agreement, which payment shall be by certified or teller's check.  If a representative of the Lender is required to attend a closing or if delivery of these documents is to be made at other than any office of the Lender, the Lender's representative will be entitled to a reasonable attendance fee which must be paid before the documents are delivered.

11.  NO JURY TRIAL

Except as prohibited by law, the Lender and I give up the right to trial by jury in any action, proceeding or counterclaim brought by any of the parties to this Agreement against the other on any matter whatsoever arising out of or in any way connected with this Agreement, the Note which it secures, the Security and/or the relationship created by this Agreement. With respect to any matter for which a jury trial cannot be given up, the parties hereto agree not to use any such claim as a counterclaim in, or move to join the same with any action or proceeding in which a jury trial is given up.

Exhibit __3__, Pg. _62_

12   MY RIGHTS IN STOCK

The Lender agrees that until there has been an Event Requiring Immediate Repayment pursuant to Paragraph 3 of this Agreement or an Event of Default pursuant to Paragraph 4 of this Agreement and the Lender has elected to demand full payment, I shall have the only right to vote the shares as a shareholder at any meeting of the shareholders of the Corporation; shall be entitled to receive and retain dividends, if any, from the corporation; shall be the only one entitled to any benefits of any income tax deductions available to all shareholders of the Corporation; shall have the right to occupy the Apartment as proprietary lessee; and shall have all other rights and privileges of a shareholder and proprietary lessee. I agree that only I shall have the responsibility to the Corporation for payment of all maintenance charges and other charges to become due under the proprietary lease; shall be solely responsible for the performance of all of the terms, covenants and conditions of the proprietary lease on the part of the lessee to be performed; and that the Lender shall have no responsibility whatsoever under said proprietary lease and shall under no circumstances be deemed the lessee of the Apartment of any purpose.  The Lender shall, however, be entitled to receive distributions of capital, if any, from the Corporation to be applied in reduction of the principal debt.

13.   COLLECTION COSTS AND LAWSUITS

If the Lender must use an attorney to collect this loan under the provisions of this Agreement, I agree to pay to the Lender the actual expenses of collection, reasonable attorney's fees, and Court costs.

14.   TRANSFER CHARGES, "FLIP TAXES" AND REPAID CHARGES

In the event that the Lender sells the Security under the provisions of Paragraph 5 of this Agreement and as result of that sale is obliged to pay a "waiver fee," "fliptax," "transfer charge" or repair charge of any kind in connection with that sale, the parties hereto agree that this charge shall be added to the amount secured by this Agreement and that the Lender shall be entitled to recover that charge from the proceeds of the sale.

15.   CHANGING THIS AGREEMENT

This Agreement contains the full understanding of the parties and may not be amended, altered, changed or ended except by another document in writing signed by the party against whom it is asserted, or by his, her or its duly authorized agent.

IN WITNESS WHEREOF, the Tenant-Shareholder(s) have signed this Agreement on

_____          _____
DOROTHEA SCHIRO

_____          _____


STATE OF CALIFORNIA,
COUNTY OF Los Angeles                )
On  1-30-2007        before me,  Mary C. Burga, Notary Public
personally appeared   DOROTHEA SCHIRO

personally know to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument and person(s) or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal                    _____   (Seal)

CALIFORNIA CO-OP
NP417725-10/96          52821.14253                    Page 5 of 5                    CACO #102

MARY C. BURGA
NOTARY PUBLIC - CALIFORNIA
VENTURA COUNTY
COMMISSION # 1626774
MY COMM. EXPIRES DEC. 4, 2009

Exhibit  3 , Pg. 63

EXHIBIT 4



This page is part of your document - DO NOT DISCARD

## 06 2481011

**RECORDED/FILED IN OFFICIAL RECORDS**
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**11/08/06 AT 08:00am**

**TITLE(S) :** _____



L E A D   S H E E T

**FEE**                                                              **D.T.T.**

FEE $4? . M
DAF $ 4
C-20                    12
                        27

**CODE
20**

**CODE
19**

**CODE
9** ____

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.        **Number of AIN's Shown**

NOTIFICATION SENT-$4

**THIS FORM IS NOT TO BE DUPLICATED**

Exhibit __4__, Pg. __64__

## EQUITY TITLE

RECORDING REQUESTED BY

When Recorded Mail To
METROCITIES MORTGAGE, LLC
15301 VENTURA BLVD , SUITE D300
SHERMAN OAKS, CALIFORNIA 91403
Escrow No  2625826-S
Title Order No  LA0662516



11/08/06

**20062481011**

LA0662516

APN 4293-020-158                    LOAN NO. 21074184

SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

THIS DEED OF TRUST, made   NOVEMBER 1, 2006          between   DOROTHEA SCHIRO,
A SINGLE WOMAN

herein called TRUSTOR, whose address is   201 OCEAN AVENUE, UNIT NO. 1908B, SANTA
MONICA, CALIFORNIA, 90402
OCEAN TOWERS                                           , a corporation herein called
TRUSTEE and   METROCITIES MORTGAGE, LLC
                                                       , herein called BENEFICIARY,

WITNESSETH·  That Trustor IRREVOCABLE GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST,
WITH POWER OF SALE, that property in   LOS ANGELES              County, California described as
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

In the event the herein described property or any part thereof, or any
interest therein is sold, agreed to be sold, conveyed or alienated by the Trustor, or by the operation of law or
otherwise, all obligations secured by this instrument, irrespective of the maturity dates expressed therein, at the
option of the Beneficiary hereof and without demand or notice shall immediately become due and payable

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right power and authority given
to and conferred upon Beneficiary by paragraph (10) of the provisions incorporated herein by reference to collect and apply
such rents, issues and profits

CALIFORNIA CO OP
HP425138-10/98      29029 14185            Page 1 of 7                                    CACO#103

Exhibit  4 , Pg. 65

For the Purpose of Securing  1  Performance of each agreement of Trustor in that certain Loan Security Agreement and that certain Recognition Agreement of even date herewith and any other document executed by Trustor in connection with the indebtedness secured hereby  2  Payment of the indebtedness evidence by one promissory note of even date herewith, and any extension or renewal thereof in the principal sum of $ 1,272,000.00 executed by Trustor in favor of Beneficiary or order  3  Payment of such further sums as then record owner of said property hereafter may borrow from Beneficiary, when evidenced by another notice (or notes) reciting it is so secured

To Protect the Security of a Deed of Trust, Trustor Agrees·  By the execution and delivery of this Deed of Trust and the note secured hereby, that provisions (1) to (14), inclusive, of the fictitious deed of trust recorded in Santa Barbara County and Sonoma County October 18  1961, and in all other counties October 23, 1961, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, viz

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 435 | 684 | Kings | 792 | 833 | Placer | 895 | 301 | Sierra | 29 | 335 |
| Alpine | 1 | 250 | Lake | 362 | 39 | Plumas | 151 | 5 | Siskiyou | 468 | 181 |
| Amador | 104 | 348 | Lassen | 171 | 471 | Riverside | 3005 | 523 | Solano | 1105 | 182 |
| Butte | 1145 | 1 | Los Angeles | T2055 | 899 | Sacramento | 4331 | 62 | Sonoma | 1851 | 689 |
| Calaveras | 145 | 152 | Madera | 77 | 292 | San Benito | 271 | 383 | Stanislaus | 1715 | 456 |
| Contra Costa | 3978 | 47 | Mariposa | 77 | 292 | San Francisco | A332 | 905 | Sutter | 572 | 297 |
| Colusa | 296 | 617 | Marin | 1508 | 339 | San Bernardino | 5567 | 61 | Tehama | 401 | 289 |
| Del Norte | 78 | 414 | Mendocino | 579 | 530 | San Joaquin | 2470 | 311 | Trinity | 93 | 366 |
| El Dorado | 568 | 456 | Merced | 1547 | 538 | San Luis Obispo | 1151 | 12 | Tulare | 2294 | 275 |
| Fresno | 4626 | 572 | Modoc | 184 | 851 | San Mateo | 4078 | 420 | Tuolumne | 135 | 47 |
| Glenn | 422 | 184 | Mono | 52 | 429 | Santa Barbara | 1878 | 860 | Ventura | 2062 | 388 |
| Humboldt | 657 | 527 | Monterey | 2194 | 538 | Santa Clara | 5336 | 341 | Yolo | 653 | 245 |
| Imperial | 1091 | 501 | Napa | 639 | 86 | Santa Cruz | 5336 | 341 | Yuba | 334 | 486 |
| Inyo | 147 | 598 | Nevada | 305 | 320 | Shasta | 684 | 528 | | | |
| Kern | 3427 | 60 | Orange | 5889 | 611 | San Diego | Series 2 Book 1961 | 183887 | | | |

which provisions, identical in all counties, (printed on the attached  unrecorded pages) are hereby adopted and incorporated herein and made a part hereof as fully as though set forth herein at length, that Trustor will observe and perform said provisions, and that the references to property, obligations and parties in said provisions shall be construed to refer to the property, obligations, and parties set forth in this Deed of Trust

*Adjustable Rate Rider, Cooperative Apartment Rider Attached*

CALIFORNIA CO OP
HP425139 10 82      29029 14185           Page 2 of 7                           CACO#103

Exhibit 4 , Pg. 66

4

APN 4293-020-158

The undersigned Trustor request that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth

*Dorothea Schiro*
DOROTHEA SCHIRO

_____

_____     _____

_____     _____

STATE OF CALIFORNIA,
COUNTY OF Los angeles            )

On 11-2-06                       before me, *Cecily Gulihur*   NOTARY PUBLIC
personally appeared   DOROTHEA SCHIRO

personally know to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument and person(s) or entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal



CECILY GULIHUR
COMM #1470564
Notary Public-California
LOS ANGELES COUNTY
My Comm Exp Feb 17, 2008

_____ (Seal)

CALIFORNIA CO OP
HP425140-10/98        29029 14185        Page 3 of 7                    CACO#03

OG 2481011

Exhibit  4 , Pg. 67

APN   4293-020-158

### DO NOT RECORD

The following is a copy of provisions (1) to (14), inclusive, of the fictitious deed of trust, recorded in each county in California, as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as if set forth at length therein

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES: (1) To keep said property in good condition and repair, not to remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor, to comply with all laws affecting said property or requiring any alternations or improvements to be made thereon, not to commit or permit waste thereof, not to commit, suffer or permit any act upon said property in violation of law, to cultivate, irrigate, fertilize, fumigate, prune and to all other acts which from the character or use of said property may be reasonably necessary, the specific enumeration's herein not excluding the general

(2)  To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary   The amount collected under any fire or other insurance policy may be applied to Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor   Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice

(3)  To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or  Trustee, and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclosure this Trust

(4)  To pay, at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock, when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior to superior hereto, all cost, fees and expense of this Trust

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligations so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may, make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes, appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary of Trustee, pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgement of either appears to be prior or superior hereto, and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees

(5)  To pay immediately and without demand all sums so expended by beneficiary or Trustee, with interest from date of expenditure at the amount allowed by laws in effect at the date hereof, and to pay for any statement provided for by laws in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time said statement is demanded

(6)  That any aware of damages in connection with any condemnation for public use of or injury to said property or any party thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him the same manner and with the same effect as above provided for disposition or proceeds of fire or other insurance

(7)  That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8)  That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may, reconvey any part of said property, consent to the making of any map or plat thereof, join in granting any easement thereon, or join in any extension agreement or any agreement subordinating the lien or charge hereof

(9)  That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of the Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty the property then held hereunder   The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof   The grantee in such reconveyance may be described as "the person or persons legally entitled thereto"   Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them)

Exhibit __4__, Pg. _68_

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any, agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable Upon any such default, Beneficiary may at any time without notice, either in persons, by agent or by receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such, rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees upon any indebtedness secured hereby, and in such order as Beneficiary may determine The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and election to cause to be sold said property, which notice Trustee shall cause to be filed for record Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash of lawful money of the United States payable at time of sale Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by proceeding postponement Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied The recitals in such deed of any matters of facts shall be conclusive proof of the truthfulness thereof Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale

After deducting all costs, fees and expenses of Trustee and of the Trust, including costs of evidence of title in connection with sale Trustee shall apply the proceeds of sale to payment of, all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby and the remainder if any, to the person or persons legally entitle thereto

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may form time to time, instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustee, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights powers and duties Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and pages where this Deed is recorded and the name and address of the new Trustee

(13) That this Deed applied to, insures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns The term Beneficiary shall mean the owner and holder, including pledges of the note secured hereby, whether or not named as Beneficiary herein In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural

(14) That trustee accepts this Trust when the Deed, duly executed and acknowledged, is made a public record as provided by law Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or processing in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee

Exhibit 4, Pg. 69

APN  4293-020-158

## REQUEST FOR FULL RECONVEYANCE

TO

The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust   All sums secured by said Deed of Trust have been fully paid and satisfied, and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidence of indebtedness, secured by said Deed of Trust, delivered to you herewith, together with said Deed of Trust, and reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, all the estate now held by you under the same

Dated _____

By _____          By _____

Please mail Reconveyance to

_____

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures   Both original documents must be delivered to the Trustee for cancellation before Reconveyance will be made

STATE OF CALIFORNIA,
COUNTY OF                              }

On                              before me,
personally appeared   DOROTHEA SCHIRO

personally know to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument and person(s) or entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal

_____ (Seal)

Exhibit _4_, Pg. _76_

EXHIBIT A

to

DEED OF TRUST AND ASSIGNMENT OF RENTS

That certain real property situated in the City of   SANTA MONICA       and County of  LOS ANGELES
State of California described as follows

PARCEL 1

Leasehold interest in Apartment No  1908B              located on the   19       Floor and Garage Space(s)
located                                in the improvements located at    201 OCEAN AVENUE, UNIT
NO   1908B, SANTA MONICA, CALIFORNIA, 90402
as shown in that certain Memorandum of Lease dated     NOVEMBER 1, 2006            by and between
OCEAN TOWERS
as Lessor, and  DOROTHEA SCHIRO

as Lessee, said improvements being situated on the following described property
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF


PARCEL 2

                412 Shares in  OCEAN TOWERS
(the "Corporation") and all rights and privileges associated therewith issued to   DOROTHEA SCHIRO

and identified by Share Certificate No(s)    1453

Exhibit  4 , Pg. 71

ORDER NO   LA0662516

APARTMENT NO. 1908-B ON THE NINETEENTH FLOOR OF THE BRENTWOOD BUILDING AS
INDICATED ON EXHIBIT "A" ATTACHED TO THAT CERTAIN LEASE RECORDED NOVEMBER 21,
1978, AS INSTRUMENT NO. 78-1298546, TOGETHER WITH PARKING STALLS 161 AND 161A; SAID
BUILDING AND PARKING STALLS BEING SITUATED ON LOTS 22 THROUGH 26, INCLUSIVE, IN
BLOCK "M" OF THE PALISADES, IN THE CITY OF SANTA MONICA, COUNTY OF LOS ANGELES,
STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 8, PAGE 32, OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Exhibit __4__, Pg. __12__

LOAN NO. 21074184

## ADJUSTABLE RATE RIDER

(LIBOR One-Year Index (As Published In *The Wall Street Journal* - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 1st day of NOVEMBER, 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to METROCITIES MORTGAGE, LLC, A LIMITED LIABILITY COMPANY (the "Lender") of the same date and covering the property described in the Security Instrument and located at 201 OCEAN AVENUE, UNIT NO 1908B, SANTA MONICA, CALIFORNIA 90402

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 6.500 % The Note provides for changes in the interest rate and the monthly payments as follows

### 4   INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the 1st day of DECEMBER, 2013 , and on that day every 12th month thereafter Each date on which my interest rate could change is called a "Change Date "

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U S dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal* The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index "

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information The Note Holder will give me notice of this choice

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding ONE AND SEVEN/EIGHTHS----- percentage points ( 1.875 %) to the Current Index The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0 125%) Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments The result of this calculation will be the new amount of my monthly payment

MULTISTATE ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR  Single Family  Fannie Mae UNIFORM INSTRUMENT          Form 3189 6/01
URXX3189 01 10/01    29029 14185                          Page 1 of 3

Exhibit 4, Pg. 73

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.500% or less than 1.875 % Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO————                    percentage points ( 2.000 %) from the rate of interest I have been paying for the preceding 12 months My interest rate will never be greater than 11.500 %

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice

**B   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows

Transfer of the Property or a Beneficial Interest in Borrower  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law  Lender also shall not exercise this option if (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption  Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

Exhibit 4, Pg. 74

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Adjustable Rate Rider

_____ (Seal)                    _____ (Seal)
DOROTHEA SCHIRO             Borrower                                                        Borrower

_____ (Seal)                    _____ (Seal)
                           Borrower                                                        Borrower

_____ (Seal)                    _____ (Seal)
                           Borrower                                                        Borrower

MULTISTATE ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR   Single Family   Fannie Mae UNIFORM INSTRUMENT
URXX3189 03 10/01      29029 14185                    Page 3 of 3                          Form 3189 6/01

# COOPERATIVE APARTMENT RIDER
## TO
## DEED OF TRUST

LOAN NO. 21074184

THIS COOPERATIVE APARTMENT RIDER ("Rider) I made this   1st   day of NOVEMBER, 2006
and between   DOROTHEA SCHIRO

("Trustor") and   METROCITIES MORTGAGE, LLC, A LIMITED LIABILITY COMPANY

("Beneficiary") as a rider to that certain Deed of Trust and Assignment of Rents of even date herewith (the "Date of Trust")
made for the purpose of securing, inter alia, the payment of the indebtedness evidenced by a promissory note and any
renewals, extensions, or modifications thereof, and executed by  Trustor in favor of beneficiary and covering that certain
property described in the Deed of Trust located at   201 OCEAN AVENUE, UNIT NO. 1908B,
SANTA MONICA, CALIFORNIA, 90402                                              (the "Property")
The Property consists of an apartment and appurtenant garage, and a stock ownership interest in the
corporation known as   OCEAN TOWERS

(the "Cooperative Corporation")   This Rider is incorporated in and shall be deemed to amend and supplement the Deed of
Trust

1   <u>Assessments</u>  Trustor shall promptly pay, when due, any and all assessments, now or hereafter imposed by the
Cooperative Corporation's Board of Directors or other comparable governing body thereof (the "Director") pursuant
to the provisions of its declaration, articles, by-laws, rules and regulations or other similar constituent documents

2   <u>Beneficiary's Prior Consent</u>  Trustor shall not, except after notice to Beneficiary and with Beneficiary's prior
written consent, partition or subdivide the Property or consent to

   a)   Any amendment or modification to the declarations, articles, by-laws, or rules and regulations of the
Cooperative Corporation or equivalent constituent documents of the Cooperative Corporation, including,
but not limited to, any amendment which would change the percentage stock ownership interest to Trustor
in the Cooperative Corporation, or

   b)   Any request made by the Directors to terminate professional management and assume self-management of
the Cooperative Corporation

3   <u>Remedies</u>  If Trustor breaches any covenant and agreement contained herein, then Beneficiary may invoke any and
all remedies provided it under the Deed of Trust

BY SIGNING BELOW, Trustor accepts and agrees to the terms and covenants contained in this Rider

_____
DOROTHEA SCHIRO

CALIFORNIA CO OP
HF430890-10/93      29029 14185                                                                                    CACO#04

Exhibit  4 , Pg. 76

# EXHIBIT 5




This page is part of your document - DO NOT DISCARD

**06 2481012**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**11/08/06 AT 08:00am**

# TITLE(S) :





L E A D    S H E E T

FEE                                                                   D.T.T.

FEE $75 M     19
DAF $ w       35
C-20

CODE
20

CODE
19

CODE
9____

NOTIFICATION SENT $4

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.     Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED

  

Exhibit ___5___ , Pg. 77

EQUITY TITLE

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO

Ocean Towers Housing Corporation
c/o Hamburg, Karic, Edwards & Martin LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, California 90067



11/08/08

20062481012

## DEED OF TRUST

### Pledge Agreement, Assignment of Rents,

### and Security Agreement

THIS DEED OF TRUST, PLEDGE AGREEMENT, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT ("Deed of Trust") is made as of the 2nd day of October, 2006, by and among Dorothea Schiro ("Trustor"), whose address is 201 Ocean Avenue, Santa Monica, CA 90402, MTC Financial Inc , dba Trustee Corps ("Trustee"), whose address is 1401 North Batavia Street, Suite 102, Orange, California; and Ocean Towers Housing Corporation, A California Corporation ("Beneficiary"), whose place of business is 201 Ocean Avenue, Santa Monica, California 90402

FOR GOOD AND VALUABLE CONSIDERATION, including the indebtedness herein recited and the trust herein created, the receipt of which is hereby acknowledged, Trustor hereby irrevocably grants, transfers, conveys and assigns to Trustee, IN TRUST, WITH POWER OF SALE, for the benefit and security of Beneficiary, under and subject to the terms and conditions hereinafter set forth, the real property, located in the City of Santa Monica, County of Los Angeles, State of California, consisting of a proprietary leasehold estate created pursuant to a proprietary lease issued by Ocean Towers Housing Corporation dated November 19, 1978 (the "Lease") and assigned to Trustor pursuant to an Assignment of Proprietary Lease dated as of the ____ day of October, 2006, recorded concurrently herewith, which Lease demises to Trustor, as assignee, Apartment No 1908-B located at 201 Ocean Avenue, Santa Monica, California, and certain appurtenant rights as more particularly described in a Memorandum of Proprietary Lease which was recorded on November 21, 1978 as Instrument No 78-1298914 in the Official Records of Los Angeles County (the "Leased Premises") (See also Exhibit "A")

TOGETHER WITH, all rents, issues, profits, royalties, income and other benefits derived from the Leased Premises (collectively the "Rents, Issues and Profits"), subject to the right, power and authority hereinafter given to Trustor to collect and apply such rents,

TOGETHER WITH, all leasehold estate, right, title and interest of Trustor in and to all Subleases covering the Leased Premises or any portion thereof now or hereafter existing or

Page 1 of 19

**Exhibit** 5 , **Pg.** 78

entered into, and all right, title and interest of Trustor thereunder, including, without limitation, all cash or security deposits, advance rentals, and deposits or payments of similar nature,

TOGETHER WITH, all interest, estate or other Claims, both in law and in equity, which Trustor now has or may hereafter acquire in the Leased Premises,

TOGETHER WITH, all easements, rights-of-way and rights used in connection therewith or as a means of access thereto, and all tenements, hereditaments, and appurtenances thereof and thereto;

TOGETHER WITH, all right, title and interest of Trustor in and to all household goods conveyed to Trustor in connection with Trustor's purchase of the Leased Premises, including, without limitation, any stove, refrigerator, carpets or drapes so conveyed, and now or at any time hereafter located thereon, and the proceeds thereof (the "Personal Property"), including all household goods which are or are to become fixtures on the Leased Premises

TOGETHER WITH, all the estate, interest, right, title, other Claims or demands, including Claims or demands with respect to the proceeds of insurance in effect with and any and all awards made for the taking by eminent domain, or by any proceeding or purchase in lieu thereof, of the whole or any part of the Leased Premises, including without limitation any awards resulting from a change of grade of streets and awards for severance damages, and

TOGETHER WITH Four Hundred Twelve (412) shares of the Common Stock of Ocean Towers Housing Corporation represented by Certificate No 1453, and all substitutions and replacements received as proceeds thereof (the "Stock")

The entire estate, property and interest hereby conveyed to Trustee may hereafter be referred to as the "Trust Estate"

FOR THE PURPOSE OF SECURING

a.    Payment of all rental, taxes, maintenance charges or other sums due and to become due under the terms of the Lease or any extensions, modifications or renewals thereof

b    Performance of all obligations imposed upon Trustor as tenant under the Lease or as a shareholder of the Stock of Beneficiary

c    Payment of all sums advanced by Beneficiary to protect the Trust Estate, with interest thereon at the rate of ten percent (10%) per annum

Page 2 of 19

Exhibit __5__, Pg. 79

4

d.      Performance of all obligations of any guarantor of any of the obligations of Trustor contained in this Deed of Trust, the Lease, or any other instrument given to evidence or further secure the payment and performance of any obligation secured hereby

e       Payment of all other sums, with interest thereon, which may hereafter be loaned or advanced to Trustor, or its successors or assigns, by Beneficiary, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust

f.      Payment of any regular or special assessments levied by Ocean Towers Housing Corporation against Trustor as lessee under the Lease or as owner of the Stock

g.      Payment of any taxes imposed upon the Stock or Trustor's interest as lessee under the Lease

h.      Performance of all covenants, agreements or obligations under this Deed of Trust

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR HEREBY COVENANTS AND AGREES AS FOLLOWS

Article I

Covenants and Agreements of Trustor

Trustor hereby covenants and agrees:

1 01    Payment of Lease Payments.  To pay when due all rental, taxes, maintenance charges and other sums due or to become due under the Lease or any extensions or modifications thereof, and the principal of, and interest on, any future advances secured by this Deed of Trust

1 02    Maintenance, Repair, Alterations   To keep the Leased Premises and all Personal Property in good condition and repair, not to remove, demolish or substantially alter (except such alterations as may be required by laws, ordinances or regulations) any of the improvements within the Leased Premises, except such alterations as may be authorized by the Lease and approved by Ocean Towers Housing Corporation; to restore promptly any damage or destruction to the Leased premises, and to pay when due all Claims for labor performed and materials furnished therefore, to comply with all laws, ordinances, regulations, covenants, conditions and restrictions now or hereafter affecting the Leased premises or any part hereof or requiring any alterations or improvements, not to commit or permit any waste or deterioration of the Leased Premises, not to commit, suffer or permit any act to be done in or upon the Leased premises in violation of any law, ordinance or regulation.

Page 3 of 19

Exhibit __5__, Pg. __80__

5

1 03   Required Insurance   To at all times provide, maintain and keep in force any insurance required pursuant to the terms of the Lease and to comply with all requirements of the Lease relating to the maintenance of insurance

1 04   Assignment of Policies Upon Foreclosure   In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Trust Estate, in extinguishment, in whole or in part, of the debt secured hereby, all right, title and interest of Trustor in and to all policies of insurance required by Section 1 03 and the Lease shall inure to the benefit of and pass to the successor in interest to Trustor or the purchaser or grantee of the Trust Estate.

1 05   Indemnification; Subrogation, Waiver of Offset

(a)   If Beneficiary is made a party defendant to any litigation concerning this Deed of Trust or the Trust Estate or any part thereof or interest therein, or the occupancy of the Leased Premises by Trustor, then Trustor shall indemnify, defend and hold Beneficiary harmless from all liability by reason of said litigation, including reasonable attorneys' fees and expenses incurred by Beneficiary in any such litigation, whether or not any such litigation is prosecuted to judgment   If Beneficiary commences an action against Trustor to enforce any of the terms hereof or because of the breach by Trustor of any of the terms hereof, or for the recovery of any sum secured hereby, Trustor shall pay to Beneficiary reasonable attorneys' fees and expenses, and the right to such attorneys' fees and expenses shall be deemed to have accrued on the commencement of such action, and shall be enforceable whether or not such action is prosecuted to judgment.  If Trustor breaches any term of this Deed of Trust, Beneficiary may employ an attorney or attorneys to protect its rights hereunder, and in the event of such employment following any breach by Trustor, Trustor shall pay Beneficiary reasonable attorneys' fees and expenses incurred by Beneficiary, whether or not an action is actually commenced against Trustor by reason of breach.

(b)   Trustor waives any and all right to claim or recover against Beneficiary, its officers, employees, agents and representatives, for loss of or damage to Trustor, the Trust Estate, Trustor's property or the property of others under Trustor's control from any cause insured against or required to be insured against by the provisions of this Deed of Trust

(c)   All sums payable by Trustor hereunder shall be paid without notice, demand, counterclaim, setoff, deduction or defense and without abatement, suspension, deferment, diminution or reduction, and the obligations and liabilities of Trustor hereunder shall in no way be released, discharged or otherwise affected (except as expressly provided herein) by reason of· (i) any damage to or destruction of or any condemnation or similar taking of the Trust Estate or any part thereof, (ii) any restriction or prevention of or interference with any use of the Trust Estate or any part thereof, (iii) any title defect or encumbrance or any eviction from the Leased premises or any part thereof by title paramount or otherwise, (iv) any bankruptcy, insolvency, reorganization, arrangement, composition,

Page 4 of 19

Exhibit _5_ , Pg. _81_

06 2481812

adjustment, dissolution, liquidation or other like proceeding relating to Beneficiary, or any action taken with respect to this Deed of Trust by any trustee or receiver of Beneficiary, or by any court, in any such proceeding; (v) any claim which Trustor has or might have against Beneficiary; (vi) any default or failure on the part of Beneficiary to perform or comply with any of the terms hereof or of any other agreement with Trustor, or (vii) any other occurrence whatsoever, whether similar or dissimilar to the foregoing, whether or not Trustor shall have notice or knowledge of any of the foregoing   Except as expressly provided herein, Trustor waives all rights now or hereafter conferred by statute or otherwise to any abatement, suspension, deferment, diminution or reduction of any sum secured hereby and payable by Trustor

### 1.06   Taxes and Impositions

(a)   Trustor agrees to pay, at least ten (10) days prior to delinquency, all real property taxes and assessments, general and special, and all other taxes and assessments of any kind or nature whatsoever, including without limitation, taxes imposed on the Stock, taxes imposed on the trustor's interest as lessee under the Lease, nongovernmental levys or assessments such as maintenance charges, owner association dues or charges or fees, levys or charges resulting from covenants, conditions and restrictions affecting the Trust Estate, fines, levys, penalties or other charges arising from violation of the Beneficiary's By-Laws or Rules and Regulations, which are separately assessed or imposed upon the Trust Estate, or become due and payable, and which create, may create or appear to create a lien upon the Trust Estate, or any part thereof, or upon any Personal Property, equipment or other facility used in the operation or maintenance thereof (all of which taxes, assessments and other governmental charges of like nature are hereinafter referred to as "Impositions"), provided, however, that if, by law, any such Imposition is payable, or any at the option of the taxpayer be paid, in installments, Trustor may pay the same together with any accrued interest on the unpaid balance of such imposition in installments as the same become due and before any fine, penalty, interest or cost may be added thereto for the nonpayment of any such installment and interest

(b)   If at any time after the date hereof there shall be assessed or imposed (i) a tax or assessment on the Trust Estate in lieu of or in addition to the Impositions payable by Trustor pursuant to subparagraph (a) hereof, or (ii) a license fee, tax or assessment imposed on Beneficiary and measured by or based in whole of in part upon the amount of the outstanding obligations secured hereby, then all such taxes, assessments or fees shall be deemed to be included within the term "Impositions" as defined in subparagraph (a) hereof, and Trustor shall pay and discharge the same as herein provided with respect to the payment of Impositions or, at the option of Beneficiary, all obligations secured hereby together with all accrued interest thereon, shall immediately become due and payable

(c)   Subject to the provisions of subparagraph (d) of this Section 1 06, Trustor covenants to furnish Beneficiary within thirty (30) days after the date upon which any

Page 5 of 19

such Imposition is due and payable by Trustor, official receipts of the appropriate taxing authority, or other proof satisfactory to Beneficiary, evidencing the payments thereof.

(d)     Trustor shall have the right before any delinquency occurs to contest or object to the amount of validity of any such Imposition by appropriate legal proceedings, but this shall not be deemed or construed in any way as relieving, modifying or extending Trustor's covenant to pay any such Imposition at the time and in the manner provided in this Section 1 06, unless Trustor has given prior written notice to Beneficiary of Trustor's intent to so contest or object to an Imposition, and unless, at Beneficiary's sole option, (1) Trustor shall demonstrate to beneficiary's satisfaction that the legal proceedings shall conclusively operate to prevent the sale of the Trust Estate, or any part thereof, to satisfy such Imposition prior to final determination of such proceedings, or (11) Trustor shall furnish a good and sufficient bond or surety as requested by and satisfactory to Beneficiary, or (111) Trustor shall have provided a good and sufficient undertaking as may be required or permitted by law to accomplish a stay of such proceedings

1 07   <u>Utilities</u>   To pay all utility charges which are incurred by Trustor for the separate benefit of the Leased Premises or which may become a charge or lien against the Leased Premises for gas, electricity, water or sewer services furnished to the Leased Premises and all other assessments or charges of a similar nature, whether public or private, affecting the Leased Premises or any portion thereof, whether or not such taxes, assessments or charges are liens thereon.

1 08   <u>Actions Affecting Trust Estate</u>   To appear in and contest any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including costs of evidence of title and attorneys' fees, in any such action or proceedings in which Beneficiary or Trustee may appear

1.09   <u>Actions by Trustee and/or Beneficiary or Preserve Trust Estate</u>   That should Trustor fail to make any payment or to do any act as and in the manner provided in the Lease, this Deed of Trust or any other instrument given to evidence or further secure the payment and performance of any obligation secured by this Deed of Trust, Beneficiary and/or Trustee, each in its own discretion, without obligation so to do and without notice to or demand upon trustor and without releasing Trustor from any obligation, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof   In connection therewith (without limiting their general powers), Beneficiary and/or Trustee shall have and are hereby given the right, but not the obligation, (1) to enter upon and take possession of the Leased Premises; (11) to make additions, alterations, repairs and improvements to the Leased Premises which they or either of them may consider necessary or property to keep the Leased Premises in good condition and repair, (111) to appear and participate in any action or proceeding affecting or which may affect the security hereof or the rights or powers of Beneficiary or Trustee, (1v) to pay, purchase, contest or compromise any encumbrance, claim, charge, lien or debt which in the judgment of either may affect or appears to affect the security

Page 6 of 19

Exhibit  <u>5</u>, Pg. <u>93</u>

of this Deed of Trust or be prior or superior hereto, and (v) in exercising such powers, to pay necessary expenses, including employment of counsel or other necessary or desirable consultants. Trustor shall, immediately upon demand therefor by Beneficiary, pay all costs and expenses incurred by Beneficiary in connection with the exercise by Beneficiary of the foregoing rights, including without limitation costs of evidence of title, court costs, appraisals, surveys and attorneys' fees

    1.10   Additional Security  That in the event Beneficiary at any time holds additional security for any of the obligations secured hereby, it may enforce the sale thereof or otherwise realize upon the same, at its option, either before or concurrently herewith or after a sale is made hereunder

    1 11   Appointment of Successor Trustee  That Beneficiary may, from time to time, by a written instrument executed and acknowledged by Beneficiary, mailed to Trustor and recorded in Los Angeles County, and by otherwise complying with the provisions of the applicable laws of the State of California substitute a successor or successors to the Trustee named herein or acting hereunder

    1 12   Successors and Assigns.  That this Deed of Trust applies to, inures to the benefit of and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns  The terms "Beneficiary" shall mean the original Beneficiary named herein, any successor owner of the Building in which the Leased Premises are located, or any assignee of the rights to performance of the obligations hereby secured

Article II

Assignment of Rents, Issues and Profits

    2 01   Assignment of Rents  Trustor hereby assigns and transfers to Beneficiary all the Rents, Issues and Profits of the Trust Estate, and hereby gives to and confers upon Beneficiary the right, power and authority to collect such Rents, Issues and Profits  Trustor irrevocably appoints Beneficiary its true and lawful attorney-in-fact, at the option of Beneficiary at any time and from time to time, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, in the name of Trustor or beneficiary, for all such Rents, Issues and Profits and apply the same to the indebtedness secured hereby, provided, however, that Trustor shall have the right to collect such Rents, Issues and Profits (but not more than two months in advance) prior to or at any time, there is not an event of default under the Lease or this Deed of Trust  The assignment of Rents, Issues and Profits of the Trust Estate in this Article II is intended to be an absolute assignment from Trustor to Beneficiary and not merely the passing of a security interest  The Rents, Issues and Profits are hereby assigned absolutely by Trustor to Beneficiary contingent only upon the occurrence of an event of default under the Lease or this Deed of Trust

Page 7 of 19

Exhibit _5_, Pg. _89_

9

2 02   Collection Upon Default   Upon any event of default under the Lease or this Deed of Trust, Beneficiary may, at any time without notice, either in person, by agent or by a receiver appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of the trust Estate, or any part thereof, in its own name sue for or otherwise collect such Rents, Issues and Profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including attorneys' fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The collection of such Rents, Issues and Profits, or the entering upon and taking possession of the Trust Estate, or the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done in response to such default or pursuant to such notice of default.

Article III

Security Agreement

3 01   Creation of Security Interest   Trustor hereby grants to Beneficiary a security interest in the Personal Property and Trustor's leasehold estate in the Lease for the purpose of securing an obligations of Trustor secured by this Deed of Trust

3 02   Warranties, Representation and Covenants of Trustor   Trustor hereby warrants, represents and covenants as follows

(a)   Except for the security interest granted hereby, Trustor is the sole owner of the Personal Property and Lease, free from any adverse lien, security interest, encumbrance or adverse Claims thereon of any kind whatsoever   Trustor will notify Beneficiary of, and will defend the Personal Property and the Lease against, all Claims and demands of all persons at any time claiming the same or any Interest therein

(b)   Trustor will not lease, sell, assign, convey or in any manner transfer the Personal Property or the Lease without the prior written consent of Beneficiary   Any approved transferee must agree to have the transferred property remain subject to he security interest created by this Deed of Trust.

(c)   The Personal Property will be kept on or at the Leased Premises and Trustor will not remove the Personal Property from the Leased Premises without the prior written consent of Beneficiary, except such portions or items of Personal Property which are consumed or worn out in ordinary usage

(d)   At the request of Beneficiary, Trustor will join Beneficiary in executing one or more financing statements and renewals and amendments thereof pursuant to the Uniform Commercial Code of California in a form satisfactory to Beneficiary, and will pay the

Page 8 of 19

Exhibit 5 , Pg. 85

cost of filing the same in all public offices wherever filing is deemed by Beneficiary to be necessary or desirable

        (e)    All covenants and obligations of Trustor contained herein relating to the Trust Estate shall be deemed to apply to the Personal Property and the Lease whether or not expressly referred to herein

        (f)    This Deed of Trust constitutes a Security Agreement as that term is used in the California Commercial Code

        (g)    Beneficiary may place a conspicuous notation on the Lease referring to its rights under this Deed of Trust

Article IV

Pledge Agreement

    4 01   <u>Grant of Security Interest</u>   Trustor hereby grants to Beneficiary a security interest in the Stock for the purpose of securing all obligations of Trustor secured by this Deed of Trust

    4.02   <u>Possession of Stock</u>   Union Bank of California shall have possession of the Stock for the benefit of Beneficiary   Trustor agrees to execute a pledgeholder agreement appointing Union Bank of California as pledgeholder   Trustor will also deliver to Union Bank of California executed stock powers in blank sufficient to transfer title to the Stock   Until an event of default (as defined in Section 5 01) occurs, Trustor shall retain all rights incidental to the ownership of the Stock not given to Beneficiary pursuant to the terms of this Deed of Trust.  Trustor agrees immediately to deliver to Beneficiary (i) all replacements of the now existing Stock or other Stock hereinafter created, and (ii) stock assignments in blank along with all such additional Stock delivered to Beneficiary   Trustor may in writing request Beneficiary to direct Union Bank of California to act as pledgeholder of the Stock for another person or legal entity in whose favor Trustor has granted a written security interest in the same Stock.  Beneficiary agrees not to unreasonably withhold its consent to any such request, provided that said person or legal entity agrees that Bank is acting as Pledgeholder for these shares subject to the senior security interest of Beneficiary

    4 03   <u>Warranties, Representations and Covenants of Trustor</u>   Trustor hereby warrants, represents and covenants as follows

        (a)    Except for the security interest granted hereby, Trustor is, and as to portions of the Stock to be acquired after the date hereof will be, the sole owner of the Stock, free from any adverse lien, security interest, encumbrance or adverse Claims thereon of any

Page 9 of 19

kind whatsoever. Trustor will notify Beneficiary of, and will defend the Stock against, all Claims and demands of all persons at any time claiming the same or any interest therein.

     (b)    Trustor will not lease, sell, convey or in any manner transfer the Stock without the prior written consent of Beneficiary, which shall not be unreasonably withheld Any approved transferee must agree to have the transferred Stock remain subject to the security interest created by this Deed of Trust.

     (c)    At the request of Beneficiary, Trustor will join Beneficiary in executing one or more financing statements and renewals and amendments thereof pursuant to the Uniform Commercial Code of California in form satisfactory to Beneficiary, and will pay the cost of filing the same in all public offices wherever filing is deemed by Beneficiary to be necessary or desirable.

     (d)    All covenants and obligations of Trustor contained herein relating to the Trust Estate shall be deemed to apply to the Stock whether or not expressly referred to herein

     (e)    This Deed of Trust constitutes a Security Agreement as that term is used in the California Commercial Code

    4 04   <u>Beneficiary's Collection Rights</u>  Beneficiary shall have the right after an event of default (as defined in Section 5 01) to (i) instruct the issuer of any of the Stock to deliver to Beneficiary dividends or other payments or distributions relating to any of the Stock, (ii) take control of any proceeds of the Stock under California Commercial Code Section 9306 or otherwise, (iii) to vote the Stock and otherwise to deal with the Stock as if owned by Beneficiary and (iv) to all other remedies permitted by statute or case law

Article V

Remedies Upon Default

    5.01   <u>Events of Default</u>  The occurrence of any one or more of the following events shall be deemed an event of default hereunder

     (a)    Default in the payment of any sum secured hereby when due, or

     (b)    Failure to perform any obligation required by the Lease, this Deed of Trust, the Bylaws or Rules and Regulations of the Beneficiary, or

     (c)    The filing by Trustor of a voluntary petition in bankruptcy or his adjudication as a bankruptcy or insolvent, or his filing of any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for himself under any present or future federal, state or other

Page 10 of 19

Exhibit _5_, Pg. _82_

06 2481012

statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, or seeking or consenting to or acquiescing in the appointment of any trustee, receiver or liquidator of Trustor or of all or any part of the Trust Estate, or of any or all of the royalties, revenues, Rents, Issues or Profits thereof, or his making any general assignment for the benefit of creditors, or admitting in writing his inability to pay his debts generally as they become due, or

(d)   The entry by a court of competent jurisdiction of an order, judgment or decree approving a petition filed against Trustor seeking any reorganization, dissolution or similar relief under any present or future federal, state or other statute, law of regulation relating to bankruptcy, insolvency or other relief for debtors, if such order, judgment or decree shall remain unvacated and unstayed for an aggregate of sixty (60) days (whether or not consecutive) from the first date of entry thereof, or the appointment of any trustee, receiver or liquidator of Trustor or of all or any part of the Trust Estate, or of any or all of the royalties, revenues, rents, issues or profits thereof, without the consent or acquiescence of Trustor if such appointment shall remain unvacated and unstayed for an aggregate of sixty (60) days (whether or not consecutive), or

(e)   The issuance of levy of a writ of execution or attachment or any similar process against all or any part of or interest in the Trust Estate, or the entrance of any judgment involving monetary damages against Trustor which shall become a lien on the Trust Estate or any portion thereof or interest therein if such execution, attachment or similar process or judgment is not released, bonded, satisfied, vacated or stayed with sixty (60) days after its entry or levy; or

(f)   The occurrence of a breach or default under any term, covenant, agreement, condition, provision, representation or warranty contained in the Lease or Deed of Trust not otherwise referred to in this Section 5 01

5 02   **Additional Remedies**  In the event of any event of default, then in addition to any rights set forth in the Lease as a result of such default, Beneficiary may

(a)   Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of its security, enter upon and take possession of the Leased Premises, or any part thereof, in its own name or in the name of Trustee, and do any acts which it deems necessary or desirable to preserve the value, marketability or rentability of the Leased Premises, or part thereof or interest therein, increase the income therefrom or protect the security hereof and, with or without taking possession of the Leased Premises, sue for or otherwise collect the Rents, Issues and Profits thereof, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection including attorneys' fees, upon any indebtedness secured hereby, all in such order as Beneficiary may determine  The entering upon and taking possession of the Trust Estate, the collection of such Rents, Issues and Profits and the

Page 11 of 19

Exhibit __5__, Pg. __88__

application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done, in response to such default or notice of default pursuant to such notice of default and, notwithstanding the continuance in possession of the Leased premises or the collection, receipt and application of Rents, Issues and Profits, Trustee or Beneficiary shall be entitled to exercise every right provided for in the Lease or by law upon occurrence of any event of default, including the right to exercise the power of sale,

(b)     Commence an action to foreclose this Deed of Trust as a mortgage, appoint a receiver, or specifically enforce any of the covenants hereof;

(c)     Exercise any or all of the remedies available to a secured party under the California Uniform Commercial Code, including, but not limited to,

(i)     File suit and obtain judgment and, in conjunction with said suit, Beneficiary may avail itself of any and all ancillary remedies provided by law, including but not limited to, levy of attachment and garnishments,

(ii)     Either personally or by means of a court appointed receiver, take possession of all or any of the Personal Property, the Stock or the Lease and exclude therefrom Trustor and all others claiming under Trustor, and thereafter hold, store, use, operate, manage, maintain and control, make repairs, replacements, alternations, additions and improvements to and exercise all rights and powers of Trustor in respect to the Personal Property, the Stock or the Lease or any part thereof   In the event Beneficiary demands or attempts to take possession of the Personal property or the stock and the Lease in the exercise of any rights under the Lease or this Deed of Trust, Trustor promises and agrees promptly to turn over and deliver complete possession thereof to Beneficiary;

(iii)     Without notice to or demand upon Trustor, make such payments and do such acts as Beneficiary may deem necessary to protect its security interest in the Personal Property, the Stock or the Lease, including without limitation, paying, purchasing, contesting or compromising any encumbrance, charge or lien which is prior to or superior to the security interest granted hereunder, and in exercising any such powers or authority to pay all expenses incurred in connection therewith,

(iv)     Require Trustor to assemble the Personal Property or any portion thereof, at a place designated by Beneficiary and reasonably convenient to both parties, and promptly to deliver such property to Beneficiary, or an agent or representative designated by it   Beneficiary, and its agents and representatives shall have the right to enter upon the Leased Premises to exercise Beneficiary's rights hereunder

(v)     Sell, lease or otherwise dispose of the Personal Property or the Stock at a private sale, with or without having the Personal property or the Stock at the place of sale, and upon such terms and in such manner as Beneficiary may determine, and assign the

Page 12 of 19

Exhibit 5 , Pg. 89



Lease to any purchaser of the Stock   Beneficiary will give Trustor notice in writing of the time on or after which any private sale is to be made,

(vi)   Sell, lease or otherwise dispose of the Personal Property or the Stock at public sale, with or without having the Personal Property or the Stock at the place of sale, and upon such terms and in such manner as Beneficiary may determine, and assign the Lease to any purchaser of the Stock.  Beneficiary may be a purchaser at any such sale,

(vii)   Unless the Personal Property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Beneficiary shall give Trustor at least ten (10) days prior written notice of the time and place of any public sale of the Personal Property or other intended disposition thereof   Such notice may be mailed to Trustor at the address set forth at the beginning of this Deed of Trust

(d)   Pursue any remedy available under the Lease, including without limitation, the bringing of an action for unlawful detainer to remove Trustor or anyone claiming under him from the Leased Premises

(e)   Deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to cause the leasehold estate in the Leased Premises to be sold nonjudicially pursuant to the power of sale hereby granted in this Deed of Trust, which notice Trustee or Beneficiary shall cause to be duly filed for record in the official Records of Los Angeles County

(f)   Compliance by Beneficiary with (i) any applicable laws or (ii) any provision of the articles of incorporation, bylaws or other governing instrument of Ocean Towers Housing Corporation, a California corporation, regulating the disposition of the Personal Property, the Stock or the Lease shall not adversely affect the commercial reasonableness of any such disposition

No delay or omission by the Beneficiary to exercise any right of remedy relating to this Deed of Trust accruing upon an event of default (as defined in Section 5 01) shall (i) impair any such right or any other right or remedy, (ii) be construed to be a waiver of any such default or an acquiescence therein, or (ii) be construed to be a waiver of any such default or an acquiescence therein, or (iii) affect any subsequent default of the same or of a different nature. Beneficiary has no obligation to attempt to satisfy the obligations of Trustor Secured by this Deed of trust by collecting them from any other person liable for them and Beneficiary may release, modify or waive any collateral provided by any other person to secure any of such obligations, all without affecting Beneficiary's rights against Trustor

5.03   <u>Foreclosure By Power of Sale</u>   Should Beneficiary elect to foreclosure by exercise of the power of sale herein contained, Beneficiary shall notify Trustee and shall

Page 13 of 19

]Exhibit __5__ , Pg. _90_

deposit with Trustee this Deed of Trust, a copy of the Lease and such receipts and evidence of expenditures made or obligations unpaid and secured hereby as Trustee may require

(a)   Upon receipt of such notice from Beneficiary, Trustee shall cause to be recorded, published and delivered to Trustor such Notice of Default and Election to Sell as then required by law and by this Deed of Trust   Trustee shall, without demand on Trustor, after lapse of such time as may then be required by law and after recordation of such Notice of Default and after Notice of Sale having been given as required by law, sell the lessee's estate in the Leased Premises at the time and place of sale fixed by it in said Notice of Sale, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale   Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the leasehold estate in the Leased Premises sold, but without any covenant or warranty, express or implied   The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof   Any person, including, without limitation, Trustor, Trustee or Beneficiary, may purchase at such sale and Trustor hereby covenants to warrant and defend the title of such purchaser or purchasers.

(b)   After deducting all costs, fees and expenses of Trustee of this Trust, including costs of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at ten percent (10%) per annum, all other sums then secured hereby and the remainder, if any, to the person or persons legally entitled thereto

(c)   Trustee may postpone sale of the leasehold estate in the Leased Premises by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by, the proceeding postponement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale

5 04   Appointment of Receiver   If an event of default described in Section 5 01 of this Deed of Trust shall have occurred and be continuing, Beneficiary as a matter of right and without notice to Trustor or anyone claiming under Trustor, and without regard to the then value of the Trust Estate or the interest of Trustor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Trust Estate, and Trustor hereby irrevocably consents to such appointment and waives notice of any application therefor Any such receiver or receivers shall have all the usual powers and duties of receivers in like or similar cases and all the powers and duties of Beneficiary in case of entry as provided in Section 5 02(a) and shall continue as such and exercise all such powers until the date of confirmation of sale of the Trust Estate unless such receivership is sooner terminated

5 05   Remedies Not Exclusive   Trustee and Beneficiary, and each of them, shall be entitled to enforce payment and performance of any indebtedness or obligations secured hereby and to exercise all rights and powers under this Deed of Trust or under the Lease or any other

Page 14 of 19

Exhibit __5__, Pg. _91_

agreement or any laws now or hereafter in force, notwithstanding some or all of the said indebtedness and obligations secured hereby may now or hereafter be otherwise secured, whether by mortgage, deed of trust, pledge, lien, assignment or otherwise   Neither the acceptance of this Deed of Trust nor its enforcement whether by court action or pursuant to the power of sale or other powers herein contained, shall prejudice or in any manner affect Trustee's or Beneficiary's right to realize upon or enforce any other security now or hereafter held by Trustee or Beneficiary, it being agreed that Trustee and Beneficiary, and each of them, shall be entitled to enforce this Deed of Trust and any other security now or hereafter held by Beneficiary or Trustee in such order and manner as they or either of them may in their absolute discretion determine.  No remedy herein conferred upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statue.  Every power or remedy given by any of the Deed of Trust, the lease or any other instrument given to evidence or further secure the payment and performance of any obligation secured hereby to Trustee or Beneficiary or to which either of them may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Beneficiary and either of them may pursue inconsistent remedies

5 06    <u>Request for Notice</u>   Trustor hereby requests a copy of any notice of default and that any notice of sale hereunder be mailed to it at the address set forth in the first paragraph of this Deed of Trust

Article VI

Miscellaneous

6.01    <u>Governing Law</u>   This Deed of Trust shall be governed by the laws of the State of California

6 02    <u>Trustor Waiver of Rights</u>   Trustor waives the benefits of all laws now existing or that hereafter may be enacted providing for (i) any appraisement before sale of any portion of the Trust Estate; and (ii) the benefit of all laws that may be hereafter enacted in any way extending the time for the enforcement of the collection of obligations secured hereby or creating or extending a period of redemption from any sale made in collecting said debt.  To the full extent Trustor may do so, Trustor agrees that Trustor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for any appraisement, valuation, stay, extension or redemption, and Trustor, for Trustor, Trustor's heirs, devisees, representatives, successors and assigns, and for any and all persons ever claiming any interest in the Trust Estate, to the extent permitted by law, hereby waives and releases all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature or declare the whole of the secured indebtedness and marshaling in the event of foreclosure of the liens hereby created   If any law referred to in this Section, and

Page 15 of 19

Exhibit  _5_ , Pg._92_

17

now in force, of which Trustor, Trustor's heirs, devisees, representatives, successors and assigns or other person might take advantage despite this Section shall hereafter be repealed or cease to be in force, such law shall not thereafter be deemed to preclude the application of this Section  Trustor expressly waived and relinquishes any and all rights and remedies which Trustor may have or be able to assert by reason of the laws of the state of California pertaining to the rights and remedies of sureties

6 03    <u>Reconveyance by Trustee</u>.  Upon written request of Beneficiary stating that all obligations secured hereby have been paid, and upon surrender of this Deed of Trust to Trustee for cancellation and retention and upon payment by Trustor and Trustee's fees, Trustee shall reconvey to Trustor, or the person or persons legally entitled thereto, without warranty, any portion of the Trust Estate then held hereunder.  The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof  The grantee in any reconveyance may be described as "the person or persons legally entitled thereto"

6.04    <u>Severability</u>  If any term, condition or provision of this Deed of Trust is declared illegal or invalid for any reason by a court of competent jurisdiction, the remaining terms, conditions and provisions of this Deed of Trust shall nevertheless, remain in full force and effect

6 05    <u>Notices</u>  Whenever Beneficiary, Trustor or Trustee shall desire to give or service any notice, demand, request or other communication with respect to this Deed of Trust, each such notice, demand, request or other communication shall be in writing and shall be effective only if the same is delivered by personal service or mailed by registered mail, postage prepaid, return receipt requested, addressed to the address set forth at the beginning of this Deed of Trust.  Any party may at any time change its address for such notices by delivering or mailing to the other parties thereto, as aforesaid, a notice of such change

6 06    <u>Acceptance by Trustee</u>  Trustee accepts this Trust when this Deed of Trust duly executed and acknowledged, is made a public record as provided by law

6 07    <u>Amendments</u>.  This instrument cannot be waived, changed, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of any waiver, change, discharge or termination is sought

]Exhibit _5_, Pg. _93_

18

6.08    Captions.    The captions or headings at the beginning of each Section hereof are for the convenience of the parties and are not a part of this Deed of Trust

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust as of the day and year first above written

"TRUSTOR":

Dorothea Schiro

Exhibit 5, Pg. 94

19

STATE OF CALIFORNIA )  ss
COUNTY OF LOS ANGELES )

On _Nouember 7 200_, before me,

_Cecily Gulihur_, a Notary Public in

and for said County and State personally

appeared _Dorothea Schiro_

personally known to me (or proved to me on
the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to
me that he/she/they executed the same in
his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the
instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed
the instrument

WITNESS my hand and official seal



Notary Public in and for the
State of California

CECILY GULIHUR
COMM. #1470564
Notary Public-California
LOS ANGELES COUNTY
My Comm Exp Feb 17, 2008

Page 18 of 19

Exhibit __5__, Pg. _95_

EXHIBIT "A"

APARTMENT NO 1908-B ON THE 19th FLOOR OF THE BRENTWOOD BUILDING AND PARKING STALL(S) 161 AND 161A ALL AS INDICATED ON EXHIBIT "A", WHICH EXHIBIT "A" IS ATTACHED TO EXHIBIT "B", SAID EXHIBIT "B" BEING ATTACHED TO THAT CERTAIN LEASE RECORDED NOVEMBER 21, 1978 AS INSTRUMENT NO 78-1298546, SAID BUILDING AND PARKING STALLS BEING SITUATED ON LOTS 22 THROUGH 26 INCLUSIVE IN BLOCK "M" OF THE PALISADES, IN THE CITY OF SANTA MONICA, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 8 PAGE 32 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

EXHIBIT 6

PLEDGEHOLDER AGREEMENT – OCEAN TOWERS & BORROWER

       This Pledge holder Agreement is made as of this 2nd day of November 2006 by and between Ocean Towers Housing Corporation, a California corporation ("Corporation"), Union Bank of California, National Association (N.A.) (the "Bank") and Dorothea Schiro ("Tenant").

RECITALS

       A.    Corporation is the owner of that certain apartment building and appurtenant improvements, known as the Ocean Towers Apartments located at 201 Ocean Avenue, Santa Monica, California.

       B.    Tenant has acquired Four Hundred Twelve (412) shares of the capital stock of Corporation represented by Certificate No. One Thousand Four Hundred Fifty Three (1453) (the "Shares").

       C.    Tenant has been assigned a Proprietary Lease (the "Lease") with Corporation, which entitles Tenant, as assignee, to occupy Apartment No. 1908B of the Ocean Towers Apartments (the "Apartment"). Tenant has assumed all of the lessee's obligations under the Proprietary Lease, which provides for the Tenant to make certain payments to Corporation.

       D.    In order to secure performance of the obligations of the lessee under the Lease, Tenant granted to Corporation a lien on all of Tenant's interest in the Lease and the Shares pursuant to a Deed of Trust, Pledge Agreement, Assignment of Rents and Security Agreement dated 11-2-06 between the Corporation and Tenant (the "Collateral Security Agreement"). In addition, Tenant has executed a Loan Security Agreement in favor of Corporation dated 11-2-, 2006 (the "Pledge Agreement") to further secure performance of said obligations.

       E.    The Collateral Security Agreement and the Pledge Agreement provide for the pledge of Tenant's Shares in favor of the corporation by delivery of the Shares and executed Stock Assignment in blank relating to the Shares (the "Stock Assignment") to the Bank in trust.

NOW THEREFORE, Corporation, Tenant and Bank hereby agree as follows:

       1.    Appointment of Pledgeholder. Bank will act as pledgeholder of the Shares.

       2.    Possession of Shares. Tenant hereby deposits the Shares and Stock Assignment with the Bank. The Bank shall hold and dispose of the Shares and Stock Assignment in accordance with this Agreement, the Pledge Agreement, the Loan Security Agreement dated July 6, 2006 between the Tenant and Metrocities Mortgage, LLC ("Metrocities") (the "Metrocities Pledge Agreement") and the Recognition Agreement between the Corporation, Tenant, Bank, and Metrocities. Tenant agrees to immediately deliver to Bank all replacements of the Shares along

**Exhibit _6_, Pg. _97_**

with Stock Assignments for such replacements. Tenant may in writing request Corporation to direct Bank to act as pledgeholder of the Shares for another person or legal entity in whose favor Tenant has granted a security interest. Corporation agrees not to unreasonably withhold its consent to any such request, provided that said person or legal entity agrees that Bank is acting as Pledgeholder for these shares subject to the senior security interest of Corporation. The Corporation hereby consents to the pledge by the Tenant of a first lien security interest to Metrocities pursuant to the Metrocities Pledge Agreement. Bank agrees to comply with any such written directions received from Corporation, which recite that they are made pursuant to this section.

3. <u>Voting and Other Rights</u>. Except for the rights given to the Corporation and the Bank pursuant to this Agreement or Metrocities and the Bank pursuant to the Pledgeholder Agreement dated _____, Tenant shall retain all other rights incidental to the ownership of the Shares, including the right to vote the Shares as a shareholder of the Corporation.

4. <u>Inspection</u>. Bank shall permit Corporation and Tenant at reasonable times and upon reasonable notice to inspect in person or by agent the Shares and Stock Assignment.

5. <u>Default</u>. Subject to the rights of Metrocities as first lienholder, the Corporation will have the right, after the occurrence of an event of default, as defined in the Collateral Security Agreement, the Pledge Agreement, or the Lease, to instruct the Bank in writing to deliver the Shares and Stock Assignment to the Corporation. Bank will promptly deliver the Shares and Stock Assignment to Corporation upon receipt of such notice, unless it receives contrary instructions from Tenant within ten (10) days of receipt of notice by such Tenant.

6. <u>Bank's Fee</u>. The Corporation shall pay (i) the Bank's reasonable fees for the services performed by Bank, and (ii) such attorney's fees, expenses, and other costs as may be incurred by Bank in connection with the administration of this Agreement.

7. <u>Bank's Liability</u>. The duties of the Bank are only such as are herein specifically provided. Bank shall incur no liability whatsoever except for willful misconduct or gross negligence so long as it shall have acted in good faith. The Bank shall be under no responsibility with respect to the Shares deposited with it, other than faithfully to follow the instructions herein contained. It may consult with counsel and shall be fully protected in any action taken in good faith in accordance with the advice of counsel. It shall not be required to defend any legal proceedings which may be instituted against it with respect to the subject matter of these instructions unless requested to do so by one or more of the parties hereto and indemnified by the requesting party to its satisfaction against the cost and expense of such defense. The Bank shall not be required to institute legal proceedings of any kind. It shall have no responsibility for the genuineness, validity or value of the Shares or of any document or other item deposited with it and it shall be fully protected in acting in accordance with any written instructions given to it by the parties hereunder and believed by it to have been signed by the proper officers or other representatives of the parties hereto. In the event any action is instituted against the Bank, it may interplead the parties hereto and may deposit the subject matter of this pledge into court and in such event the Bank shall be relieved of and discharged from any and all obligations and liabilities

Exhibit __6__, Pg. __98__

under and pursuant to this Pledgeholder Agreement. The Bank shall not be concerned with any obligations of the Tenant to the Corporation or any other agreements between the Tenant and the Corporation other than as set forth herein. The Bank shall be concerned solely with the provisions of this Agreement.

8.    Termination. This agreement may be terminated only upon the delivery to bank of written instructions from Corporation and Tenant.

9.    Assignment. Pledgee may assign this Pledge Agreement without the prior consent or approval of Pledgor.

Executed as of the date first above written.

"CORPORATION":

OCEAN TOWERS HOUSING CORPORATION,
a California Corporation

By: _____

Title: _____

"TENANT":

Dorothea Schiro

Accepted:
Union Bank of California
National Association (N.A.)

By: _____

Exhibit _6_, Pg. _99_

# EXHIBIT 7

# RECOGNITION AGREEMENT

Loan # 21074184.                          Date: [ ]

Lender: Metrocities Mortgage
Corporation: Ocean Towers Housing Corporation, A California Corporation
Lessee:    Dorothea Schiro


Property:
201OCEAN AVENUE, UNIT NO. 1908B ; SANTA MONICA, CALIFORNIA 90402

Apartment # 1908B    and appurtenant garage

Shares: 412   for Apartment No. 1908B   (Share Certificate No. 1453 )

Loan Amount:   $1,272,000.00

Lender has been asked by Lessee to make the Loan as above stated, to be secured by a pledge and security interest (hereinafter sometimes collectively referred to as the "Security") of the Share in Corporation which are allocated to the Apartment, the Additional Garage Space and to the Proprietary Lease ("the Lease") appurtenant thereto (the Shares and the Lease are collectively referred to as the "Collateral")

## 1. STATUS OF CORPORATION AND COLLATERAL.

(a) Corporation is a California corporation in good standing, formed for the purpose of cooperative ownership, and is either the owner in fee or the ground tenant of the Property in which the Apartment is located.

(b) Corporation's records show that Lessee is, or is to become, the Lessee under the Lease and the holder and owner of record of the membership certificate or stock certificate number stated above for the shares, which lease and certificate evidence Lessee's ownership interest in Corporation and in the Apartment. Said Lease and Shares are, or upon completion of the transfer to Lessee will be, the only lease and shares outstanding with respect to the Apartment, and all prior leases and shares issued in connection therewith having been terminated and/or canceled.

(c) Neither the Lease nor Corporation's Articles or Bylaws or other corporate documents prohibit the pledge of the shares or the assignment of the Lease to Lender, and Corporation has duly approved or consented to the creation by Lessee of the Security, if and to the extent such approval is required by the Lease and Corporation's Articles, Bylaws or other corporation documents.

(d) Corporation and Lessee each hereby certifies and acknowledges that to the best of their respective knowledge and belief or each of them, (i) there are no unrecorded amendments, modifications or transfers affectin the Lease, except as may be enumerated in a schedule attached hereto, (ii) there exists no breach of any covenant, conditions or provision on the part of either Corporation or Lessee to be performed under the Lease or Corporation's Articles or Bylaws, nor des there exist any circumstances or condition which, with the giving of notice or passage of time or both would constitute such a breach. Without limiting the generality of the foregoing: there is no indebteness due the Corporation with respect to the Apartment or the Collateral.

## 2. RESTR4ICTIONS ON COLLATERAL

(a) Corporation will not consent to any further encumbrances, subletting, termination, cancellation, surrender or modification of the Collateral by Lessee without Lender's approval, which, by the terms of the Lease may be effective against a lessee when approved by a fixed

Exhibit  7 , Pg. 100

percentage of other holders of Corporation's shares, or which may be effective in the event of condemnation or casualty or by reason of Lessee's default in Lessee's performance of the obligations, covenants or agreements in favor of Corporation contained in the Lease.

(b) Lessee has agreed that, without Lender's approval, Lessee will not exercise any right Lessee may have under the Lease or under Corporation's Articles or Bylaws to terminate or assign the Lease or to sublease the Apartment for longer than one year, so long as the Loan is outstanding. Accordingly, Corporation will not consider any attempt to do so effective.

(c) Notwithstanding any provision of the Lease or of Corporation Articles or Bylaws or other corporate documents, Corporation shall recognize Lender's lien under the Security, and if the Lease is terminated or the Shares are canceled, Corporation also shall recognize Lender's lien against the net proceeds of any sale or subletting of the Apartment, after reimbursement to Corporation for all sums due Corporation in connection with the Apartment.

## 3. DEFAULT UNDER LEASE.

(a) Corporation will notify Lender promptly of any notice given by Corporation of Corporation's intention to terminate the Lease and or any other default under the Lease (provided, however Corporation shall not be obligated to notify Lender of any such default which, together with all unpaid monetary defaults, does not at least equal three month's maintenance payments, unless Corporation serves Lessee with a notice of default with respect thereto), which to lender shall describe the nature of the default and the cure demanded, and

    (i) If lessee's default can be cured by the payment of money, Corporation will take no action to terminate the Lease or cancel the Shares if the default is cured either by Lender for the account or Lessee or by Lessee within thirty (30) days after such notice of default or intention to terminate: or

    (ii) If Corporation has already sold or contracted to sell the Collateral or any interest therein, Corporation pays Lender the net proceeds of such sale (after reimbursing itself for all sums due Corporation), or such lesser sum as shall equal the amount owing to Lender by Lessee (the balance being payable to or for the account of Lessee, or

    (iii) If Corporation has not contracted to sell the Collateral or any interest therein, the provisions of paragraph 2 (c) hereof shall apply.

(b) Corporation will accept payment form Lender of Behalf or Lessee of any sums due under the Lease (including its default clause). Any payments made by Lender under the terms of this Agreement, at Lender's election, will be deemed so paid, and no payments made in accordance herewith shall be deemed to limit Lender's rights against Lessee pursuant to law.

(c) Lender has the right, but shall not be obligated to cure Lessee's defaults under the Lease. If Lender does not do so within the time provided herein Corporation shall have no obligation to Lender, except that in the event of sale or subletting the Apartment, Corporation shall recognize Lender's rights as a lienor against the net proceeds of any sale subletting (after reimbursement to Corporation of all sums which are due to Corporation under the Lease).

## 4. DEFAULT UNDER LOAN

(a) If Lessee defaults on the Loan, Corporation has no objection to acquisition by Lender of the Shares, the Lease and the leasehold interest in the Apartment, whether by public or private foreclosure or other sale or by a conveyance therein in lieu of foreclosure, provided: (I) Lender agrees in writing to accept the Lease and assume and be bound by the covenants and conditions contained therein, and (ii) any proposed use or occupancy of the Apartment shall be subject to Corporation's prior consent and approval which shall not be unreasonably withheld, in accordance with the Lease, Corporation's Bylaws and Corporation's existing practices and procedures. Any proposed acquisition of the Shares, the Lease or the leasehold interest in the Apartment by any entity or individual other than by Lender, upon foreclosure or otherwise, shall be subject to Corporation's prior consent and approval, which shall not be unreasonably

**Exhibit** _7_, **Pg.** _101_

withheld, in accordance with the Lease. Corporation's bylaws and Corporation's existing practices and procedures.

(b) If Lessee defaults under the Loan and Lender records a notice of default to commence foreclosure proceedings, Lender shall provide a copy of the notice of default to Corporation within one month after the date of recordation of the notice of default. Corporation may record a request for notice of default in which event Lender will provide notice to Corporation a required by applicable law. From any time after Lender records a notice of default until the underlying default is cured or until Lender acquires the Collateral by transfer in lieu of foreclosure or through a foreclosure sale, Corporation and any of its shareholders shall have the right either to purchase from Lender or to pay off and satisfy the Loan and all Security interest of Lender, for an amount equal to the principal balance accrued interest, and other charges owing by Lessee under the Loan.

(c) If Lender desires to accept a deed in lieu of foreclosure, in order to permit Corporation or its shareholders to exercise this right to purchase the Loan. Lender shall give Corporation thirty (30) days prior notice of such acceptance would occur at any time after such period.

## 5. CORPORATION'S PRIORITY, LOAN CALL IN THE EVENT OF CORPORTATION REFINACE OF PROPETY.

(a) Lender understands that Lender's right to Security and the Collateral are and shall be subject and subordinate to die lien of any mortgage or deed of trust now or hereafter in force against Corporation's interest in the Property and/or any other asset of Corporation. The lien by which the Loan is secured is to be subject to Corporation's lien against the Shares for indebtedness to Corporation as may be noted in the certificate representing the Shares.

(b) Corporation agrees to notify Lender that Corporation intends to place a mortgage or deed of trust on its interest in the Property, at least sixty (60) days prior to the execution of such mortgage or deed of trust by Corporation. Lender shall have the right to accelerate the maturity of the Loan and requires Lessee to pay the loan off in full if the Lender determines that after the placing of the mortgage or deed of trust on Corporation's interest in the Property the outstanding balance of the Loan, taking into account the Apartment's pro rata share of the indebtedness secured by the Corporation's mortgage or deed of trust, would be more than 70% of the value of Lender's Collateral_

## 6. POSSESION OF COLLATERAL.

(a) Corporation agrees that so long as the Loan is outstanding, notwithstanding any contrary provision in the Lease or Corporation's Articles or Bylaws or other corporate documents, Lender shall be entitled to retain possession of the Shares.

(b) Upon payment of the Loan and other approved obligations to which the Security relates, Lender will return the Shares and the Lease to Corporation or in accordance with Corporation's instructions.

(c) So lone as Lessee is not in default under the Loan, Lessee may vote the Shares in accordance with the Bylaws of the Corporation and the lease.

## 7. NOTICES.

Any notice approval or other communication provided for herein shall be deemed valid only if the writing and sent by certified or registered mail, return receipt requested, with a copy by regular first class mail to the address of Lender or Corporation, as the case may be, stated on the first page of this Agreement. Either Lender or Corporation may chance the address to which notices approvals or other communications shall be mailed by notice given as herein provided.

## 8. TRANSFER OF LOAN

Exhibit __7__, Pg. 162

Lender and Corporation hereby agrees that Lender is entitled to sell, assign or transfer the Loan and security documents, including this Agreement to other lenders.

**9. CORPORATION'S AUTHORITY.**
    This Agreement has been duly signed and is authorized by Corporation's Board of Directors in accordance with the applicable provisions of Corporation's Articles and Bylaws.

**10. GENERAL PROVISIONS**

    (a)  All parities hereto agree to execute such documents as may reasonably be requested and necessary to carry out the terry of this Agreement.

    (b)  This Agreement shall inure to the benefit of and shall be binding upon the successors and permitted assigns of the parties hereto.

    (c)  This Agreement may be modified or amended only by a written instrument signed by each party hereto.

    (d)  The headings in this Agreement are for convenience only and are not to be utilized in constructing the contents or meaning of the substantive provision hereof.

    (e)  This agreement and the representation and promises contained herein shall be deemed made of the date of the making of the loan.

Corporation:
Ocean Towers Housing Corporation
A California Corporation

By: _____
DATE: __1-2-06__

Lessee/Borrower:
Dorothea Schiro

DATE: __1-2-06__

Lender:

By: _____ Venrica Moskowitz, SVP
DATE: _____

DATE: _____

Exhibit __7__, Pg. __103__

# RECOGNITION AGREEMENT

Loan # 20107048447                    Date: 01/07/2005

Lender: Metrocities Mortgage
Corporation: Ocean Towers Housing Corporation, A California Corporation
Lessee:   Dorothea Schiro

Property:
201 OCEAN AVENUE, UNIT NO. 1908BD; SANTA MONICA, CALIFORNIA 90402

Apartment # 1908BD and appurtenant garage

Shares: 4123 for Apartment No. 1908BD  (Share Certificate No. 14531)

Loan Amount: $1,272,000.00

     Lender has been asked by Lessee to make the Loan as above stated, to be secured by a pledge and security interest (hereinafter sometimes collectively referred to as the "Security") of the Share in Corporation which are allocated to the Apartment, the Additional Garage Space and to the Proprietary Lease ("the Lease") appurtenant thereto (the Shares and the Lease are collectively referred to as the "Collateral")

## 1. STATUS OF CORPORATION AND COLLATERAL.

  (a) Corporation is a California corporation in good standing, formed for the purpose of cooperative ownership, and is either the owner in fee or the ground tenant of the Property in which the Apartment is located.

  (b) Corporation's records show that Lessee is, or is to become, the Lessee under the Lease and the holder and owner of record of the membership certificate or stack certificate number stated above for the shares, which lease and certificate evidence Lessee's ownership interest in Corporation and in the Apartment. Said Lease and Shares are, or upon completion of the transfer to Lessee will be, the only lease and shares outstanding with respect to the Apartment, and all prior leases and shares issued in connection therewith having been terminated and/or canceled.

  (c) Neither the Lease nor Corporation's Articles or Bylaws or other corporate documents prohibit the pledge of the shares or the assignment of the Lease to Lender, and Corporation has duly approved or consented to the creation by Lessee of the Security, if and to the extent such approval is required by the Lease and Corporation's Articles, Bylaws or other corporation documents.

  (d) Corporation and Lessee each hereby certifies and acknowledges that to the best of the respective knowledge and belief of each of them, (i) there are no unrecorded amendments, modifications or transfers affectin the Lease, except as may be enumerated in a schedule attached hereto, (ii) there exists no breach of any covenant, conditions or provision on the part of either Corporation or Lessee to be performed under the Lease or Corporation's Articles or Bylaws, nor des there exist any circumstances or condition which, with the giving of notice or passage of time or both would constitute such a breach. Without limiting the generality of the foregoing: there is no indebteness due the Corporation with respect to the Apartment or the Collateral.

## 2. RESTR4ICTIONS ON COLLATERAL

  (a) Corporation will not consent to any further encumbrances, subletting, termination, cancellation, surrender or modification of the Collateral by Lessee without Lender's approval, which, by the terms of the Lease may be effective against a lessee when approved by a fixed

**Exhibit** *7* **, Pg.** *104*

percentage of other holders of Corporation's shares, or which may be effective in the event of condemnation or casualty or by reason of Lessee's default in Lessee's performance of the obligations, covenants or agreements of Corporation contained in the Lease.

(b) Lessee has agreed that, without Lender's approval, Lessee will not exercise any right Lessee may have under the Lease or under Corporation's Articles or Bylaws to terminate or assign the Lease or to sublease the Apartment for longer than one year, so long as the Loan is outstanding, Accordingly, Corporation will not consider any attempt to do so effective.

(c) Notwithstanding any provision of the Lease or of Corporation Articles or Bylaws or other corporate documents, *Corporation shall recognize Lender's* lien under the Security, and if the Lease is terminated or the Shares are canceled, Corporation also shall recognize Lender's lien against the net proceeds of any sale or subletting of the Apartment, after reimbursement to Corporation for all sums due Corporation in connection with the Apartment.

## 3. DEFAULT UNDER LEASE.

(a) Corporation will notify Lender promptly of any notice given by Corporation of Corporation's intention to terminate the Lease and or any other default under the Lease (provided, however Corporation shall not be obligated to notify Lender of any such default which, together with all unpaid monetary defaults, does not at least equal three month's maintenance payments, unless Corporation serves Lessee with a notice of default with respect thereto), which to lender shall describe the nature of the default and the cure demanded, and

 (i) If lessee's default can be cured by the payment of money, Corporation will take no action to terminate the Lease or cancel the Shares if the default is cured either by Lender for the account or Lessee or by Lessee within thirty (30) days after such notice of default or intention to terminate: or

 (ii) If Corporation has already sold or contracted to sell the Collateral or any *interest therein, Corporation pays Lender* the net proceeds of such sale (after reimbursing itself for all sums due Corporation), or such lesser sum as shall equal the amount owing to Lender by Lessee (the balance being payable to or for the account of Lessee, or

 (iii) If Corporation has not contracted to sell the Collateral or any interest therein, the provisions of paragraph 2 (c) hereof shall apply.

(b) Corporation will accept payment form Lender of Behalf or Lessee of any sums   due under the Lease (including its default clause). Any payments made by Lender under the terms of this Agreement, at Lender's election, will be deemed so paid, and no payments made in accordance herewith shall be deemed to limit Lender's rights against *Lessee pursuant to law.*

(c) Lender has the right, but shall not be obligated to cure Lessee's defaults under the Lease. If Lender does not do so within the time provided herein Corporation shall have no obligation to Lender, except that in the event of sale or subletting the Apartment, Corporation shall recognize Lender's rights as a lienor against the net proceeds of any sale subletting (after reimbursement to Corporation of all sums which are due to Corporation under the Lease).

## 4. DEFAULT UNDER LOAN

(a) If *Lessee defaults on the Loan, Corporation* has no objection to acquisition by Lender of the Shares, the Lease and the leasehold interest in the Apartment, whether by public or private foreclosure or other sale or by a conveyance therein in lieu of foreclosure, provided: (I) Lender agrees in writing to accept the Lease and assume and be bound by the covenants and conditions contained therein, and (ii) any proposed use or occupancy of the Apartment shall be subject to Corporation's prior consent and approval which shall not be unreasonably withheld, in accordance with the Lease, Corporation's Bylaws and Corporation's existing practices and procedures. Any proposed acquisition of the Shares, the Lease or the leasehold interest in the Apartment by any entity or individual other than by Lender, upon foreclosure or otherwise, shall be subject to Corporation's prior consent and approval, which shall not be unreasonably

Exhibit __7__, Pg. __105__

withheld, in accordance with the Lease, Corporation's bylaws and Corporation's existing practices and procedures.

(b)   If Lessee defaults under the Loan and Lender records a notice of default to commence foreclosure proceedings, Lender shall provide a copy of the notice of default to Corporation within one month after the date of recordation of the notice of default. Corporation may record a request for notice of default in which event Lender will provide notice to Corporation a required by applicable law. From any time after Lender records a notice of default until the underlying default is cured or until Lender acquires the Collateral by transfer in lieu of foreclosure or through a foreclosure sale, Corporation and any of its shareholders shall have the right either to purchase from Lender or to pay off and satisfy the Loan and all Security interest of Lender, for an amount equal to the principal balance accrued interest, and other charges owing by Lessee under the Loan.

(c)   If Lender desires to accept a deed in lieu of foreclosure, in order to permit Corporation or its shareholders to exercise this right to purchase the Loan. Lender shall give Corporation thirty (30) days prior notice of such acceptance would occur at any time after such period.

## 5. CORPORATION'S PRIORITY, LOAN CALL IN THE EVENT OF CORPORTATION REFINACE OF PROPETY.

(a)   Lender understands that Lender's right to Security and the Collateral are and shall be subject and subordinate to die lien of any mortgage or deed or trust now or hereafter in force against Corporation's interest in the Property and/or any other asset of Corporation. The lien by which the Loan is secured is to be subject to Corporation's lien against the Shares for indebtedness to Corporation as may be noted in the certificate representing the Shares.

(b)   Corporation agrees to notify Lender that Corporation intends to place a mortgage or deed of trust on its interest in the Property, at least sixty (60) days prior to the execution of such mortgage or deed of trust by Corporation. Lender shall have the right to accelerate the maturity of the Loan and requires Lessee to pay the loan off in full if the Lender determines that after the placing of the mortgage or deed of trust on Corporation's interest in the Property the outstanding balance of the Loan, taking into account the Apartment's pro rata share of the indebtedness secured by the Corporation's mortgage or deed of trust, would be more than 70% of the value of Lender's Collateral_

## 6. POSSESION OF COLLATERAL.

(a)   Corporation agrees that so long as the Loan is outstanding, notwithstanding any contrary provision in the Lease or Corporation's Articles or Bylaws or other corporate documents, Lender shall be entitled to retain possession of the Shares.

(b)   Upon payment of the Loan and other approved obligations to which the Security relates, Lender will return the Shares and the Lease to Corporation or in accordance with Corporation's instructions.

(c)   So lone as Lessee is not in default under the Loan, Lessee may vote the Shares in accordance with the Bylaws of the Corporation and the lease.

## 7. NOTICES.

Any notice approval or other communication provided for herein shall be deemed valid only if the writing and sent by certified or registered mail, return receipt requested, with a copy by regular first class mail to the address of Lender or Corporation, as the case may be, stated on the first page of this Agreement. Either Lender or Corporation may chance the address to which notices approvals or other communications shall be mailed by notice given as herein provided.

## 8. TRANSFER OF LOAN

Exhibit __7__, Pg. __106__

Lender and Corporation hereby agrees that Lender is entitled to sell, assign or transfer the Loan and security documents, including this Agreement to other lenders.

9. CORPORATION'S AUTHORITY.

This Agreement has been duly signed and is authorized by Corporation's Board of Directors in accordance with the applicable provisions of Corporation's Articles and Bylaws.

10. GENERAL PROVISIONS

(a) All parities hereto agree to execute such documents as may reasonably be requested and necessary to carry out the terry of this Agreement.

(b) This Agreement shall inure to the benefit of and shall be binding upon the successors and permitted assigns of the parties hereto.

(c) This Agreement may be modified or amended only by a written instrument signed by each party hereto.

(d) The headings in this Agreement are for convenience only and are not to be utilized in constructing the contents or meaning of the substantive provision hereof.

(e) This agreement and the representation and promises contained herein shall be deemed made of the date of the making of the loan.

Corporation:
Ocean Towers Housing Corporation
A California Corporation

By: _____
DATE: _____

Lessee/Borrower:

_____
Dorothea Schiro

_____

DATE: _____

Lender:

By: _____ Vennica Morkowitz, SVP
DATE: _____

Union Bank of California
National Association (N.A.)

_____

ALISON BRAUNSTEIN
VICE PRESIDENT

DATE: NOV 07 2006

Exhibit __7__, Pg. __107__

# EXHIBIT 8

**This page is part of your document - DO NOT DISCARD**



# 20110314068



**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/01/11 AT 08:00AM**

| | |
|---|---:|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201103010170004

00003819958



003185479

**SEQ:**
**24**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

r22

Exhibit 8 , Pg. 108

Recording Requested By
ORANGE COAST TITLE

THORNBURG 0018913479

RECORDING REQUESTED BY

When recorded return to :
Richmond Monroe Group
15511 State Highway 13
Branson West, MO. 65737
SPS # 291631393

Prepared by Mitzi Politz

Loan No: 21074184

10-3221-11

1207200

————Space above this line for Recorder's use————

## CORPORATION ASSIGNMENT OF DEED OF TRUST

For Value received, the undersigned hereby grants, assigns and transfer to See Attached Exhibit A

all beneficial interest under that certain Note and Deed of Trust dated **November 1, 2006**
executed by **DOROTHEA SCHIRO, A SINGLE WOMAN**

Trustor,

to **OCEAN TOWERS**

Trustee,

and recorded as Instrument No. **06-2481011** on **11/8/2006** in Book/Reel
**Page/Image**
**LOS ANGELES** County, **CA**
Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to be accrued under said Deed of Trust.

STATE OF CALIFORNIA ) S.S.
COUNTY OF LOS ANGELES )

**SEE EXHIBIT A**

**METROCITIES MORTGAGE LLC**

on 02/16/07 before me, SUZETTE M. THOMPSON
a Notary Public, personally appeared
CAROLINE BURGA personally known to me
(or proved to me on the basis of satisfactory evidence) to be
the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledge to me that he/she/they executed the
same in his/her/their authorized capicity)ies), and that by
his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted,
executed the instrument.

*Caroline Burga*
CAROLINE BURGA , A.V.P.

WITNESS my hand and official seal

*Suzette M. Thompson*

SUZETTE M. THOMPSON / COMMISSION # 1412827
COMMISSION EXPIRES MAY 2, 2007

SUZETTE M. THOMPSON
Commission # 1412827
Notary Public - California
Los Angeles County
My Comm. Expires May 2, 2007

Exhibit 8, Pg. 109

3

**EXHIBIT A**

Assignee: Bank of America N.A. (successor to LaSalle Bank N.A.), as Indenture Trustee, on behalf of the holders of the Thornburg Mortgage Securities Trust 2007-2 Mortgage-Backed Notes, Series 2007-2
C/O Select Portfolio Servicing, Inc.
3815 South West Temple
Salt Lake City, UT 84115

Exhibit ___8___, Pg. _110_

| STATE OF CALIFORNIA | ) | **PROOF OF SERVICE** |
|---|---|---|
| COUNTY OF LOS ANGELES | ) ss. | |

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action.  My business address is: 300 South Grand Avenue, Suite 2600, Los Angeles, CA  90071.  On April 18, 2014, I served the foregoing document described as:

# THIRD PARTY COMPLAINT

on the parties or attorneys for parties in this action who are identified on the attached service list, using the following means of service.  (If more than one means of service is checked, the means of service used for each party is indicated on the attached service list).

☐    **BY PERSONAL SERVICE.**  I placed ___ the original or ___ a true copy of the foregoing document in sealed envelopes individually addressed to each of the parties on the attached service list, and caused such envelope to be delivered by hand to the offices of each addressee.

☐    **BY FACSIMILE TRANSMISSION.**  I caused ___ the original or ___ a true copy of the foregoing document to be transmitted to each of the parties on the attached service list at the facsimile machine telephone number as last given by that person on any document which he or she has filed in this action and served upon this office.

☑    **BY MAIL.**  I placed ___ the original or ✓ a true copy of the foregoing document in a sealed enveloped individually addressed to each of the parties on the attached service list, and caused each such envelope to be deposited in the mail at  300 South Grand Avenue, Suite 2600, Los Angeles, CA  90071.  Each envelope was mailed with postage thereon fully prepaid.  I am readily familiar with this firm's practice of collection and processing of correspondence for mailing.  Under that practice, mail is deposited with the United States Postal Service the same day that it is collected in the ordinary course of business.

☐    **BY E-MAIL.**  I caused the foregoing document(s) to be transmitted by e-mail electronic transmission to the e-mail address on the attached service list as last given by that person on any document which he or she has filed in this action and served upon this office.

☐    **BY EXPRESS MAIL.**  I placed ___ the original or ___ a true copy of the foregoing document in a sealed enveloped individually addressed to each of the parties on the attached service list, and caused each such envelope to be deposited in the mail at  300 South Grand Avenue, Suite 2600, Los Angeles, CA  90071.  Each envelope was mailed with Express Mail postage thereon fully prepaid.  I am readily familiar with this firm's practice of collection and processing of correspondence for mailing.  Under that practice, mail is deposited with the United States Postal Service the same day that it is collected in the ordinary course of business.

☐    **BY FEDERAL EXPRESS.**  I placed ___ the original or ___ a true copy of the foregoing document in a sealed enveloped or package designated by Federal Express with delivery fees paid or provided for, individually addressed to each of the parties on the attached service list, and caused such envelope or package to be delivered at 300 South Grand Avenue, Suite 2600, Los Angeles, CA  90071, to an authorized courier or driver authorized by Federal Express to receive documents.

☐    **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☑    **(Federal)** I declare that I am employed in the office of a member of the bar of this court, at whose direction the service was made.

Executed on April 18, 2014, at Los Angeles, California.

_Antoinette Y. Taylor_
_____
Antoinette Y. Taylor

## SERVICE LIST

*Seif Ascar, Trustee of The Ascar Family Trust Dated July 5, 2012*
*v. U.S. Bank, N.A., et al.*
United States District Court – Central District Case No. 2:13-cv-07496-ABC-SS

Geoffrey A. Berkin, Esq.
**LAW OFFICES OF GEOFFREY A. BERKIN**
15353 Weddington Street, Suite D-124
Sherman Oaks, California  91411
Telephone:   (310) 612-7289
Facsimile:   (818) 394-6455
Email:            gberkin@sbcglobal.net

Attorney for Plaintiff:  **SEIF ASCAR TRUSTEE ASCAR FAMILY TRUST**

Alfred J. Verdi, Esq.
**VERDI LAW GROUP**
18840 Ventura Blvd., Suite 202
Tarzana, California  91356
Telephone:   (818) 705-1100
Facsimile:   (818) 688-3980
Email:            al@verdilaw.com

Attorney for Plaintiff:  **SEIF ASCAR TRUSTEE ASCAR FAMILY TRUST**